Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

George R. Howard (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al.*,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

# APPLICATION FOR ENTRY OF AN ORDER APPOINTING OMNI AGENT SOLUTIONS, INC. AS CLAIMS, NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file this application (the "***Application***") and in support submit the *Declaration of Paul H. Deutch in*

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

*Support of Debtors' Application for Entry of an Order Appointing Omni Agent Solutions, Inc. as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* (the "***Deutch Declaration***"), attached as **Exhibit B**, and respectfully submit the following:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are 28 U.S.C. § 156(c), sections 105(a), 327, 330, and 503(b) of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 2002(f), 2014(a), and 2016, rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***N.D. Tex. L.B.R.***"), and sections B.8(i) and J of the Procedures for Complex Cases in the Northern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

4. American Hospitality Properties REIT, Inc. ("***REIT I***") and American Hospitality Properties REIT II, Inc. ("***REIT II***") (collectively, the "***AHP Entities***," and together with their Debtor and non-Debtor affiliates, the "***Company***") are Delaware-incorporated, non-traded companies formed to engage primarily in the acquisition of premium branded hotels and other real

estate-related assets either secured by or related to hotel properties in the United States. The AHP Entities own a portfolio of hospitality assets across the country, including properties affiliated with the Marriott and Hilton hotel brands.

5. The AHP Entities were founded by William Lee "Perch" Nelson ("***Mr. Nelson***") and Phoenix American Hospitality, LLC ("***PAH***"), a Dallas-based hospitality investment, asset management, and hotel operations company. PAH, which remains led by Mr. Nelson as its Chief Executive Officer, serves as the external property manager for certain of the Company's entities in which the AHP Entities hold ownership interests. Prior to the commencement of these Chapter 11 Cases, the Company generated revenue primarily through the ownership of its hotel properties and related hospitality businesses.

6. On October 4, 2026 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 20] (the "***First Day Declaration***"), incorporated herein by reference.[2]

---

[2] Capitalized terms used but not otherwise defined in this Application shall have the meaning set forth in the First Day Declaration.

## **RELIEF REQUESTED**

8. By this Application, the Debtors seek entry of an order (the "***Order***"), substantially in the form attached hereto as **Exhibit A**, appointing Omni Agent Solutions, Inc. ("***Omni***") as the claims, noticing, and solicitation agent (the "***Claims, Noticing, and Solicitation Agent***") in these Chapter 11 Cases, effective as of the Petition Date and consistent with the terms set forth in that certain Standard Services Agreement between Omni and the Debtors, dated as of October 2, 2026 (the "***Services Agreement***"), a copy of which is attached as **Exhibit 1** to the Deutch Declaration.

## **OMNI'S QUALIFICATIONS**

9. Omni is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Omni has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent and/or administrative agent in numerous recent chapter 11 cases filed in this district and other districts nationwide. Omni's current and former cases include: *K. Heeps HoldCo, LLC*, No. 26-11505 (KBO) (Bankr. D. Del. Sept. 23, 2026); *House Canary New Jersey, Inc.,* No. 26-20766 (EJO) (Bankr. D.N.J. Sept. 22, 2026); *LifeCare 2.0, LLC*, No. 26-44110 (ELM) (Bankr. N.D. Tex. Sept. 15, 2026); *LIV Golf New Jersey LLC*, No. 26-20189 (MBK) (Bankr. D.N.J. Sept. 8, 2026); *Squirrel Hill PA Realty, LLC*, No. 26-22337 (GLT) (Bankr. W.D. Pa. Aug. 21, 2026); *Vi-Jon, LLC*, No. 26-11216 (MFW) (Bankr. D. Del. Aug. 2, 2026); *Uniroyal Holding, Inc*., No. 26-18668 (MBK) (Bankr. D.N.J. Jul. 31, 2026); *Republic National Distributing Company, LLC*, No. 26-90737 (CML) (Bankr. S.D. Tex. Aug. 27, 2026); *Brayman Precast, LLC*, No. 26-22052 (CMB) (Bankr. W.D. Pa. Jul. 24, 2026); *Alea Holdings US Company*, No. 26-90714 (CML) (Bankr. S.D. Tex. Jul. 19, 2026); *Warrior Technologies, LLC*, No. 26-33562 (ARP) (Bankr. S.D. Tex. May 21, 2026); *Lena Brands LLC*, No. 26-10792 (TMH) (Bankr. D. Del. May 15, 2026); *CHS FL, LLC*,

No. 26-01087 (FMR) (Bankr. M.D. Fla. May 8, 2026); *In re Finch Therapeutics Group, Inc.*, No. 26-10409 (LSS) (Bankr. D. Del. Mar. 22, 2026) *Baker and Taylor, LLC*, No. 26-12863 (CMG) (Bankr. D.N.J. Mar. 16, 2026).

10. The retention of Omni as the Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these Chapter 11 Cases, and relieve the Office of the Clerk of the Bankruptcy Court (the "***Clerk***"), the Debtors, and their retained professionals of these administrative burdens. Given the complex nature of these Chapter 11 Cases, the Debtors submit that the appointment of Omni as the Claims, Noticing, and Solicitation Agent is merited, as it will decrease inefficiencies and administrative burdens, while maximizing the value of the Debtors' estates for all stakeholders.

**<u>SERVICES TO BE PROVIDED</u>**

11. This Application pertains to the services to be performed by Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Bankruptcy Code section 327(a).

12. Specifically, Omni will perform the following services in its role as the Claims, Noticing, and Solicitation Agent, at the request of the Debtors or the Clerk (collectively, the "***Services***"),[3] to the extent requested by the Debtors:

A. serve and/or prepare required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan of reorganization, and (vii) all other notices, orders, pleadings,

[3] The summary of the Services contained in this Application is provided for convenience purposes only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Services Agreement, the terms of the Services Agreement shall control unless otherwise set forth herein.

publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

B. maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs, listing the Debtors' known creditors and the amounts owed thereto;

C. maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party in interest or the Clerk;

D. furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the schedules, which may be effected by the inclusion of such information (or the lack thereof, in cases where the schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

E. for motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

F. process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

G. maintain the official claims register for each debtor (the "***Claims Register***") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

H. implement necessary security to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

I. record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

J. relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less often than weekly;

K. upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

L. monitor the court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

M. identify and correct any incomplete or incorrect addresses in any mailing or service lists;

N. assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

O. assist with, among other things, solicitation, balloting and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

P. prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

Q. assist with the preparation of the Debtors' schedules and statements of financial affairs and gather data in conjunction therewith;

R. provide a confidential data room, if requested;

S. manage and coordinate any distributions pursuant to a chapter 11 plan;

T. if these Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk within three days of the notice to Omni of entry of the order converting the case;

U. 30 days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the court a proposed order dismissing Omni as Claims, Noticing, And Solicitation Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

V. within seven days of notice to Omni of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these Chapter 11 Cases;

W. at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the National Archives and Records Administration, Southwest Region located at 1400 John Burgess Drive, Fort Worth, Texas 76140 or (ii) any other location requested by the Clerk; and

X. perform other administrative services with respect to these Chapter 11 Cases, pursuant to provisions in the Services Agreement.

