Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

George R. Howard (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al.*,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Dkt. Nos. 132 & 161** |

# DEBTORS' OBJECTION TO ARGENTIC'S EMERGENCY MOTION FOR ENTRY OF ORDER CLARIFYING SECOND INTERIM CASH COLLATERAL ORDER

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") file this objection (the "***Objection***") to *Argentic's Emergency Motion for Entry of Order Clarifying Second Interim Cash Collateral Order* [Dkt. No. 161] (the "***Motion to Clarify***") filed by Argentic Services Company LP (as successor-in-interest to LNR Partners LLC), in its capacity as special servicer ("***Argentic***"). The Motion to Clarify asks the Court to explain the basis for the Professional Fee Reserve Account approved in the *Second Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final*

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

*Hearing on the Motion and (IV) Granting Related Relief* [Dkt. No. 132] (the "***Second Interim Order***"), but the Second Interim Order already supplies that basis on its face.[2] The Debtors oppose the Motion to Clarify and in support respectfully state as follows:

1. Although styled as a request for clarification, the Motion to Clarify is in substance a motion for reconsideration. The Court has already considered, and overruled, Argentic's objection to the funding of the Professional Fee Reserve Account with Cash Collateral. Second Interim Order at ¶¶ 2, 7, 23. Argentic now asks the Court to revisit that ruling by rearguing the same points under a new label. Permitting a losing party to reopen an issue simply by recasting its objection as a request for "clarification" would undermine the Court's orders, invite serial motion practice, and divert the Debtors' limited estate resources—and the Court's time—from the orderly administration of these chapter 11 cases and preparation for the Final Hearing. Nothing relevant has changed since the hearing on the Second Interim Order, and no rule permits a party to reargue a decided issue under the guise of a request for clarification. The Court should decline Argentic's invitation to relitigate a matter it has already decided.

2. No clarification is needed because the Court's ruling at the Cash Collateral hearing was clear that the Professional Fee Escrow would be authorized for the interim period, specifically stating "I will allow the 135,000 per week funding of a professional fee escrow. So I'm overruling the objection on that. For now, for this short next interim period, I will find that Argentic is adequately protected with regard to this and the other usages of cash that have not been objected to through the replacement liens." Hr'g Tr. 148:7–12, Oct. 29, 2026 (a copy of the Court's ruling is attached hereto as <u>**Exhibit A**</u>).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Second Interim Order.

3. Additionally, the terms of the Second Interim Order are not ambiguous. Consistent with the Court's ruling, the Second Interim Order expressly authorizes the Debtors to use Cash Collateral to fund the Professional Fee Reserve Account, Second Interim Order at ¶¶ 2, 7, and it expressly reserves all parties' rights with respect to any surcharge under section 506(c) of the Bankruptcy Code, *id.* at ¶ 21. Although Argentic states that it does not seek to reargue the Court's ruling, the Motion to Clarify nonetheless reargues that paragraph 7 "affirmatively carves" collateral out of the Secured Lenders' liens and previews a potential appeal. Motion to Clarify at ¶ 9 & n.3. Those arguments lack merit, and the Second Interim Order contains no carve-out. Second Interim Order at ¶¶ 23, 24.

4. The Second Interim Order supplies the basis for the Professional Fee Reserve Account. Paragraph 2 authorizes the use of Cash Collateral in accordance with the Budget for, among other things, "the funding of the Professional Fee Reserve Account in accordance with paragraph 7." Second Interim Order at ¶ 2. Paragraph 7, in turn, directs the Debtors to transfer "cash, including Cash Collateral," to the Professional Fee Reserve Account each week in the amount of the Budgeted Professional Fees. *Id.* at ¶ 7. The basis for the Court's ruling is therefore an authorized use of cash, including any Cash Collateral, under section 363(c)(2), which it found Argentic was adequately protected for under section 363(e). *Id.* It is not a surcharge under section 506(c), and the Second Interim Order contains no separate carve-out or surcharge provision.