13. The Claims Register shall be open to the public for examination without charge during regular business hours and on the Debtors' website maintained by Omni at https://omniagentsolutions.com/AHPREIT.

**PROFESSIONAL COMPENSATION**

14. The Debtors are proposing to compensate Omni for the Services set forth above in accordance with the Services Agreement and the rate structure attached thereto, including a 25% discount on its standard hourly rates. The Debtors request that the undisputed fees and expenses incurred by Omni in the performance of the Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.

15. Omni agrees to maintain records of all Services, including dates, categories of Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee (the "***U.S. Trustee***"), counsel for the Debtors, counsel for any official committee(s), and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the Debtors shall provide written notice of such disputed charge within 10 days of receiving the invoice. Any

continuing dispute shall be finally resolved by arbitration administered by the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

16. Additionally, under the terms of the Services Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify, defend and hold harmless Omni and its affiliates, members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents, under certain circumstances specified in the Services Agreement, except in circumstances resulting from Omni's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or the Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims, noticing and solicitation agent in these Chapter 11 Cases.

**OMNI'S DISINTERESTEDNESS**

17. To the best of the Debtors' knowledge, except as disclosed in the Deutch Declaration, Omni and the professionals working on this matter: (a) are not creditors, equity security holders, or insiders of the Debtors; (b) are not, and within two years prior to the Petition Date were not, directors, officers, or employees of the Debtors; (c) have no connection with the Debtors, any of the Debtors' creditors, any other party in interest, any of their respective attorneys or accountants, the U.S. Trustee, or any judge of the Court; and (d) do not hold or represent any interest materially adverse to the Debtors' estates.

18. In view of the foregoing, the Debtors believe that Omni is a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

19. Omni has informed the Debtors that throughout these Chapter 11 Cases, Omni will continue to conduct periodic conflicts analyses to determine whether it is providing services or has

performed services for any significant parties in interest in these Chapter 11 Cases and that it will promptly update this Application and disclose any material developments regarding the Debtors or any other pertinent relationships that come to Omni's attention by way of a supplemental declaration.

## BASIS FOR RELIEF REQUESTED

20. As set forth below, the Court is permitted to appoint Omni as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases. Indeed, this Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases, including claims, noticing, and solicitation agents pursuant to 28 U.S.C. § 156(c), which provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

21. Further, pursuant to Bankruptcy Code section 105(a), this Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. See Fed. R. Bankr. P. 2002(a). Accordingly, the Court is empowered to utilize outside agents and facilities for noticing and claims purposes, provided the Debtors' estates pay the cost of such services.

22. Similarly, Bankruptcy Code section 327(a) provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that ***do not hold or represent an interest adverse to the estate, and that are disinterested persons***, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a) (emphasis added).

23. The Debtors submit that the retention of Omni under the terms described herein is appropriate under Bankruptcy Code section 327(a), because, as discussed above, Omni does not hold an interest adverse to the Debtors' estates.

24. Finally, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in-interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

25. The Debtors submit that the appointment of Omni as the Claims, Noticing, and Solicitation Agent is both necessary and in the best interests of the Debtors' estates and creditors. Such appointment will help to expedite and more efficiently facilitate the administration of these Chapter 11 Cases, particularly given the number of parties receiving notice in these Chapter 11 Cases as well as the number of anticipated claimants and will relieve the Debtors and the Clerk's office of associated administrative burdens. The Debtors also believe that the terms and conditions of the Services Agreement are reasonable in light of the anticipated number of creditors and other parties in interest that will be involved in these Chapter 11 Cases.

26. Courts in this district have approved similar relief in other chapter 11 cases. *See*, *e.g.*, *In re Prospect Medical Holdings, Inc*., No. 25-80002 (SGJ) (Bankr. N.D. Tex. Jan. 14, 2025); *In re Tommy's Fort Worth, LLC*, No. 24-90000 (ELM) (Bankr. N.D. Tex. May 24, 2024); *In re PM Management – Killeen I NC LLC*, No. 24-30240 (SGJ)

(Bankr. N.D. Tex. Feb. 6, 2024); *In re IPI Legacy Liquidation Co.*, No. 23-80016 (SGJ) (Bankr. N.D. Tex. Dec. 21, 2023); *In re Ebix, Inc.*, No. 23-80004 (SWE) (Bankr. N.D. Tex. Dec. 19, 2023); *In re Leading Life Senior Living, Inc.*, No. 22-42784 (MXM) (Bankr. N.D. Tex. Nov. 23, 2022).

## RELIEF AS OF THE PETITION DATE IS APPROPRIATE

27. In accordance with the Debtors' request, Omni has agreed to serve as Claims, Noticing, and Solicitation Agent on and after the Petition Date with the assurance that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Omni can be compensated for Services rendered on and after the Petition Date, including prior to the Court's approval of this Application. The Debtors believe that no party in interest will be prejudiced by the granting of the employment effective as of the Petition Date, as proposed in this Application, because Omni has already provided and continues to provide valuable services to the Debtors' estates. Additionally, such relief is permitted under paragraph B.8(i) of the Complex Case Procedures. Accordingly, the Debtors respectfully request entry of the Order authorizing the Debtors to employ and retain Omni as Claims, Noticing, and Solicitation Agent, effective as of the Petition Date.

## NOTICE

28. Notice of this Application has been provided to: (a) the U.S. Trustee; (b) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (c) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; and (f) all other applicable government agencies to the extent required by the Bankruptcy Rules or the

N.D. Tex. L.B.R. In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

29. No prior motion for the relief requested herein has been made to this Court or any other court.

*[Remainder of page intentionally left blank]*

## PRAYER

The Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated: November 3, 2026
Dallas, Texas

*/s/ Bradley R. Foxman*
**VINSON & ELKINS LLP**

Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

- and -

George R. Howard (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**CERTIFICATE OF SERVICE**

I certify that on November 3, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Bradley R. Foxman*
One of Counsel

# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY PROPERTIES REIT, INC., *et al.*,** | § | **(Chapter 11)** |
| | § | |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | **Re: Dkt. No. ___** |

**ORDER APPOINTING**
**OMNI AGENT SOLUTIONS, INC. AS CLAIMS, NOTICING,**
**AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "***Application***")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for entry of an order (this "***Order***") appointing Omni Agent Solutions, Inc. ("***Omni***") as the claims, noticing, and solicitation agent (the "***Claims, Noticing, and Solicitation Agent***"), all as more fully set forth in the Application and

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

in the First Day Declaration; and the Court having jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Application and any hearing has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Application after considering the Application and all of the proceedings before the Court in connection with the Application, it is HEREBY ORDERED THAT:

1. The Application is GRANTED as set forth herein.

2. The Debtors are authorized to employ Omni as Claims, Noticing, and Solicitation Agent effective as of the Petition Date under the terms of the Services Agreement attached to the Deutch Declaration as modified by this Order.

3. The Debtors are authorized to compensate Omni for the services set forth in the Application in accordance with the Services Agreement and the rate structure attached thereto.