5. Argentic's stated concern, whether the Court imposed a section 506(c) surcharge, is answered by paragraph 21, which provides that, "[n]otwithstanding anything to the contrary in this Second Interim Order," the Debtors, Argentic, the Secured Lenders, and all other parties "expressly reserve all of their respective rights, claims, and defenses with respect to any claim to surcharge any collateral under section 506(c)." Second Interim Order at ¶ 21. Argentic itself

acknowledges that the Court stated on the record that its aim was to preserve all parties' rights regarding section 506(c). Motion to Clarify at ¶ 9. Paragraph 21 does exactly that.

6. Once funds are transferred to the Professional Fee Reserve Account as the Court directed, they have been used as authorized by the Court. Second Interim Order at ¶¶ 2, 7. Any diminution in the Secured Lenders' asserted interests resulting from that use is addressed by the adequate protection package in the Second Interim Order, which the Court found sufficient. Argentic's objection to the Professional Fee Reserve Account was overruled. *Id.* at ¶¶ 20, 23. Once Cash Collateral has been used as authorized under section 363(c)(2) of the Bankruptcy Code, any resulting diminution in the Secured Lenders' asserted interests is addressed by adequate protection under section 363(e), not by a continuing lien on the funds used.

7. The Motion to Clarify also rests on the premise that the Professional Fee Reserve Account is funded with "the Secured Lenders' collateral." Motion to Clarify at ¶¶ 1, 9, 11. This is contrary to the terms of the Second Interim Order, which specifically reserves this issue, stating that the Debtors have not stipulated to, and the Second Interim Order does not determine, the validity, extent, perfection, priority, or enforceability of any lien asserted by the Secured Lenders or whether any particular funds constitute Cash Collateral. Second Interim Order at ¶¶ 8, 20. Any order on the Motion to Clarify should not resolve those reserved issues by implication.

8. Finally, Argentic requests emergency consideration on the ground that it needs the Court's explanation to prepare for the Final Hearing. This argument is not necessary and is not an emergency. The Court has already overruled Argentic's objection and authorized the use of Cash Collateral to fund the Professional Fee Escrow. The terms of the Second Interim Order are unambiguous and implement this ruling. Accordingly, and the Debtors respectfully request that the Court deny the Motion to Clarify on the papers.

## PRAYER

The Debtors respectfully request that the Court (a) deny the Motion to Clarify; and (b) grant such other and further relief to which the Debtors may be justly entitled.

Dated: November 5, 2026
Dallas, Texas

*/s/ Bradley R. Foxman*
**VINSON & ELKINS LLP**
Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

- and -

George R. Howard (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**CERTIFICATE OF SERVICE**

I certify that on November 5, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Bradley R. Foxman*
One of Counsel

# **EXHIBT A**

**10/29/2026 Hearing Transcript Excerpt**

cash collateral order if the Court is inclined to grant cash collateral on an interim basis.

THE COURT: Is there anyone I missed? Okay.

(Pause)

THE COURT: I'm going to remind everyone, you probably don't need reminding, but I'm going to remind everyone we are really pretty early in this Chapter 11 case. It was filed, what, October 4th. Today is October 29th, so 25 days.

And so certainly, nothing I'm doing here today is going to set in stone a path going forward. It still looks precarious. That may or may not have been Mr. Foxman's words the first day. I think it was. This is a situation that, well there's obviously a lot of contentiousness. But we have estate professionals who stepped in, I truly believe without a lot of information, and were trying to preserve value and had a liquidity crunch, had a crisis of confidence in Mr. Nelson after the SEC judgment.

Debtors' professionals knew there were a lot of -- there was a lot of secured debt here. And as has been noted, not just secured creditors owed a heck of a lot of money, but 2,000 investors who invested $86 million, a landlord, vendors, employees hanging in the balance. A lot of people, a lot of stakeholders who might take a terrible hit, shall we say, if we can't fix some of the problems that exist here.

I want to not only say nothing I'm saying today sets

in stone a path forward. But everyone should keep very focused on all I'm ruling on today is a motion to use cash collateral on a second interim basis. Okay. There was a 13-week budget, but I am not approving cash collateral usage for 13 more weeks. We will come back much sooner than that to discuss what's next as far as cash collateral usage.