4. Omni is authorized and directed to perform the services as described in the Application, the Services Agreement, and this Order. If a conflict exists, this Order controls.

5. Omni may not sell bankruptcy data obtained through its role as the Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases to third parties.

6. The Clerk shall provide Omni with Electronic Case Filing ("***ECF***") credentials that allow Omni to receive ECF notifications, file certificates, and/or affidavits of service.

7. Omni shall provide the Clerk with a certified duplicate of the official Claims Register(s) upon request.

8. Omni shall provide (a) an electronic interface for filing proofs of claim in these cases; and (b) a post office box or street mailing address for the receipt of proofs of claim sent by United States Mail or overnight delivery.

9. Omni is authorized to take such other actions as are necessary to comply with all duties and provide the services set forth in the Application and the Services Agreement.

10. Omni shall provide detailed invoices setting forth the services provided and the rates charged on a monthly basis to the Debtors, their counsel, the Office of the United States Trustee, counsel for any official committee, and any party in interest who specifically requests service of the monthly invoices in writing.

11. Omni is not required to file fee applications. Upon receipt of Omni's invoices, the Debtors are authorized to compensate and reimburse Omni for all undisputed amounts in the ordinary course in accordance with the terms of the Services Agreement. All amounts due to Omni will be treated as section 503(b) administrative expenses.

12. The Debtors shall indemnify Omni under the terms of the Services Agreement, or as otherwise modified pursuant to this Order.

13. Omni shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

14. Notwithstanding anything to the contrary to the Services Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct, or actual fraud; (b) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Omni should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

15. If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these Chapter 11 Cases, Omni believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, Omni must file an application therefor in this Court, and the Debtors may not pay any such amounts to Omni before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Omni for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Omni.

16. All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

17. Notwithstanding anything in the Services Agreement, Omni shall not be entitled to any indemnification in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), *In re Southmark Corp*., 163 F.3d 925 (5th Cir. 1999), or Bankruptcy Code section 524(e), in each case to the extent applicable.

18. Omni shall not cease providing services during these cases for any reason, including nonpayment, without an order of the Court; *provided, however*, that Omni may seek such relief on an expedited basis. In the event Omni is unable to provide the services set out in this Order and/or the Services Agreement, Omni will immediately notify the Clerk and the Debtors' attorney and cause all original proofs of claim and data to be turned over to such persons as directed by the Court.

19. After entry of an order terminating Omni's services, upon the closing of these cases, or for any other reason, Omni shall be responsible for archiving all proofs of claim with the National Archives and Records Administration, if applicable, or as otherwise directed and shall be compensated by the Debtors for such archiving services.

20. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

21. The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**# # # END OF ORDER # # #**

**Order submitted by:**

**VINSON & ELKINS LLP**

Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

- and -

George R. Howard (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION**

# EXHIBIT B

**Deutch Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY PROPERTIES REIT, INC.,** ***et al.*****,** | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DECLARATION**
**OF PAUL H. DEUTCH IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING OMNI AGENT SOLUTIONS, INC. AS CLAIMS, NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Paul H. Deutch state the following under penalty of perjury and that the following is true to the best of my knowledge, information, and belief:

1. I am the Executive Vice President of Omni Agent Solutions, Inc. ("***Omni***"), which has offices in both Woodland Hills, California and New York, New York. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2. This Declaration is made in support of *Debtors' Application for Entry of an Order Appointing Omni Agent Solutions, Inc. as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* (the "***Application***"),[3] filed contemporaneously herewith by the Debtors.

---

[1] The Debtors in these Chapter 11 Cases (as defined in the Application) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Omni and are based on information provided by them.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

3. Omni is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and other administrative aspects of chapter 11 cases. Omni has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent and/or solicitation agent in numerous chapter 11 cases filed in this district and other districts nationwide. Omni's current and former cases include: *K. Heeps HoldCo, LLC*, No. 26-11505 (KBO) (Bankr. D. Del. Sept. 23, 2026); *House Canary New Jersey, Inc.,* No. 26-20766 (EJO) (Bankr. D.N.J. Sept. 22, 2026); *LifeCare 2.0, LLC*, No. 26-44110 (ELM) (Bankr. N.D. Tex. Sept. 15, 2026); *LIV Golf New Jersey LLC*, No. 26-20189 (MBK) (Bankr. D.N.J. Sept. 8, 2026); *Squirrel Hill PA Realty, LLC*, No. 26-22337 (GLT) (Bankr. W.D. Pa. Aug. 21, 2026); *Vi-Jon, LLC*, No. 26-11216 (MFW) (Bankr. D. Del. Aug. 2, 2026); *Uniroyal Holding, Inc*., No. 26-18668 (MBK) (Bankr. D.N.J. Jul. 31, 2026); *Republic National Distributing Company, LLC*, No. 26-90737 (CML) (Bankr. S.D. Tex. Aug. 27, 2026); *Brayman Precast, LLC*, No. 26-22052 (CMB) (Bankr. W.D. Pa. Jul. 24, 2026); *Alea Holdings US Company*, No. 26-90714 (CML) (Bankr. S.D. Tex. Jul. 19, 2026); *Warrior Technologies, LLC*, No. 26-33562 (ARP) (Bankr. S.D. Tex. May 21, 2026); *Lena Brands LLC*, No. 26-10792 (TMH) (Bankr. D. Del. May 15, 2026); *CHS FL, LLC*, No. 26-01087 (FMR) (Bankr. M.D. Fla. May 8, 2026); *In re Finch Therapeutics Group, Inc*., No. 26-10409 (LSS) (Bankr. D. Del. Mar. 22, 2026); *Baker and Taylor, LLC*, No. 26-12863 (CMG) (Bankr. D.N.J. Mar. 16, 2026).

4. As agent and custodian of court records under 28 U.S.C. § 156(c), Omni will perform, at the request of the Clerk, the services specified in the Application and the Services Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Services Agreement. In performing such services, Omni

will charge the Debtors the rates set forth in the Services Agreement, including a 25% discount on standard hourly rates, which is attached as **Exhibit 1** to this Declaration.

5. Omni represents that:

A. Omni is not a creditor of the Debtors;

B. Omni will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases;

C. By accepting employment in these Chapter 11 Cases, Omni waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

D. In its capacity as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases, Omni will not be an agent of the United States and will not act on behalf of the United States; Omni will not employ any past or present employees of the Debtors in connection with its work as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases;

E. Omni is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) for the matters on which it is engaged;

F. In its capacity as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person; Omni's receipt and recordation of claims (if any) and claim transfers will fall under the supervision and control of the Clerk's office;

G. Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

H. The Clerk's office will bear none of the costs of Omni's services as Claims, Noticing, and Solicitation Agent in these Chapter 11 Cases.

6. On March 16, 2026, certain funds and accounts managed by affiliates of Fortress Investment Group, LLC ("***FIG***") made a majority equity investment in Omni. FIG is a leading, highly diversified asset manager headquartered in New York and Dallas that invests across private equity, credit, real estate, and permanent capital strategies for institutional and private clients. FIG, through its investments, owns a majority of Ursa Acquisition Sub, LLC, which in turn wholly owns MMR Advisory Holdings, LLC, which in turn wholly owns Omni. Omni is independently

operated by its management team and controlled by its board of directors (the "***Board***"). The Board has one member who is a representative of FIG.