I'm not here on 365 motions of either a landlord or a property management company. I don't know, maybe those are going to be filed very soon. Maybe not. Maybe people will sit down at a table and see if there's some middle ground they can reach.

I'm not ruling today on a motion to dismiss that has been filed in the last 48 hours by Argentic. And I don't have any motions to lift stay in front of me. So there is a lot out there swirling around that, gosh, I would sure like to see worked out without too many more half-day hearings.

But I am going to approve usage of cash collateral under 363 as reasonable and necessary usages with some exceptions. I want to be clear in this order that the Court is not granting any authority to the Debtors to use revenue from the two Fort Wayne, Indiana properties. We've heard that the Debtor does not view it as Debtors' cash collateral. But we've also heard the Debtor intends to funnel up to the REIT, or one of the REITs, some of the revenue to cover REIT corporate expenses, and to fund a professional fee escrow.

I want the order to be clear. I am not approving any usage by the Debtor of the revenues of those two properties. Okay. I'm not, on the flip side, going to restrict the Debtor because I don't know what the corporate documentation allows for or doesn't allow for.

There may be some contractual argument that could be made, I don't know. That may be teed up in front of me. But for now, I just want the order to be clear that the Debtor does not have court authority, does not have bankruptcy court authority to use revenue of the Fort Wayne properties.

The second thing I'm going to do is explicitly not allow cash collateral to be used for the 3 percent management fee until I have an accounting of the 357,000 that is not accounted for. There may be something innocent there, or there may be something bad there. So while I do feel bad for corporate-level employees who may be working hard, who may be assisting with schedule preparation, while I do feel bad if there's rent due, 14,000 or whatever it is rent due at a corporate headquarters, I have concerns about the 357,000.

And we will come back again soon enough where this issue will either be, I don't know, presented with evidence to the Court. And I'll be okay with it or I won't be. But that is an issue looming too large right now for me to approve on this second interim basis usage of cash collateral for that reason.

I know this may seem somewhat odd. I think I'm hearing that the lender, at least, Argentic consents to usage of its cash collateral for, I don't know, everyone but Perch Nelson, or no? I don't know. I'm still not -- it doesn't matter. But anyway, we'll come back. We're going to come back in two or three weeks and maybe flesh through this more.

I will allow the 135,000 per week funding of a professional fee escrow. So I'm overruling the objection on that. For now, for this short next interim period, I will find that Argentic is adequately protected with regard to this and the other usages of cash that have not been objected to through the replacement liens.

And it does appear there's an equity cushion on one of the properties, Charlotte, from the little bit of evidence we heard on that. But again, we're going to come back in two or three weeks. We're going to talk about that. And so this is just a second interim order authorizing that for now.

With regard to this carve-out that we went on and on and on about, I am just going to say that everyone's 506(c) rights and arguments are preserved. It feels like that's really what we're talking about, that the Debtor reserves the right when we get to maybe a sale to say we ought to get a carve-out from those sale proceeds for X dollars for our professional fees. And we think it benefitted the secured lender. We may not ever get there.

Again, this is a two- or three-week second interim order. But for now, I just want that in the cash collateral that the 130,000 a week is permitted for now. And all rights are reserved with regard to 506(c) arguments at some point in time.

So, any other objections that I've not specifically addressed are overruled for now at this second interim stage. Again, I don't have a 365 motion before me with regard to Spirit. And we'll see if they can work something out or if I have one of those motions in front of me right now in the near future.

So let's talk about, I do have a 1:30 hearing, and then a 2:00 hearing, so we need to wrap it up. Any questions, Mr. Foxman, other than when are we going to come back?

MR. FOXMAN: I believe that's my only question, Your Honor.

THE COURT: Okay. Hawaii, are you out there, or are you dealing with people trying to connect on our 1:30 hearing?

MS. JENG: I am here.

THE COURT: Okay. Do we have -- I heard from Mr. Cooley that you had offered a few dates yesterday with regard to the motion to dismiss. It certainly --

MR. COOLEY: And we've had a chance to confer about that.

THE COURT: Okay. It seems to make sense we set