7. I caused to be submitted for review by Omni's conflicts system the list of names of potential parties in interest in these Chapter 11 Cases (the "***Potential Parties in Interest List***"), annexed hereto as **Schedule 1**, which was provided by the Debtors and includes, among other parties, the Debtors, significant equity holders, the Debtors' largest unsecured creditors on a consolidated basis, and the bankruptcy judges sitting in this jurisdiction.

8. In addition, Omni compared the Potential Parties in Interest List to an internal database that includes, among other entities, Omni's parent entities, as well as a list of FIG's active fund investments (in the form most recently provided to Omni by FIG's internal compliance department).

9. In addition to the above-referenced search procedures, Omni and FIG have the following restrictions in place in order to preserve Omni's disinterestedness: (a) no FIG personnel work on Omni client matters or have access to Omni client information, client files or client personnel; (b) no FIG personnel work in Omni's offices; (c) Omni operates independently from FIG, including that it does not share any employees, officers or other management with FIG, has separate offices in separate buildings, and has separate IT systems; and (d) no Omni officer or employee is a director, officer or employee of FIG.

10. At this time, and as set forth in further detail herein, Omni is not aware of any connections that would present a disqualifying conflict of interest. Should Omni discover any new relevant facts or connections bearing on the matters described herein during the period of retention, Omni will use reasonable efforts to promptly file a supplemental declaration.

11. To the best of my knowledge and based solely upon information provided to me by the Debtors and the above-referenced search, and except as provided herein, neither Omni nor FIG have any connections to any entities or individuals listed on the Potential Parties in Interest List. Omni has and will continue to represent clients in matters unrelated to these Chapter 11 Cases. In addition, in matters unrelated to these Chapter 11 Cases, Omni and its personnel have, and will continue to have, relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these Chapter 11 Cases. Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors. To the best of my knowledge, such relationships are materially unrelated to these Chapter 11 Cases.

12. To the best of my knowledge, none of Omni's professionals are related to bankruptcy judges in the Northern District of Texas or any attorney known by Omni to be employed by the U.S. Trustee.

13. To the best of my knowledge, none of Omni's professionals were partners of, or formerly employed within the last three years by, firms that are Potential Parties in Interest or that have filed a notice of appearance in these Chapter 11 Cases. The following firm is included on the Potential Parties in Interest List: Richards Layton & Finger. ("***RLF***"). Upon information and belief, within the last three years Omni has served as claims and noticing agent and/or administrative agent on behalf of debtors who have also retained RLF.

14. Omni, FIG and their affiliates, along with their respective personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms may appear in chapter 11 cases representing the Debtors or parties in interest. To the best of my knowledge, Omni does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified on the Potential Parties in Interest List or who have filed a notice of appearance in these Chapter 11 Cases.

15. Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in this district or elsewhere to nonclient third parties. Omni does not have any contract or agreement with any party under which Omni would receive consideration in exchange for providing claims data.

16. Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

17. I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Omni will comply with them, subject to the Orders of this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2026
New York, New York

*<u>/s/ Paul H. Deutch</u>*
Paul H. Deutch
Executive Vice President
Omni Agent Solutions, Inc.

# EXHIBIT 1

## Services Agreement

Omni 10/2/26 (PHD)

# STANDARD SERVICES AGREEMENT

This Agreement is entered into as of October 2, 2026, between (I) Omni Agent Solutions, Inc ("**Omni**"), and (II) American Hospitality Properties REIT, Inc., together with each of its affiliates and subsidiaries listed on **Schedule 1**, annexed hereto (collectively, the "**Companies**"). The parties agree as follows:

## Terms and Conditions

I. SERVICES

(a) Upon request by the Companies or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Companies with consulting and administrative services ("**Services**") in connection with the Companies' potential cases under chapter 11 of the U.S. Bankruptcy Code (the "**Code**"). Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Companies' bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b) The Companies understand that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Companies' behalf (each, a "**Companies Party**").[1] The Companies represent to Omni and agree that any and all requests, advice, information or direction which a Companies Party provides to or makes of Omni is expressly authorized by the Companies, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Companies shall be bound by any and all requests, advice, information or direction made.

(c) The Companies understand that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Companies Party or any other party constitutes legal or financial advice.

II. RATES

(a) The Companies agree to pay Omni for all fees, charges and costs for Services provided on their behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"** (the "**Rate Schedule**"). *In addition, Omni has agreed to provide the Companies with a twenty-five (25%) discount on its standard hourly rates.* Omni reserves the right to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees, and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other

[1] Unless otherwise agreed upon, a Companies Party includes the Companies' managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Companies authorize to engage in a communication with Omni.

charges shall be effective immediately and constitute the operative Rate Schedule.

(b) Omni may invoice the Companies monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c) If any amount is unpaid to Omni thirty (30) days from the date of the Companies' receipt of an invoice, the Companies agree to pay a late charge calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Companies shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance.

(d) Omni may require an advance or direct payment from the Companies of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e) The Companies shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Companies, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f) The Companies shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Companies including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g) THIS SECTION INTENTIONALLY LEFT BLANK.

(h) Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i) **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii) **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100

Woodland Hills, CA 91367

III. RETENTION

(a) The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Companies in the Companies' chapter 11 proceeding(s).

(b) As soon as is practicable, but in no event more than thirty (30) days from the date hereof, the Companies agree to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as their claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, this Agreement will be terminated effective immediately.

IV. TERM

(a) Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Companies for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Companies' effort and ability to restructure in their chapter 11 cases; or (d) by Omni upon the Companies' material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b) Upon its termination, Omni shall provide the Companies with all materials Omni is required to return to the Companies under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Companies and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Companies agree to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Companies' written request made at any time during the term of this Agreement, Omni shall deliver to the Companies and/or the Companies' retained professionals at the Companies' sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Companies.

V. CONFIDENTIALITY

Omni and the Companies, on behalf of themselves and on behalf of each Companies Party, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

VI. OMNI'S PROPERTY RIGHTS

(a) The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy cases.

(b) The Companies acknowledge and agree that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Companies is limited to enabling Omni to provide the Services hereunder.

VII. BANK ACCOUNTS

At the request of the Companies, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Companies and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

VIII. COMPANIES' DATA

(a) Without limiting any other provision of this Agreement, the Companies represent and warrant to Omni that when a Companies Party provides information to Omni (a) the Companies have all necessary authority to disclose it to Omni and that Omni is fully authorized to

use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Companies' knowledge at the time of such communication(s); and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Companies' Schedules and SOFAs. The Companies agree that they shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on their behalf.

(b) Without limiting any other provision of this Agreement, the Companies understand and agree that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Companies' Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that they shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it. Omni agrees that it will dispose of the Companies' Data in a manner requested by or acceptable to the Companies; provided, however, that if Omni has not provided Services to the Companies for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Companies' Data in any commercially reasonable at the Companies' sole expense. The Companies agree to use commercially reasonable efforts to initiate and maintain backup files that would allow the Companies to regenerate or duplicate all programs, data or information which is provided on their behalf to Omni.

(c) If Omni is retained pursuant to bankruptcy court order, disposal of any of the Companies' Data shall comply with any applicable court orders and rules or clerk's office instructions.

IX. NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X. INDEMNIFICATION

(a) To the fullest extent permitted by applicable law, the Companies shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Omni and the Companies shall provide notice to the other in writing promptly upon

the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c) The Companies' indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d) The Companies' indemnification obligations hereunder shall survive the termination of this Agreement.

XI. LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Companies for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Companies for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss. In no event shall Omni's liability to the Companies for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII. GENERAL

(a) Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by a Companies Party, on behalf of the Companies, and an officer of Omni.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e) This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the

signature page by fax or email.

(f) Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) The Companies will use their best efforts to cooperate with Omni at the Companies' facilities if any portion of the Services require Omni's physical presence.

(h) Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i) The Companies and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j) The language used in this Agreement will be deemed to be the language chosen by the Companies and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k) In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l) The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m) Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any

applicable chapter 11 case(s) of the Companies, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n) Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy case(s).

(o) All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII. NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:

Omni Agent Solutions, Inc.
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: Bosborne@omniagnt.com

If to the Companies:

FTI Consulting
1166 Avenue of the Americas, 15th Floor
New York, NY 10036
Attn: Alan Tantleff
Chief Restructuring Officer
Email: alan.tantleff@fticonsulting.com

With a copy to:

Vinson & Elkins
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Attn: George Howard, Esq.
Email: ghoward@velaw.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: ___________________________________
Name: Paul Deutch
Title: Executive Vice President

Agreed and accepted this ___ day of October, 2026

**AMERICAN HOSPITALITY PROPERTIES REIT, INC., *ET AL.***

Signed by:
1758C008ED104E1...
_______________________________________
Alan Tantleff
Chief Restructuring Officer

Omni 10/2/26 (PHD)

# SCHEDULE

# "1"

1. **American Hospitality Properties REIT, Inc.**
2. **American Hospitality Properties REIT II, Inc.**
3. **AHP LP7 RI Baton Rouge, LLC**
4. **AHP LP7 CY Baton Rouge, LLC**
5. **AHP LP7 Jonesboro, LLC**
6. **AHP LP7 FT Meyers, LLC**
7. **AHP LP7 Metairie, LLC**
8. **AHP LP7 Bentonville, LLC**
9. **AHP LP7 Fayetteville, LLC**
10. **Lakemore-Phoenix Investment Platform B, LLC**
11. **AHP REIT Port B, LLC**
12. **PAH Charlotte, LLC**
13. **PAH Charlotte JV, LLC**
14. **PAH Charlotte Hospitality JV, LLC**
15. **AHP RI Cape Canaveral, LLC**
16. **AHP Master Lease, LLC**

Omni 10/2/26 (PHD)

# EXHIBIT

# "A"

# 2026 Rate Sheet

Omni AGENT SOLUTIONS

**Analyst** $50 - 75

Analysts perform tasks such as incoming and outgoing mail processing (including returned mail), creditor correspondence, document and file organization, daily docket updates.

**Consultant** $80-$220

Consultants perform and manage various day-to-day activities to meet the specific needs of each client's case. These services include data collection, preparation of the creditor matrix, compilation of the noticing database, preparation of Schedules and SOFA's, processing and review of claims and ballots, maintenance of the official claims register and the processing of claim transfers, managing and maintaining the case website, and document management. In addition, Consultants perform quality assurance checks on all services, oversee noticing and fulfillment, assist with creditor communications, and produce multiple reports on claims, ballots, and other requested data. Omni's consultant's each average over five years industry-related experience.

**Senior Consultants** $225 - $275

Senior Consultants are the main points of contact for Omni's clients, their counsel, and other related professionals. Senior Consultants oversee all aspects of case administration, providing industry expertise and strategic administrative support on complex issues Their responsibilities also include the internal management of Omni's case professionals. Omni's senior consultant's each average over ten years industry-related experience and many are former restructuring or financial industry professionals. If necessary, Omni's executive team will provide additional support in the senior consultant role at the rate range set forth above.

**Solicitation and Securities Consultant** $225 - $250

Solicitation and Securities Consultants assist with the review, tabulation, and auditing of ballots, as well as executing plan solicitations and public securities-related services. In addition, Solicitation and Securities Consultants are available to prepare custom voting and tabulation reports, , as well as reports relating to other corporate securities events including exchange offers and rights subscriptions. The Solicitation and Securities Consultant will also interface with the banks, brokers, nominees, depositories, securities holders and their agents regarding solicitation and corporate events. Solicitation and Securities consultant's average over five years of related experience.

**Director of Solicitation and Securities** $295

The Director of Solicitation and Securities is the lead consultant in the plan solicitation process and any corporate action-related events. The Director oversees and coordinates all aspects of plan voting and solicitation, including tabulation verification, and, if and when necessary, will attest to the solicitation process and results. The Director also oversees and advises on public securities notices and related actions including voting, exchange offers, treatment elections, rights subscriptions, distributions, and notices, and will coordinate with the banks, brokers, nominees, depositories, securities holders and their agents to ensure smooth and successful execution of the related processes. Omni's Director of Solicitation and Securities is a former Wall Street executive with over 15 years of relevant securities and finance experience.

**Treasury Services – Including Banking, Escrow Agent and Distribution Services** $150 - $295

Treasury Service Consultants provide banking, escrow agent and distribution services. Omni's banking services include opening, maintaining and closing bank accounts, ACH Payments, balance transfers, monthly statement reconciliation, positive pay management, general administrative management and more. Escrow Agent services include full-service banking, administration and management required to execute various types (Asset Sale, Litigation Settlement, Professional Fees) of financial transactions. Omni's Distribution services include the creation and management of the distribution data, banking services, distribution fulfillment via hard check, wire transfer, ACH or other means, bank statement reconciliations, distribution reporting, coordinate tax reporting, final report and account closing. Omni's Treasury Consultants average 15 years of accounting, banking or financial services experience.

**Technology Consultant** $95 - $175

Technology Consultants provide technical and database support with respect to the onboarding and processing of complex data. Our Consultants also deliver ongoing and customized reporting requirements, assist with variable data mailings and exhibit preparation and provide custom solutions to meet individual case requirements. Omni's Technology Consultants each average at least 15 years experience in the information technology and development industry.

# 2026 Rate Sheet

Omni AGENT SOLUTIONS

| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Office Services | $50 - $75.00 per hour |
| Case Administration Services | $80 - $275 per hour |
| Claims Management | $80 - $275 per hour |
| Noticing Services | $80 - $275 per hour |
| Schedules and SOFA Services | $80 - $275 per hour |
| Solicitation Services | $80 - $295 per hour |
| Disbursement/Treasury Services | $150 - $295 per hour |
| Communications Services – Call Center | $75 - $175 per hour |
| Quality Control/Oversight Management | $150 - $275 per hour |
| Senior Management/Consulting Services | $225 - $275 per hour |
| Programming and IT Customization | $95 - $175 per hour |

| Claims Management | RATE / COST |
|---|---|
| Inputting Proofs of Claim | Hourly rates<br>(No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $80.00 - $275.00 per hour |

| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $95 - $175 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2026 Rate Sheet

Omni AGENT SOLUTIONS

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
|---|---|
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .15 per MB |
| Automated Services | .20 per process |

| Virtual Data Rooms | Quote upon request |
|---|---|

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume

# SCHEDULE 1

## Potential Parties in Interest List

# Parties in Interest[1]

**Debtor Entities**

American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
AHP Master Lease, LLC
AHP REIT Port B LLC
AHP RI Cape Canaveral, LLC
AHP LP7 Bentonville, LLC
AHP LP7 CY Baton Rouge, LLC
AHP LP7 Fayetteville, LLC
AHP LP7 Ft Meyers, LLC
AHP LP7 Jonesboro, LLC
Lakemore-Phoenix Investment Platform B, LLC
AHP LP7 Metarie, LLC
PAH Charlotte Hospitality JV, LLC
PAH Charlotte JV, LLC
PAH Charlotte LLC
AHP LP7 RI Baton Rouge, LLC

**Non-Debtor Affiliates**

AHP FT Wayne Inn, LLC
AHP FT Wayne Suites, LLC
APIP-C Borrower, LLC
APIP-C FT Wayne Inn Master Tenant, LLC
APIP-C FT Wanye Suites Master Tenant, LLC
LPIP-C Operco, LLC

**American Hospitality Properties REIT, Inc. Top 10 Equity Holders**

6409 Trust Partners Ltd.
Pengdi Han
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Dr. Jeffrey Miller
Michael Allen Carr
Gary Van AKen Jr CSIC 401K/Define Benefit Plan and benefit of VNV2 LLC
Clover RE LLC
Sports Specialties UNL LLC
Brian John Wroblewski
David Bret Boling

[1] Unless otherwise indicated, where a party has been listed in this schedule as having a particular relationship to the Debtors, such party is only listed once even if it also fits a separate category so as to avoid duplication.

**American Hospitality Properties REIT II, Inc. Top 10 Equity Holders**

Chandra Nandigam
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Lee DeVisser Trust UA dated 1/4/1993, Restated FBO Lee DeVisser Trust
The Arlyn Jay Lanting Living Trust
Yevgeniy Loboda
New Direction Trust Company (NDTCO) as Custodian FBO Daniel Reminga IRA 8000095
IRA Club, Administrator & Meridian Bank, Custodian FBO Jon Bentz IRA 2003153
Barber Family Trust 10232023 FBO Barber Family Trust 10232023
Jeffrey Kenneth Johnson FBO Johnson Family Trust of 2008
Michael Allen Carr

**Directors and Officers**

Paul Adams
Mary Pfeifer
Joseph Reardon

**Phoenix Entities**

PAH Management, LLC
PAH Services, LLC
Phoenix American Hospitality, LLC
William L. "Perch" Nelson

**Consultant**

Jay Anderson

**Banks**

JPMorgan Chase Bank N.A.
Wells Fargo Bank, N.A.

**Lenders**

Argentic Services Company LP
Deutsche Bank AG, New York Branch
Midland Loan Services, A PNC Real Estate Business
Rialto Mortgage Finance, LLC
Societe Generale
UBS Commercial Mortgage Trust 2018-C11
Wilmington Trust, N.A.

**Debtor Professionals**

FTI Consulting, Inc.
LD Realty Capital
Vinson & Elkins LLP

**Landlords**

Spirit Realty, L.P.

**Investor Litigation Parties**

Proven Business Skills, Inc.
Richard C. Brown
William B. Federman
Federman & Sherwood
Gary S. Menzer
Menzer & Hill P.A.
Max Aills
Michael Tarr as Trustee of the Michael S. and Robin L. Tarr Trust
Mark A. Alexander
Mark A. Alexander Law, P.C.

**Franchisors**

Hilton Franchise Holding LLC
Marriott International Inc.

**Vendors**

2nd Century Plumbing, LLC
4D Service Group of Tampa, Inc
A-1 Door Specialists, Inc
A-1 Vacuum Cleaner
AAA - MAIL STOP 2
ABC Electric Service, Inc.
ABC Home & Commercial Services
Able Rec LLC
ABY Benefits LLC
Access Door and Glass
Ace Hardware of Cape Canavarel
ADP Screening and Selection SE
ADP, Inc.
ADTRAV
Advance Catastrophe Technologies, LLC
Advanced Lawn Techs LLC

Advanced Lighting & Sign Service
Air Filter Brothers
Aire-Master of Eastern Florida
Airpro Services, Inc.
AJ'S Restaurant Service by A-Tech
All American Fire Protection
All American Plumbing, Inc
All Around Landscaping Inc.
All Clear Plumbing of Brevard
Allbridge, LLC
Allen County Treasurer
Allied Air Services, LLC
Allied Mechancial Inc
Allied Plumbing Air & Electric
Allied Universal Security Svcs
Allround Landscaping
Altec
Amazon
Amazon Capital Services, Inc
American City Business Journals Inc
American Electric Power
American Fire Protection Group
American Quick Foods, Inc
Angela Wood, Tax Collector
Anthony Travel LLC
Aqua Indiana, Inc.
Arkansas Air
Arkansas Automatic Doors
Arkansas Department of Labor
Arkansas Dept of Health
Arkansas Fitness Repair Inc
Arkansas Secretary of State
Arthur J. Gallagher Risk Manage
ASCAP
Ascentium Capital LLC
Ashberry Water Conditioning
ASSA ABLOY Global Solutions, Inc
AT&T
Atmos Energy
ATP Plumbing & Drain LLC
Axis Key
Bailiwick Services, LLC
Baton Rouge Area Chamber
Baton Rouge Lodging Assoc.
Baton Rouge Water Company
Batteries Plus

Batteries Plus Bulbs
BCN Telecom, Inc
Beach Line Transportation
Beam Electric Company, Inc.
Beebe's Pest & Termite Control
Ben E Keith Foods
Benton County Collector
Best Buy Business Advantage
Best Buy Stores, L.P.
Best Contracting LLC
Billiot Pest Control
Billy Senegal, LLC
Black Hills Energy
Bluebonnet Consulting, Inc.
Blueprint RF
BMI
Book My Group
BOOKING.COM BV
BookMyGroup
Brandon O Williams Construction, LLC
Brevard Business Telephone Systems, Inc.
Brevard County - Space Coast Office of Tourism
Brevard County Clerk - Finance TDT
Brevard County Tax Collector
Brinks, Inc.
Broadcast Music, Inc.
Bureau of Elevator Safety
Bureau of Revenue and Taxation
Burton Energy
Buy Efficient
C.T. Traina. Inc.
Caine & Weiner
Canary Technologies
Canon Financial Services, Inc
Captain Steamer Carpet Cleaner
Cards NWA LLC
Carrco
Carver Hotel Group, LLC
CAWLEY COMPANY (THE)
CCS Industrial Services, Inc
CentiMark Corporation
Centrada Soultions, LLC
Central Laundry Equipment
CF Environmental Laboratory LLC
Charlotte Area Chamber of Commerce
Chemtron

Cigna Health and Life Company
Cintas Corporation
Cintas Fire Protection
Cintas First Aid & Safety
City Clerk, City of Rogers
City Fire & Safety, Inc
City of Baton Rouge - E Parish
City of Cape Canaveral
City of Charlotte
City of Charlotte Aviation Dept.
City of Cocoa
City of Johnson
City of Jonesboro
City Utilities
City Water and Light - Jonesboro
City-County Tax Collector
Clarcity Holdings, LLC
Clean Start Group, LLC
Clearwater Pool & Spa World, LLC
Clearwater Pool Service
Clearwater Pools
CLI Enterprises, LLC
Climate Control of Charlotte, Inc.
Cloud5 Communications
Coast to Coast Computer Prods
Coca Cola Beverages Florida
Coca Cola Consolidated
Coca-Cola Bottling Company United, Inc
Coley Jordan Firestone
Collins Cleaners
Collins Cleaners & Valet Inc
Comcast Business
Commercial Industrial Lighting
Commtrak Corporation
CommTrans
Conserva Irrigation of NW Arkansas
Costar Realty Information
Courtesy Products LLC
Cox Business
Cozzini Bros., Inc.
Craighead County Tax Collector
Crain Supply
CSC
CSI Group International
CSTT Sports Travel
CT Corporation

Culligan of DFW
Culligan of Fort Wayne
Culligan of NW Arkansas
Cypress Cooling Company LLC
Danel Heating and Air
Darling Ingredients Inc
Data Plus Inc.
DBPR
Delta Products, Inc.
Delta Utilities
Deluxe Branded Marketing
Dept of Business and Professional Regulation
DEX Imaging LLC
Dext Capital, LLC
Dittmer Air & Heat, LLC
Division of Hotels & Restaurants
DMX Music (Mood Media)
Dormakaba Canada Inc
Dormakaba USA Inc
DR Pools LLC
Duke Energy
DynaFire, LLC
Eagle Refrigeration & Mechanical, LLC
East Baton Rouge Parish Sheriff
Eastern Refrigeration Service, Inc
Ecolab EcoSure
Ecolab Inc
Ecolab Pest Elimination Inc
Ecowaste Solutions, Inc
Edward Don & Company
Elavon, Inc
Elevator Safety Inspection
Entergy
ER Services
EspriGas
Everest Premier Insurance Company
Everon, LLC
Expedia
Facility Solutions Group, Inc
FEDEX
Felger Hart, Inc
Ferguson Enterprises, Inc.
Ferguson Facilities Supply
Fire & Safety Commodities
FitServe
Florida Bulb & Ballast, inc.

Florida City Gas
Florida Department of Financial Services
Florida Department of Revenue
Florida Dept of Health in Brevard County
Florida Dept of Health in Lee
Florida Door Control of Orlando, Inc
Fort Myers Beach Chamber of Co
Fort Wayne Allen County
Fort Wayne Storage - Time Corners
Fourth Enterprises, LLC – Red Book Solutions
FPL Energy Services
Freedom Pay, Inc
Friedrich Air Conditioning
Gallo Mechanical
Gardaworld, Inc.
Gasket Guy of NW Arkansas
Gavin’s Ace Hardware
GE Applicances, A Haier Company
Gen Digital, Inc
GFL Environmental
Gibson Teldata
Golden Waffles
Gordon Food Service, Inc
GRAINGER
Grayson Fitness Repair & Maintenance, Inc
Greater Fort Myers
Greater Fort Wayne, Inc
Green Leaf Lawn Service
Grinder Hockey LLC
Guest Supply
Guest Tek Interactive Entertai
Gully Pool Service & Supply
Harlan Graphic Arts Services, Inc.
Hartford Fire Insurance Co.
HD Supply Facilities Maintenance
Heights Industrial Supply
Helms Briscoe Perf Group Inc
Hilton Fort Wayne
Hilton Hotels Corporation
Hobart
Holladay Air Conditioning, Inc.
Home Depot Pro
Hossinger Refrigeration, Inc
Hotel Communication Supply
Hotel Credit Association
Hotel Investor Apps Inc

HotelEngine, Inc
HOTELSIGNS.COM
Hybrid Heating & Air
Imprint Plus
Indiana Department of Revenue
Indiana Dept of Homeland Sec.
Indiana Fire Sprinkler & Backflow, Inc
Indiana Michigan Power
Industrial Laundry Services Equipment, LLC
Inn at the Mill
Insight Direct USA, Inc.
Integrity Laundry Services
Intercontinental Hotel Dallas
Interserv Hospitality Solutions LLC
Island Pump & Electric Motor
J&S Liquid Waste Services, Inc.
J.C. Schultz Enterprises, Inc.
JC Ptac Services
Jeff Funkhouser
Jefferson Convention & Visitors Bureau
Jefferson Parish Dept of Water
Jefferson Parish Fire Dept.
Jefferson Parish Sheriff Office
Jefferson Parish Utility Services
JHG Marketing
Jim Welsh, Inc.
John A. Koons Locksmiths
Jones Sign CO., Inc
Jonesboro Coca-Cola
Kalibri Labs
Key-En-Lock LLC
Koch Filter Corporation
Koddi, Inc
Konica Minolta Business Solutions
Koorsen Fire & Security
KoreConX Inc
L&L Construction LLC
L&M Electric Motors
Labor Source, LLC
Lakeshore Recycling Systems
Landart Inc
Landscape Workshop, LLC
LAP Services, LLC
LDH, OPH
Lee County Hotel Association
Lee County Sports Organization, Inc.

Lee County Tax Collector
Lee County Utilities-Customer
Leslies Swimming Pool Supplies
Lexyl Travel Technologies Inc.
LG Fullfillment
Life Fitness, LLC
Liquid Environmental Solutions
Lloyds Exercise Equipment LLC
Lodging Solutions, LLC
Logix Fiber Networks
Louis Mechanical Contractors, Inc.
Louisiana Dept of Revenue
Louisiana Interstate Logos
Louisiana Secretary of State
Lyndon Cummings LLC
Lynx Refrigeration
M2 Compliance, LLC
M2 Roofing, LLC
M7 Services, LLC
Magical Adventures Travel LLC
Manatee Promotions, LLC
Manhattan Bakery, Inc
Marck Recycling & Waste, LLC
Marvelous Mouse Travels
Master Temps Inc
MasterPro Lighting, LLC
Masters of Disasters Leak Detection and Plumbing LLC
MCA Group
Mecklenburg County Tax Collector
Mecklenburg County ABC Board
Mecklenburg County Health Dept
Mecklenburg County Tax Office
Melrose Design Haus
Merchants Automotive Group Inc
Mercury Communications Svcs.
Merus/Aquapure Water Sys Inc
Metropolitan Life Insurance Company
Mini Melts of America, Inc
Mood Media
Moon Plumbing of SWFL Inc
Morgan Pump Systems, Inc
Musso Plumbing Company LLC
Nat Pro Gas of Brevard Inc
Navitas Credit Corp
NC DHHS
Nestle USA Inc

NextEra Energy Services
NIPSCO
Nola Pools and Spas
North Carolina Department of Labor
North Carolina Dept of Revenue
ODP Business Solutions, LLC
Office of Louisiana State
ONITY INC
Ooma, Inc
Optimum Water Solutions, Inc.
Oracle America Inc
Orchid.Events, LLC
Orlando Business Telephone Sys
Otis Elevator Company
Ozarks Coca-Cola
Parish and City Treasurer
Parish of East Baton Rouge Sheriff
Parish of East Baton Rouge Tax Collector
Parity Technology Solutions
Parts Town, LLC
Peleton Interactive, Inc
Pellerin Laundry Machinery Sales Co., Inc.
Pellucid Travel LLC
Pepsi Cola
PEPSI COLA GENERAL BOTTLING
PepsiCo Beverage Sales,LLC
PERFORMANCE FOOD GROUP
PF Service LLC
Piedmont Natural Gas
Pinch A Penny
Pinnacle Communications Corp
Pitney Bowes Global Fin Serv
Pitney Bowes Purchase Power
Pitney Bowes, Inc.
Plant Interscapes
PlaqueMaker.com, Inc
Plasticard-Locktech Internatl
Pool Troopers
Potts Hardware, Inc.
Precision Glass & Mirror Inc
Precision Glass LLC
Premier South LLC
Prisma Graphic Corporation
Professional Venue Solutions LTD
Profitsword, LLC
Property Owner Association

Prosper Hotels
PSC Wellington, LLC
Publix Super Markets
Qnary LLC
Queen City Heating Air & Plumbing
Quore, LLC
Redblue LLC
Regency Enterprises Inc
Reliant Fire and Security, Inc
Renue Systems of Mid-America
Republic Services
RFID Hotel
Richards, Layton & Finger, PA
Roger Advertising & Promotion
Rogers Advertising & Promo Commission
Rogers Water Utilities
Rogers-Lowell Area Chamber of
Rolling Greens
Royal Cup
RR Donnelley
RS Capital, LLC
Ryan LLC
Scentair Technologies, LLC
Schindler Elevator Corporation
SCNZ Architects
Seaside Pools Inc
Secretary of State
Select Hospitality Inc
Sertifi, Inc.
SESAC
Sheriff and Tax Collector
Sherwin Williams
Sherwin Williams - Fayetteville West Store
Sherwin Williams Co
Sherwin Williams Store #7363
Shows for Crews LLC
Shorts Travel Management, Inc.
Sonifi Solutions Inc
Southeastern Laundry Equipment
Southern Cutters, LLC
Southwestern Electric Power
Sporting Arkansas
Springdale Chamber of Commerce
Springdale Water Utilities
Staff Pro LLC
StanfordG Hospitality Consulting, LLC

State of Arkansas
State of Arkansas Washington County Tax Collector
State of Florida
State of Florida Dept of Business
State of North Carolina
State Systems, LLC
Steam Works Cleaning & Restoration
Stericycle, Inc
Steve's Frozen Chillers of Florida Space Coast
Stewart Law Group PLCC
Summit Fire National Consulting, LLC
Summit Utilites Arkansas Inc
Sunbelt Rentals Inc
Soncoast Elevator Inspections
Sunshine Landscaping, LLC
Superior Construction and Development, LLC
Suttons Pool Supply, Inc.
Swalty Kernel LLC
Swims & Sweeps Inc
Sysco Central Florida, Inc.
Sysco Charlotte, LLC
Sysco Corporation
Sysco Food Svc – New Orleans
Sysco West Coast Florida, Inc
TA Connections
TA Connections DE LLC
Tanager, Inc.
TDS IT
Team Travel
Teco Peoples Gas
Texas Secretary of State
The Cocoa Beach Area H&M Assc
The King Housekeeping & Kitchen SL.CC.NL Inc
The Maintenance Team, Inc
The Mini Storage Center
The Propeller Club of Port Canaveral
The Travel 100 Group, Inc
Three Rivers Electric LLC
THS Company LLC
TMI Communications - TekSecute Technology Group
T-Mobile USA Inc
Toast Inc.
Touch of Class Dry Cleaners
Tradavo
Trane U.S. Inc
Travel Advisors of the Mid-South

Travel Advocates International, Inc.
Travel Click Inc
Traveling Teams
Travelscape, LLC
TripleC Travel Inc
UniFirst Corporation
UniGuest
United Mechanical
US Foods
US Foodservice Inc - Charlotte
US Lawns Arkansas
Val-U-Chem Inc
Velocity, A Managed Services Company, Inc
Visit Florida
Visit Fort Wayne
Vistar
W.C. Bochelt & Sons Inc
Wagner-Meinert, LLC
Wasserstrom Company
Waste Connections
Waste Connections Bayou Inc
Waste Connections of NC
Waste Pro of Florida
Waste Pro of Louisiana Inc
Waterbird Window Cleaning
Watertreenwa
WebstaurantStore
Wes Eddington- Craighead County Tax Collector
West Central Fire District
Whaley Foodservice Repairs
WM Corporate Services Inc
World Travel Inc. Corporate HE
WorldVue Connect, Inc.
Yorkmont BP
Zasaco Corporation

**Top 20 General Unsecured Creditors[2]**

PAH Management
Spirit Realty
Deutsche Bank AG
Marriott International, Inc.
Hilton Hotels Corporation
Summit Fire National Consulting, LLC
Holland & Hart LLP

[2] Certain entities listed in the Top 20 General Unsecured Creditors list are also listed elsewhere in this Schedule.

Latham & Watkins LLP
HD Supply Facilities Maintenance
US Foods
Master Temps Inc.
Munck Wilson Mandala LLP
Onity Inc.
Schindler Elevator Corporation
Ecolab Pest Elimination Inc.
InterMountain Renovation Consultants, LLC
WebstaurantStore, Inc.
Advance Catastrophe Technologies, LLC
Central Laundry Equipment, Inc.
Entergy Corporation

**Bankruptcy Judges and Court Staff for the Northern District of Texas**

Jenni Bergreen
Scott W. Everett
Dawn Harden
Hawaii Jeng
Stacey G.C. Jernigan
Michelle V. Larson
Stephen J. Manz
Edward L. Morris
Mark X. Mullin
Brad W. Odell
Karyn Ruetner
Jennifer Speer
Shelby Wimberley

**United States Trustee's Office for the Northern District of Texas – Region 6**

Asher M. Bublick
Kara Croop
Reinhard Freimuth
Fernando Garnica
C. Marie Goodier
Susan Hersh
Alexandria Hughes
Aamer Javed
Meredyth A. Kippes
Lisa L. Lambert
Felicia P. Palos
Nancy S. Resnick
Jason Russell
Kendra Rust

Marc F. Salitore
Joseph Schlotzhauer
Erin Marie Schmidt
Rafay Suchedina
Cheryl H. Wilcoxson
Elizabeth A. Young