Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

George R. Howard (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY PROPERTIES REIT, INC., *et al.*,** | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING ALAN TANTLEFF AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE AND (III) GRANTING RELATED RELIEF**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED.IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

The above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***") hereby submit this application (the "***Application***") for the entry of an order, substantially in the form attached as **Exhibit A** (the "***Proposed Order***") and pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "***Bankruptcy Code***") (i) authorizing the retention and employment of FTI Consulting, Inc. ("***FTI***") to provide the Debtors a Chief Restructuring Officer ("***CRO***") and certain Additional Personnel (as defined below) to assist the CRO, (ii) designating Alan Tantleff ("***Mr. Tantleff***") as CRO (together with the Additional Personnel, the "***FTI Professionals***") in connection with the above-captioned chapter 11 cases (collectively, the "***Chapter 11 Cases***"), effective as of the Petition Date (as defined below) and (iii) granting related relief consistent with the terms of the engagement agreement (the "***Engagement Agreement***"), which is attached as **Exhibit B**. In support of this Application, the Debtors rely on the declaration of Mr. Tantleff (the "***Tantleff Declaration***") attached as **Exhibit C**. In further support of the Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Bankruptcy Rules 2014-1 and 2016-1 of the United States Bankruptcy Court for the Northern District of Texas (the "***N.D. Tex. L.B.R.***").

## BACKGROUND

4. American Hospitality Properties REIT, Inc. ("***REIT I***") and American Hospitality Properties REIT II, Inc. ("***REIT II***") (collectively, the "***AHP Entities***," and together with their Debtor and non-Debtor affiliates, the "***Company***") are Delaware-incorporated, non-traded companies formed to engage primarily in the acquisition of premium branded hotels and other real estate-related assets either secured by or related to hotel properties in the United States. The AHP Entities own a portfolio of hospitality assets across the country, including properties affiliated with the Marriott and Hilton hotel brands.

5. The AHP Entities were founded by William Lee "Perch" Nelson ("***Mr. Nelson***") and Phoenix American Hospitality, LLC ("***PAH***"), a Dallas-based hospitality investment, asset management, and hotel operations company. PAH, which remains led by Mr. Nelson as its Chief Executive Officer, serves as the external property manager for certain of the Company's entities in which the AHP Entities hold ownership interests. Prior to the commencement of these Chapter 11 Cases, the Company generated revenue primarily through the ownership of its hotel properties and related hospitality businesses.

6. On October 4, 2026 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee

or examiner has been made and no official committee of unsecured creditors has been appointed in these Chapter 11 Cases to date.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 20], the *Declaration of Alan Tantleff in Support of Additional First Day Motions* [Dkt. No. 53], and the *Declaration of Alan Tantleff in Support of (I) Final Relief Requested in the Debtors' Additional First Day Motions; and (II) Supplemental First Day Motions* [Dkt. No. 111].

## RELIEF REQUESTED

8. By this Application, the Debtors request entry of an order (the "***Order***") substantially in the form attached as **Exhibit A**: (i) authorizing the retention and employment of FTI to provide the Debtors a CRO and certain Additional Personnel (as defined below), (ii) designating Mr. Tantleff as CRO, effective as of the Petition Date, subject to further order of the Court, pursuant to the terms of the Engagement Agreement and (iii) granting related relief.[2]

## RELEVANT INFORMATION

### A. FTI's Qualifications

9. FTI has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations and has an excellent reputation for services it has rendered in large and complex Chapter 11 cases on behalf of debtors and creditors throughout the United States. FTI's expertise includes liquidity and capital structure assessment, debt and equity

[2] To the extent there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

restructuring advice, and identification of reorganization alternatives with a debtor's secured lenders on the use of cash collateral, assessing and recommending cost reduction strategies, providing transactional support to market a debtor's assets (including forecasting, creating marketing materials, contacting potential buyers, and negotiating offers for debtor owned assets), preparing a debtor for a Chapter 11 filing, and designing and negotiating financial restructuring packages.

10. The FTI Professionals specialize in interim management, turnaround and restructuring services, asset sales, and business transformation. FTI's debtor advisory services include a wide range of activities targeted toward maximizing the value of a debtor's assets and recoveries to creditors, including developing or validating forecasts, working with management on operational issues, monitoring and managing cash flow and creditor relationships, and negotiating financial restructuring packages.

11. In addition, FTI has provided similar services and personnel in recent cases in this Court. *See, e.g.*, *In re PrimaLend Capital Partners*, Case No. 25-90013 (MXM) (Bankr. N.D. Tex. Dec. 4, 2025); *In re Northwest Senior Housing Corp.*, Case No. 22-30659 (MVL) (Bankr. N.D. Tex. May 12, 2022); *In re TriVascular Sales LLC*, Case No. 20-31840 (SGJ) (Bankr. N.D. Tex. Aug. 19, 2020); *In re PHI, Inc.*, Case No. 19-30923 (HDH) (Bankr. N.D. Tex. May 2, 2019).

12. Mr. Tantleff has served as the CRO of another REIT that owned hotels known as Eagle Hospitality Real Estate Trust and its subsidiaries. *See In re EHT US1, Inc.*, Case No. 21-10036 (CSS) (Bankr. D. Del. Mar. 4, 2021). Accordingly, Mr. Tantleff is familiar with REITs and hospitality assets, including their operations, financing structures, management, and other matters in this business.

13. As set forth in the Engagement Agreement, FTI has made Mr. Tantleff available to serve as CRO to the Debtors and has made additional individuals available who will provide various other critical management services to the Debtors (the "***Additional Personnel***"). The Additional Personnel will assist the CRO in the execution of his duties in accordance with the Engagement Letter and as set forth in this Application.

**B. Mr. Tantleff's Qualifications**

14. Mr. Tantleff is a Senior Managing Director and leader of the Hospitality, Gaming, and Leisure industry practice of FTI, a leading global business advisory firm with over 50 offices worldwide and over 5,000 professionals, where he specializes in, among other things, workouts and financial restructurings of lodging, hospitality, and commercial real estate businesses. Mr. Tantleff has over 30 years of diverse, hands-on experience in areas of commercial real estate development, workouts and restructuring, asset management, structured debt and equity financing, and acquisitions and dispositions.

15. Prior to joining FTI, Mr. Tantleff served as a Managing Director at Hotel Asset Value Enhancement, a boutique asset management and advisory practice dedicated to the hospitality industry. Mr. Tantleff has also worked at BlackRock Financial Services and held senior management positions at Jones Lang LaSalle, Granite Partners (Savills), The Prudential Insurance Company of America, and Sands Casino in Atlantic City.

16. Mr. Tantleff holds a Bachelor of Science in Hotel Management from Cornell University and a Master of Science in Real Estate Investment and Development from New York University. Mr. Tantleff is a licensed real estate broker in The State of New York, a Certified Insolvency and Restructuring Advisor, and a Certified Turnaround Professional.

17. Despite being retained shortly before the Petition Date, the FTI Professionals have expended significant efforts to acquire substantial knowledge regarding the Debtors and their business and operations, and are familiar with their financial affairs, debt structure, operations, and related matters on a compressed timeline. The FTI Professionals' relevant experience and expertise regarding the Debtors will allow them to provide effective and efficient services to the Debtors in these Chapter 11 Cases. Accordingly, the FTI Professionals are both well-qualified and uniquely positioned to assist the Debtors in successfully navigating the Chapter 11 process in an efficient and timely manner.

**C. Services to Be Provided**

18. Subject to Court approval, the parties have entered into the Engagement Agreement, which governs the relationship between the Debtors and FTI. The Engagement Agreement was the result of arm's-length negotiations and in good faith between the Debtors and FTI. The Engagement Agreement reflects the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Agreement and in consideration for the compensation contemplated thereby, the FTI Professionals have provided and will continue providing the following financial advisory services (collectively, the "***Services***"), among others, pursuant to the terms and provisions of the Engagement Agreement, as necessary and appropriate, and as mutually agreed upon by FTI and the Debtors:[3]

a. Provide Alan Tantleff as CRO;
b. Evaluate liquidity position, cash needs, and disbursement controls;
c. Prepare weekly and monthly liquidity reports;
d. Coordinate the advisory team and assist with restructuring activities;
e. Manage day-to-day restructuring operations and working capital;
f. Develop and implement strategies for negotiations with key stakeholders, vendors, and creditors;

---

[3] This Application summarizes the terms of the Engagement Agreement. To the extent that there is a conflict between the Application and the Engagement Agreement, the Engagement Agreement will govern.

g. Prepare and present cash flow analyses and diligence materials for potential lenders and DIP financing;
h. Support data collection and due diligence for potential asset sales or Section 363 transactions;
i. Assist with Chapter 11 contingency planning, filings, and creditor communications;
j. Prepare required financial reports, statements, and disclosure materials for the Court;
k. Support development of a plan of reorganization or liquidation and related valuation analyses;
l. Manage the claims reconciliation process and provide testimony or analysis as needed; and
m. Perform additional customary services as reasonably requested and are customary in this type of engagement.

19. The Debtors do not believe that the Services provided by the FTI Professionals will be duplicative of the Services performed by any other professional, and FTI will work with the other professionals retained by the Debtors to minimize any duplication of Services on behalf of the Debtors.

20. The FTI Professionals' performance of the Services is critical to the Debtors' ongoing efforts to successfully achieve their Chapter 11 objectives and preserve value for their estates. As a result, the Debtors submit that the FTI Professionals are well-qualified and best suited to perform the Services.

**D. <u>FTI's Compensation</u>**

21. Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., and such other procedures as may be fixed by order of the Court, the Debtors will compensate the FTI Professionals in accordance with the terms and conditions of the Engagement Agreement (the "***Fee Structure***").

22. The Engagement Agreement provides that FTI will be compensated for providing the Services of Mr. Tantleff at a fixed rate of $100,000 per month. The current hourly billing rates

for the Additional Personnel, based on the position held by such persons at FTI, are subject to the following ranges:

| Position | Hourly Rate |
|---|---|
| Senior Managing Directors | $1,345 – $1,645 |
| Directors, Senior Directors,<br>Managing Directors | $995 – $1,265 |
| Consultants, Senior Consultants | $550 – $900 |
| Administrative, Paraprofessionals | $195 – $395 |

23. In addition to compensation for professional services, FTI will seek reimbursement for reasonable and documented out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including, without limitation, travel costs.

24. The Debtors believe that the Fee Structure is reasonable and comparable to fee structures generally charged by restructuring officers and their personnel and other consultants of similar stature to FTI for comparable engagements, both in and out of Chapter 11. The Fee Structure summarized above and described more fully in the Engagement Agreement is consistent with FTI's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the Services to be provided in connection with Chapter 11 cases. In addition, the Fee Structure is comparable to the terms and conditions FTI offers to similar clients for similar services.

25. For the 90 days prior to the Petition Date, FTI received advanced payments in the aggregate amount of $200,000 for Services performed and to be performed, including Services related to the commencement and administration of these Chapter 11 Cases. FTI has a remaining credit balance in favor of the Debtors for Services performed and to be performed, and expenses incurred and to be incurred, in connection with these Chapter 11 Cases in the amount of approximately $115,997.50 (the "***Retainer***"). FTI intends to retain the balance of the Retainer on account for Services rendered and expenses incurred subsequent to the Petition Date. Accordingly,

as of the Petition Date, FTI does not hold any prepetition claim against the Debtors for fees or expenses. Additionally, from October 2024 until September 2026, FTI was engaged by PAH, REIT I and REIT II to provide tax and accounting advisory services in connection with the establishment of new real estate investment trusts. FTI received a $10,000 retainer for this work; however, FTI's work on these matters is complete and FTI is not owed any amounts on these matters.[4]

### E. Reporting Requirements

26. If the Court grants the relief requested, FTI will be retained to provide the Debtors with Mr. Tantleff as CRO and the Additional Personnel to assist him with his duties in these Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code. Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

27. Nevertheless, to maintain transparency and to comply with the protocol of United States Trustee for the Northern District of Texas, Dallas Division ("***U.S. Trustee***") applicable to the retention of personnel under section 363 of the Bankruptcy Code, FTI will file with the Court and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases (the "***Committee***", and collectively, the "***Notice Parties***"), a report on staffing (the "***Staffing Report***") by the 30th of each month for the previous month. Such reports will (a) summarize the Services provided to the Debtors by project category, (b) summarize the compensation earned by each of the FTI Professionals, (c) summarize the time expended by the FTI Professionals, by project category and (d) itemize the expenses incurred. The Notice

---

4 For more information on FTI's prepetition activity with the Debtors, *see* the *Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Pleadings* at [Dkt. No. 20].

Parties shall have 14 days after the date a Staffing Report is served on the Notice Parties to object to such Staffing Report. The Staffing Report, FTI's staffing decisions, and all compensation identified in the Staffing Report will be subject to review by the Court in the event an objection is filed. FTI will file its first Staffing Report on November 30, 2026, for the period covering the Petition Date through and including October 31, 2026.

28. For the avoidance of doubt, the CRO and the Additional Personnel will not be required to submit time entries in one-tenth of an hour increments, but instead may submit time entries in one-hour increments.

**F. <u>No Duplication of Services</u>**

29. FTI is aware of the fact that the Debtors have retained (a) Vinson & Elkins LLP as general bankruptcy counsel to the Debtors and (b) Omni Agent Solutions, Inc. as Claims and Noticing Agent, and that the Debtors may retain additional professionals during the term of the engagement. FTI will work cooperatively with, and not duplicate the services of, the other professionals in order to integrate any respective work performed by FTI on behalf of the Debtors with the work performed by the other professionals.

**H. <u>Indemnification</u>**[5]

30. The Engagement Letter contains standard indemnification language with respect to FTI's Services including, without limitation, an agreement by the Debtors to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents, and controlling persons (each, an "***FTI Party***") from and against any losses, claims, damages, or expenses – or if an FTI Party is made a party to or witness or other participant in any threatened,

[5] This section is intended to be summary in nature. Parties are directed to the Engagement Agreement for the full terms of the Debtors' indemnification obligations. In the case of any conflict between this Application and the Engagement Agreement, the Engagement Agreement shall control.

pending, or completed action or investigation – by reason of (or arising in part out of) any event or occurrence related to the Engagement Agreement, or any predecessor agreement for Services or the fact that any FTI Party is or was an agent, officer, director, employee, or fiduciary of the Debtors or their affiliates, or by reason of any action or inaction on the part of any FTI Party while serving in such capacity, except to the extent caused by gross negligence, bad faith, willful misconduct, or fraud of any FTI Party, or from a breach by the FTI Party of its confidentiality obligations under the Engagement Agreement.

31. The indemnification provisions contained in the Engagement Agreement (the "***Indemnification Provisions***") are customary and reasonable for FTI and comparable firms providing similar services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's length and in good faith. The provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's Services to successfully reorganize.

32. Notwithstanding the foregoing, FTI understands that the Indemnification Provisions shall apply only to such FTI employees not serving in executive officer positions and that the indemnification of any persons serving as executive officers shall be on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy. The indemnification terms herein supersede and replace any provision of the Engagement Agreement related to the indemnification of any executive officers including, but not limited to, the applicable provisions of Section 6 of the Standard Terms and Conditions of the Engagement Agreement.

33. The Debtors request that with respect to any persons not serving in executive officer positions, this Court approve the Indemnification Provisions as set forth in the Engagement Agreement.

## I. FTI's Connections with the Debtors

34. To the best of the Debtors' knowledge, information, and belief, FTI does not have any connection with or any interest adverse to the Debtors, their significant creditors, or any other significant party in interest known to FTI, or their respective attorneys and accountants, except as may be set forth in the Tantleff Declaration. Although the Debtors submit that the retention of FTI is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Tantleff Declaration, which discloses, among other things, any relationship that FTI has with the Debtors, their significant creditors, or other significant parties in interest known to FTI. Based on the disclosures set forth in the Tantleff Declaration, the Debtors do not believe that FTI has any conflict of interest or a material adverse interest to the Debtors.

## BASIS FOR RELIEF REQUESTED

35. The Debtors request authority to designate Mr. Tantleff as CRO with the assistance of the Additional Personnel of FTI under the terms of the Engagement Agreement pursuant to section 363 of the Bankruptcy Code, which provides in pertinent part that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to such provision where, as here, they are supported by management's sound business judgment. *See, e.g., In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

36. If a debtor's proposed use of its assets pursuant to section 363 of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *subsequently aff'd sub nom. In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered.").

37. The Debtors submit that the retention and employment of FTI is a sound exercise of their business judgment pursuant to section 363 of the Bankruptcy Code, as FTI's services are necessary and essential to the Debtors' restructuring efforts. The CRO and the Additional Personnel also have extensive experience providing restructuring services to distressed companies, and the CRO specializes in restructurings of lodging, hospitality, and commercial real estate businesses. Since its retention, FTI has been integral to stabilizing the Debtors' hotel operations by preparing a comprehensive cash flow forecast, supporting the Debtors' requests for operational relief, pursuing debtor-in-possession financing, and safeguarding estate assets. As a result of these efforts, the CRO and the Additional Personnel have acquired substantial knowledge of the Debtors' business and financial affairs.

38. Moreover, numerous bankruptcy courts in this district have analyzed the propriety of a debtor's employment of chief restructuring officers and restructuring professionals under section 363 of the Bankruptcy Code and have determined it is an appropriate exercise of the debtor's business judgment to employ a chief restructuring officer and supporting personnel in this

manner. *See, e.g., In re Wiser Solutions, Inc.*, Case No. 26-80002 (SWE) (Bankr. N.D. Tex. Jun. 29, 2026); *In re Buddy Mac Holdings, LLC*, Case No. 25-34839 (MVL) (Bankr. N.D. Tex. Jul. 20, 2026); *In re PrimaLend Capital Partners, LP*, Case No. 25-90013 (MXM) (Bankr. N.D. Tex. Dec. 4, 2025); *In re Omnicare, LLC*, Case No. 25-80486 (SGJ) (Bankr. N.D. Tex. Nov. 3, 2025); *In re Genesis Healthcare, Inc.*, Case No. 25-80185 (SGJ) (Bankr. N.D. Tex. Sept. 5, 2025).

39. In light of FTI's restructuring experience and its familiarity with the Debtors' operations and capital structure, FTI's immediate retention to provide a CRO and certain Additional Personnel and designating Mr. Tantleff as CRO as of the Petition Date in these Chapter 11 Cases is both necessary and in the best interests of the Debtors' estates. Indeed, if the Debtors were required to replace FTI, the Debtors would need to locate, educate, and integrate a new a professional and expend significant resources in doing so, wasting their time and distracting their focus from maintaining their operations during these Chapter 11 Cases. Thus, retaining FTI will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and will assist in maximizing value for the Debtors' estates and all stakeholders.

40. The Court's local rules set forth the requirements for retroactive employment for an application filed more than thirty days after a professional commences provision of services. N.D. Tex. L.B.R. 2014-1(b)(2). This Application was filed two days after the period in which retroactive relief is deemed contemporaneous. N.D. Tex. L.B.R. 2014-1(b)(1). However, the Debtors believe that FTI's retention to provide a CRO and Additional Personnel effective as of the Petition Date is still warranted. Mr. Tantleff and FTI have provided, and will continue to provide, valuable Services to the Debtors, having worked to stabilize the Debtors' operations, assist with the preparation of various pleadings, and represent the Debtors in contested hearings. The minor delay in filing the Application was the result of FTI's and the Debtors' other advisors' efforts in

attending to competing workstreams, including ensuring their use of cash collateral, potential debtor-in-possession financing, and exploring other strategic alternatives to maximize the Debtors' value for all stakeholders. Retroactive employment is necessary to ensure that FTI can be compensated for the Services it has provided to the Debtors to date. To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties-in-interest.

41. The Debtors have determined, in the exercise of their business judgment, that the Fee Structure set forth in the Engagement Agreement appropriately reflects the nature of the Services to be provided by the FTI Professionals, contains reasonable terms and conditions of employment, and should be approved under section 363 of the Bankruptcy Code.

## NOTICE

42. Notice of this Application has been provided by delivery to: (a) the U.S. Trustee; (b) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (c) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) counsel to Mr. Nelson, PAH, and PAHM; (g) counsel to Argentic Investment Management, LLC; (h) counsel to Spirit Realty LP; and (i) all other applicable government agencies to the extent required by the Bankruptcy Rules or the N.D. Tex. L.B.R. In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

43. No prior application for the relief requested herein has been made to this Court or any other court.

## PRAYER

The Debtors respectfully request that the Court enter the Order, substantially in the form attached as **Exhibit A**, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated: November 5, 2026
Dallas, Texas

American Hospitality Properties REIT, Inc.

By: */s/ Joseph Reardon*
Joseph Reardon
President of the Board of Directors

American Hospitality Properties REIT II, Inc.

By: */s/ Joseph Reardon*
Joseph Reardon
President of the Board of Directors

**CERTIFICATE OF SERVICE**

I certify that on November 5, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Bradley R. Foxman*
One of Counsel

# **Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al*.,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Dkt. No. __** |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING ALAN TANTLEFF AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE AND (III) GRANTING RELATED RELIEF**

Upon the application (the "***Application***")[2] of the above-captioned debtors and debtors in possession (the "***Debtors***"), for entry of an order (this "***Order***") pursuant to sections 105(a) and 363(b) of the Bankruptcy Code: (i) authorizing the retention and employment of FTI to provide

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

the Debtors a CRO and certain Additional Personnel, (ii) designating Mr. Tantleff as CRO, effective as of the Petition Date and (iii) granting related relief; and upon consideration of the Tantleff Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. § 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being satisfied, based on the representations made in the Application and the Tantleff Declaration that Mr. Tantleff and the Additional Personnel have the capability and experience to provide the Services described in the Application and FTI does not hold or represent an interest adverse to the Debtors or their estates related to any matter for which it will be employed; and any objections to the Application having been resolved or overruled; and the Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to retain FTI to provide the Debtors a CRO and certain Additional Personnel to assist the CRO, and to designate Mr. Tantleff as CRO for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreement effective as of the Petition Date.

2. Notwithstanding anything in the Application or the Engagement Agreement to the contrary:

(a) FTI and its affiliates shall not act in any other capacity (for example, and without limitation, as a claims agent/claims administrator, investor/acquirer, or as general counsel) in connection with these Chapter 11 Cases.

(b) In the event the Debtors seek to have the FTI Professionals assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, the Debtors shall file a motion or application to modify the retention with the Court.

(c) FTI shall file with the Court, with copies to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases (together, the "***Notice Parties***"), a report on staffing (the "***Staffing Report***") by the 30th of each month for the previous month, which report will include the names, hours worked, and requested compensation by the CRO and all full- and part-time FTI Professionals involved in these Chapter 11 Cases for the month and a summary of reimbursable expenses incurred for the relevant period. The Notice Parties shall have 14 days after the date a Staffing Report is served on the Notice Parties to object to such Staffing Report. The Staffing Report, FTI's staffing decisions, and all compensation identified in the Staffing Report will be subject to review by the Court in the event an objection is filed. FTI will file its first Staffing Report on November 30, 2026, for the period covering the Petition Date through and including October 31, 2026.

(d) Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., any other orders of this Court, or any guidelines regarding submission and approvals of fee applications, the FTI Professionals may submit time entries in one-hour increments for purposes of Staffing Reports.

(e) FTI shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their estates, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

(f) The Debtors shall pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention.

(g) For a period of three years after the conclusion of the engagement, neither FTI nor any of its affiliates shall make any investments in any the Debtors or any reorganized Debtor. FTI shall disclose any and all facts that may have a bearing on whether FTI, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

(h) The Debtors are authorized to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policies.

3. Notwithstanding any provision to the contrary in the Engagement Agreement, the Debtors are permitted (i) to indemnify those persons acting as executive officers only on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law; *provided*, however, the Debtors shall have no duty to indemnify or hold FTI harmless for any loss, action, claim, damage, liability, or cost (collectively, "***Loss***") to the extent such Loss is found, in a final judgment by a court of competent jurisdiction, to have resulted primarily and directly from the willful misconduct, gross negligence, bad faith, or unlawful activities of FTI, and (ii) to provide insurance coverage under the Debtors' director and officer insurance policies to FTI and its personnel.

4. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Agreement, and this Order, the terms of this Order shall govern.

5. FTI shall provide ten (10) business days' notice to the Debtors, the U.S. Trustee, and any statutory committee before filing any invoice setting forth increases in the hourly rates set forth in the Application or the Engagement Letter to be charged to the Debtors. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

6. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, and during the pendency of these Chapter 11 Cases, the Court shall be the exclusive venue for determining disputes concerning Mr. Tantleff's retention under the Engagement Agreement.

7. Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or the N.D. Tex. L.B.R., the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted by this Order in accordance with the Application.

**# # # END OF ORDER # # #**

**Order submitted by:**
**VINSON & ELKINS LLP**
Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

- and –

George R. Howard (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION**

# Exhibit B

## Engagement Agreement

FTI Consulting, Inc.
1166 Avenue of the Americas, 15th Floor
New York, New York 10036
+1 212.499.3613
alan.tantleff@fticonsulting.com

**PRIVATE & CONFIDENTIAL**

September 28, 2026

Joe Reardon
President of the Boards of Directors
American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Paul Adams
Member of the Board of Directors
American Hospitality Properties REIT, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Mary Pfeiffer
Member of the Board of Directors
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Copy to:

Mr. George R. Howard, Esquire
Vinson & Elkins LLP
The Grace Building
1114 Avenue of the Americas
32nd Floor
New York, New York 10036

Dear Mr. Reardon, Mr. Adams and Ms. Pfeiffer:

This letter confirms that FTI Consulting, Inc. ("FTI") has been retained by American Hospitality Properties REIT, Inc. and American Hospitality Properties REIT II, Inc. ("Client") to provide to provide certain temporary employees to Client for restructuring planning and interim management services (the "Services") in connection with the potential restructuring. This letter of engagement (the "Engagement Letter") and the related Standard Terms and Conditions attached hereto as Exhibit "A" constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided (the provision of such Services, the "Engagement").

FTI CONSULTING

**1. Temporary Officers, Hourly Temporary Employees and Services**

FTI will provide Alan Tantleff to serve as Client's Chief Restructuring Officer (the "CRO" and the "Temporary Officer") reporting to independent directors on the Board and the director who is also the President of the Client in connection with the Engagement (the "Committee"). The Temporary Officer, as well as any additional Hourly Temporary Staff, (as defined below), shall have such duties as the Committee may from time to time determine, and shall at all times report to and be subject to supervision by the Committee. Without limiting the foregoing, the Temporary Officer, as well as any Hourly Temporary Staff, shall work with the President, the Boards of Directors, and other professionals, to provide the Services.

In addition to providing the Temporary Officer, FTI may also provide Client with additional staff (the "Hourly Temporary Staff" and, together with the Temporary Officer, the "FTI Professionals"), subject to the terms and conditions of this Engagement Contract. The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals reasonably satisfactory to the Board and/or Committee, as required, who shall also become Hourly Temporary Staff for purposes hereof. The initial schedule of Hourly Temporary Staff is set out on Exhibit "B". FTI will keep the Committee reasonably informed as to FTI's staffing and will not add additional Hourly Temporary Staff to the Engagement without first consulting with Client.

The initial scope of work contemplated for the Services is set out on Exhibit "C" and subject to modification or expansion in consultation with the Committee.

The Services may be performed by FTI or by any subsidiary or affiliate of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' or affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, affiliate, and to any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

If Client or any of Client's entities files a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), FTI's provision of the Temporary Officers will be subject to approval of the bankruptcy court presiding over Client's chapter 11 case (the "Bankruptcy Court") and the services provided by the Temporary Officers shall be substantially similar as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court. Client agrees, at Client's expense, to file an application (the "Application") to employ FTI as crisis and turnaround manager (or chief restructuring officer) effective as of the petition date pursuant to Bankruptcy Code section 363. Client agrees to file all required applications, including the Application, for the employment or retention of FTI at the earliest practical time.

As usual, FTI's Engagement is to represent Client and not its individual directors, officers, employees or shareholders. FTI, however, anticipates that it may provide information or advice to Client's directors, officers or employees in their corporate capacities over the course of the Engagement.

The Services do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, or insurance advice or similar specialist and other professional services which are typically outsourced and

which shall be obtained directly where required by Client at Client's expense; or (ii) investment banking, valuation or securities analysis, or advising any party with respect to or representation of Client in the purchase, sale or exchange of securities or representation of Client in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by Client to provide any investment banking or broker-dealer services. Client agrees to supply office space, office and support services to FTI as reasonably requested by FTI in connection with the performance of the Services.

**2. Compensation to FTI**

Monthly Fee

For Services rendered in connection with this Engagement, Client agrees to pay FTI a monthly, non-refundable advisory fee of $100,000 for the Services of Alan Tantleff.

Hourly Temporary Staff
For Services rendered by Hourly Temporary Staff will be billed at their current hourly rate.

Hourly Rates

The monthly fee provided for Alan Tantleff is a discounted fee that is less than the fees that Client would incur if FTI were to bill it on an hourly basis. The normal hourly billing rates for any additional professionals with the skills and experience needed for engagements of this kind, which are subject to periodic revision, are as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors: | $1,345 to $1,645 |
| Directors, Senior Directors, Managing Directors: | $995 to $1,265 |
| Consultants, Senior Consultants: | $550 to $900 |
| Administrative, Paraprofessionals: | $195 to $395 |

All payments will be due upon receipt of the invoice. For Client's information and use, FTI's Taxpayer Identification Number is 52-1261113. If Client disputes any of the fees or expenses on a specific invoice, Client shall notify FTI within thirty (30) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the thirty (30) day period, Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, if any payment is not paid by Client within thirty (30) days of the date of invoice, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to suspend further Services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices. Should Client

FTI CONSULTING

require FTI to submit invoices via an electronic billing service, any associated fees incurred for these electronic billing services shall be billed directly to Client for reimbursement.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on Client's behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, FTI will be compensated by Client at FTI's regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto. Client shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder.

**Cash on Account**. Client shall forward to FTI the amount of $200,000, which funds FTI will hold "on account" to be applied to FTI's professional fees, charges, and disbursements (including estimates of the foregoing) for the term of this Engagement Contract (the "Cash on Account"). To the extent the Cash on Account exceeds FTI's fees, charges and disbursements after the completion of this Engagement Contract, FTI will refund any unused portion. Client agrees to increase or supplement the Cash on Account from time to time during the term of this Engagement Contract in such amounts as FTI reasonably determines are sufficient to ensure that FTI is not a pre-petition creditor in the event Client files a petition for relief under the Bankruptcy Code.

FTI will provide periodic invoices (not less frequently than monthly) to Client for Services performed in the previous invoice period plus any incidental services and other amounts approved in writing. All expenses will be billed at cost without markup. In certain circumstances, an invoice may be for estimated fees, charges, and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of FTI's Services.

Upon transmittal of an invoice, FTI may immediately draw upon the Cash on Account (as replenished from time to time) in the amount of the invoice. **Client agrees that invoices are due upon receipt.** Client further agrees to wire the invoice amount to FTI promptly as replenishment of the Cash on Account (together with any supplemental amount to which FTI and Client mutually agree), without prejudice to Client's right to advise FTI of any differences Client may have regarding such invoice set forth in the below paragraph. FTI has the right, at any time, to apply any Cash on Account (as it may be supplemented from time to time) to any outstanding invoice (including amounts billed prior to the date hereof), subject to (and without prejudice to) Client's opportunity to review FTI's invoices.

Client shall make any objections to the invoice in writing to FTI within thirty (30) days of the receipt of the invoice. FTI shall have thirty (30) days of receipt of such an objection to send a (i) revised invoice, (ii) written response to the objection(s), or (iii) combination of (i) and (ii). Any reductions made to an invoice pursuant to this paragraph shall be credited to the Cash on Account and reflected on the next invoice sent by FTI. Notwithstanding anything to the contrary in this Engagement Contract, Client agrees that it will not reduce or delay any replenishments to the Cash on Account due to any objections Client may have to a particular invoice. If Client reduces or delays any replenishments to the Cash on Account, Client agrees that FTI may cease work immediately and without notice until it receives the full amount due. To the extent the parties are unable to consensually resolve a dispute over an invoice, such disputes shall be resolved in accordance with the applicable dispute resolution provisions of this Engagement Contract.

FTI CONSULTING

If Client or any of Client's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. FTI will then hold any portion of the Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as Cash on Account to be applied against the fee to be determined at the conclusion of FTI's Services.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the Bankruptcy Court. Client understands that while the arrangement in this paragraph may be altered in whole or in part by the Bankruptcy Court, Client shall nevertheless remain liable for payment of court approved post-petition fees and expenses which are afforded administrative priority under Bankruptcy Code section 503(b)(1). Bankruptcy Code section 1129(a)(9)(A) provides that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account (as may be supplemented from time to time) shall be held by FTI and applied against the fee to be determined at the conclusion of FTI's Services.

Additional Provisions Regarding Fees:

a) FTI may stop work or terminate the Engagement Contract immediately upon the giving of written notice to Client (i) if payments are not made in accordance with this Engagement Contract, (ii) if the Application is not approved by the Bankruptcy Court, (iii) if the chapter 11 case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or (iv) if a chapter 11 Trustee or other responsible person is appointed.

b) If, and only if, local Bankruptcy rules or the order approving the Application so require, FTI shall file with and serve on creditors entitled to notice thereof, a statement of staffing, professional services, compensation or expenses, on a quarterly basis, or as the Bankruptcy Court or rules may direct, and creditors and other parties in interest shall have an opportunity to object thereto and request a hearing thereon. (ii) If FTI is employed post-petition as a "professional person" pursuant to Bankruptcy Code section 327, Bankruptcy Court approval will generally be required to pay FTI's fees and expenses for post-petition Services. In most cases of this size and complexity, on request of a party in interest, bankruptcy courts permit the payment of interim fees during the case. Client agrees that in this situation it will, at Client's expense, request the Bankruptcy Court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees on a monthly basis. If the Bankruptcy Court approves such a procedure, FTI will submit invoices on account against FTI's final fee. These interim invoices will be based on such percentage as the Bankruptcy Court allows of FTI's internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the final fee to be determined at the conclusion of FTI's Services.

c) In the event FTI is retained and employed under Bankruptcy Code section 327, post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the Bankruptcy Court. Client understands that while the arrangement in this paragraph may be altered in whole or in part by the Bankruptcy Court, Client shall

FTI CONSULTING

nevertheless remain liable for payment of court approved post-petition fees and expenses, which are afforded administrative priority under Bankruptcy Code section 503(b)(l). Bankruptcy Code section 1l29(a)(9)(A) provides that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account (as may be supplemented from time to time) shall be held by FTI and applied against the final fee application filed and approved by the Bankruptcy Court.

d) Client agrees that FTI is not an employee of Client and the FTI employees and independent FTI contractors who perform the Services are not employees of Client, and they shall not receive a W-2 from Client for any fees earned under this engagement, and such fees are not subject to any form of withholding by Client. Client shall provide FTI a standard form 1099 on request for fees earned under this Engagement.

e) If a dispute develops about FTI's fees, Client may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

f) Copies of Invoices shall be sent by facsimile or email as follows:

To Client At:

Joe Reardon
President of the Boards of Directors
American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Paul Adams
Member of the Board of Directors
American Hospitality Properties REIT, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Mary Pfeiffer
Member of the Board of Directors
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

g) FTI will report to the Committee on a weekly basis regarding the time and tasks it has expended on this engagement.

**3. <u>Availability of Information</u>**

In connection with FTI's activities on Client's behalf, Client agrees (i) to furnish FTI with all information and data concerning the business and operations of Client which FTI reasonably requests, and (ii) to provide FTI with reasonable access to Client's officers, directors, partners, employees, retained consultants,

FTI CONSULTING

independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this Engagement Contract.

**4. Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this Engagement Letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

**5. Conflicts of Interest**

FTI has undertaken a limited review of its records to determine FTI's professional relationships with Client and this Engagement. From the results of such review, FTI was not made aware of any conflicts of interest or relationships that it believes would preclude FTI from performing the Services. However, as Client knows, FTI is a large consulting firm with numerous offices globally. FTI is regularly engaged by new clients, which may include one or more parties with interests potentially adverse to Client. The FTI professionals providing Services hereunder will not accept an engagement that directly conflicts with this Engagement without Client's prior written consent.

**6. Acknowledgement and Acceptance**

Please acknowledge Client's acceptance of the terms of this Engagement Contract by signing the confirmation below and returning a copy to FTI at the above address.

If you have any questions regarding this Engagement Letter or the attached Standard Terms and Conditions, please do not hesitate to contact Alan Tantleff at +1 212.499.3613 or via email at alan.tantleff@fticonsulting.com.

Sincerely,

FTI CONSULTING, INC.

Signed by:

By: Alan Tantleff
1758C998ED104E1

Alan Tantleff
Senior Managing Director, Real Estate Solutions
And Practice Leader, Hospitality, Gaming & Leisure

**Confirmation of Terms of Engagement**

**Client agrees to engage FTI Consulting, Inc. upon the terms of this Engagement Contract, which includes the attached Standard Terms and Conditions.**

FTI CONSULTING

American Hospitality Properties REIT, Inc.

By: DocuSigned by: Joe Reardon ECC1ECB33A83445...

Joe Reardon
President of the Board of Directors

Date: 9/28/2026

American Hospitality Properties REIT II, Inc.

By: DocuSigned by: Joe Reardon ECC1ECB33A83445...

Joe Reardon
President of the Board of Directors

Date: 9/28/2026

FTI CONSULTING™

| Contact Information of the person designated to receive & approve invoices: | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |
| Email: | |
| AP Invoice Email (if applicable): | |
| **Invoice Processing Information** | |
| Please list any information required on the Invoice (i.e., Purchase Order #, Hours by Resource, Fees broken down by workstream, etc.) | |
| Require invoice submission via electronic billing system? | |
| If yes, please provide the necessary electronic billing system information (i.e., e-bill internet address): | |

FTI CONSULTING

# EXHIBIT A

# FTI CONSULTING, INC.

# STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which FTI will provide the Services to Client set forth within the attached letter of engagement with the American Hospitality Properties REIT, Inc. and American Hospitality Properties REIT II, Inc. dated as of September 28, 2026 (the "Engagement Letter"). The Engagement Letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between Client and FTI relating to the Services to the exclusion of any other express or implied terms, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract. Capitalized terms used but not defined shall have the meanings assigned in the Engagement Letter to which these Standard Terms and Conditions are attached.

## 1. Reports and Advice

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, Client shall not provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. Notwithstanding the foregoing, Client may disclose any advice given or report issued by FTI to its affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

1.2 **Ownership** – If FTI is required to deliver, prepare or otherwise produce a written deliverable in connection with the Services, then Client will, conditioned upon FTI's actual receipt of payment for the Services rendered (and expenses incurred, if any) necessary to prepare and issue such deliverable, obtain ownership of such deliverable in its final form, subject to the restrictions on use or disclosure contained herein. To the extent that FTI uses any of its intellectual property ("FTI IP") in connection with the Services or any deliverable, then such FTI IP shall, at all times, remain the property of FTI. Client shall not acquire any ownership right or interest in FTI IP; provided, however, FTI grants to Client a perpetual, worldwide, irrevocable, limited license to use the FTI IP for the sole purpose for which such deliverable was prepared. FTI shall have all ownership and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting FTI's business.

## 2. Information and Assistance

2.1 **Provision of information and assistance** – FTI's performance of the Services is dependent upon Client providing FTI with such information and assistance as FTI may reasonably require from time to time. FTI

shall rely on such information without independent verification. If FTI's performance of its obligations under this Engagement Contract is prevented or delayed by any act or omission of Client or its agents, subcontractors, consultants, or employees, FTI shall not be deemed in breach of its obligations under this Engagement Contract or otherwise liable for any damages sustained or incurred by Client, in each case, to the extent arising directly or indirectly from such prevention or delay.

2.2 **Punctual and accurate information** – Client shall use reasonable skill, care and attention to ensure that all information FTI may reasonably require is provided on a timely basis and is accurate, complete, and relevant for the purpose for which it is required. Client shall also notify FTI if Client subsequently learns that any information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While FTI's work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine, compile, or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on financial statements of Client or any other person.

2.4 **Prospective financial information** - In the event the Services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by Client's management.

**3. Additional Services**

3.1 **Responsibility for other parties**— Client shall be solely responsible for the work and fees of any other party engaged by Client to provide services in connection with the Engagement regardless of whether such party was introduced to Client by FTI. Except as provided in this Engagement Contract (including section 2 of the Engagement Letter with respect to the retention of certain agents and independent contractors), FTI shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, FTI acknowledges that it is not authorized under this Engagement Contract to engage any third party to provide services or advice to Client, other than FTI's affiliates, agents, or independent contractors engaged to provide Services, without Client's written authorization.

**4. Confidentiality, Data Protection, Artificial Intelligence**

4.1 **Restrictions on confidential information**— Both parties agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between the parties. Except as provided below, no party will disclose any other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

FTI CONSULTING

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient (without the use of confidential information).

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3 **Citation of engagement** – Without prejudice to Clauses 4.1 and 4.2 above, Client hereby agrees that FTI shall be entitled to cite the performance of the Services hereunder to FTI's clients and prospective clients as an indication of FTI's experience and use Client's name and logo in connection with such disclosure, unless FTI and Client specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, FTI may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that FTI shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5 **Maintenance of workpapers** – Notwithstanding the above, FTI may keep one archival set of its working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with FTI's internal policies; *provided*, that FTI shall keep such materials confidential in accordance with the terms of this Engagement Contract.

4.6 **Data Protection** - In this paragraph, the terms "controller", "personal data", "processed", "processor", "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and Client will each act as separate and individual controllers in relation to any personal data processed by Client or FTI in connection with this Engagement Contract. FTI and Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract. Should the Services involve cross border transfers of personal data, FTI and Client hereby enter into Module 1 of the EU Standard Contractual Clauses published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the "**Standard Contractual Clauses**"), with either Client or FTI acting as data exporter and either Client or FTI as data importer, as appropriate), in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form, manner, and version set out at https://ftitechnology.com/trust/cidta, in effect as of the date of this Engagement Contract. Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the Services. Such processors may be located overseas. Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors. Client and FTI agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and explicitly excluded from, the exchange of consideration, or any other thing

FTI CONSULTING

of value, between the parties.

4.7 **Artificial Intelligence** – In the course of providing the Services to Client, FTI may utilize artificial intelligence ("AI") technologies, including machine learning, large language models, and generative AI. The AI technologies utilized by FTI may be developed internally by FTI, developed for FTI, or otherwise contained within third-party software. FTI has developed a policy setting forth guidelines and principles for its personnel regarding the responsible and ethical development, deployment and use of AI technologies. Additionally, FTI requires that its suppliers' use of AI conforms with FTI's existing standards or requirements, including those regarding confidentiality, data protection and information security.

**5. Termination**

5.1 **Termination of Engagement with notice**—This Engagement Contract is terminable by Client or by FTI at any time upon the giving of thirty (30) days written notice. Upon such termination by Client (the "Termination Date"), FTI shall cease work and Client shall have no further obligation for fees and expenses of FTI arising or incurred after the Termination Date, provided, however, that, notwithstanding any termination by Client or by FTI in the circumstances described in paragraph (a) under "Additional Provisions Regarding Fees" in the Engagement Letter,

Client shall reimburse FTI for its out-of-pocket expenses (the "Termination Expenses") incurred in connection with commitments made by FTI prior to the Termination Date with respect to advance travel arrangements reasonably incurred, to the extent FTI is unable to obtain refunds of such expenses. FTI shall provide Client with reasonable documentation to substantiate all Termination Expenses for which payment is requested; and

5.2 **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 2 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6, and 7 of these Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6. Indemnification, Insurance and Liability Limitation**

6.1 **Indemnification** –Subject to any limitation post-petition required by the Bankruptcy Court, Client agrees to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this Engagement Contract or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of Client, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Application shall include the assumption by Client of FTI's right to indemnification in respect of its actions under this Engagement Contract prior to the petition date. The Indemnified Party shall promptly forward to Client all written notifications and other matter communications regarding any claim that could trigger Client's

FTI CONSULTING

indemnification obligations under this Section 6. If Client so elects or is requested by an Indemnified Party, Client will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and Client, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to Client, or if Client fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and Client will pay the reasonable fees and disbursements of such counsel; provided, however, that Client will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which Client assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. Client further agrees that Client will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld, delayed, or conditioned), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, Client has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger Client's indemnification obligations under this Section 6 without the written consent of Client, which shall not unreasonably be withheld or delayed or conditioned. Client will not be liable for any settlement of any action, claim, suit or proceeding affected without Client's prior written consent, which consent shall not be unreasonably withheld, delayed, or conditioned, but if settled with the consent of Client or if there be a final judgment for the plaintiff, Client agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

6.2 **Insurance** –In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of Client or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by Client to its directors, officers and any equivalently placed employees, whether under Client's charter or by-laws, by contract or otherwise. Client shall specifically include and cover employees and agents serving as directors and officers of Client or its affiliates from time to time with direct coverage under Client's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, Client shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. Client shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event Client is unable to include FTI

FTI CONSULTING

employees and agents under Client's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of Client, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to Client as an out-of-pocket expense. Notwithstanding anything to the contrary, Client's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and Client's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise). In connection with this Engagement, Client represents to FTI that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Client, threatened (nor is Client aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Client; and (iii) Client has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Client responsibility or liability under such laws and regulations.

6.3 **Limitation of liability –** Client agrees that no Indemnified Person shall be liable to Client, or its successors, affiliates, or assigns, for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this Section 6.3 shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract.

**7. Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, Compliance with Law, Notice and Miscellaneous**

7.1 **Governing Law –** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York , without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction, Service** – The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The Bankruptcy Court having jurisdiction over Client's bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such courts and irrevocably waive any right they may have to object to any action being brought in these courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction. Each party agrees that it may be served with legal process, including a summons and complaint, by recognized overnight courier (e.g., Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided in Section 7.5. The notice address shall be deemed valid unless updated or changed by written notice.

7.3 **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, CLIENT AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4 **Compliance with Laws** - Each of FTI and Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and Client shall promptly notify the other party in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees or agents.

7.5 **Notice -** All notices, requests, consents, claims, demands, waivers, and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI: FTI Consulting, Inc.
555 12th Street NW, Suite 700
Washington, D.C., 20004
Attn: Legal Department
Email: LegalNotices@fticonsulting.com

If to Client: Paul Adams
Member of the Board of Directors
American Hospitality Properties REIT, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

Mary Pfeiffer
Member of the Board of Directors
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, TX 75254

7.6 **Miscellaneous** – Client shall not assign any of its rights or delegate any of its obligations under this Engagement Contract without the prior written consent of FTI. Any purported assignment or delegation in violation of this provision is null and void. No assignment or delegation relieves Client of any of its obligations under this Engagement Contract. This Engagement Contract represents the entire understanding

FTI CONSULTING

of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors, and permitted assigns; may be executed and sent electronically (followed by originals sent via regular mail if requested by a party), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of Client and FTI. The provisions of this Engagement Contract shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof. This Engagement Contract is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason hereof.

FTI CONSULTING

**EXHIBIT B**

**INITIAL SCHEDULE OF HOURLY TEMPORARY STAFF**

| **Staff** | **Level** | **Hourly Rate** |
|---|---|---|
| Brad Foster | Managing Director | $1,265 |
| Alvin Chan | Director | $ 995 |

FTI CONSULTING

# EXHIBIT C

# INITIAL SCOPE OF WORK

## 1. Pre-Bankruptcy / General Responsibilities

**Liquidity Assessment & Cash Flow Forecasting:** The CRO is responsible for assessing immediate liquidity needs and preparing or reviewing Company-prepared 13-week cash flow forecasts.

**Capital Plan Review:** The CRO is tasked with reviewing capital plans and providing direction and feedback.

**Stakeholder Reporting:** The CRO assists in accurate and timely reporting to all stakeholders, including governmental entities.

**Lender Relations & Credit Facility:** The CRO provides lenders with governance-related information, responds to lender requests, and assists in the negotiation and reinstatement of the credit facility.

**Transfer of Operable Documents (Conditional):** If determined appropriate following legal and financial analysis, the CRO assists in the transfer of operable documents such as management agreements, tenant subleases (if any), and license/franchise agreements.

**Litigation Support:** The CRO addresses any litigation that may arise.

**General Task Performance:** The CRO performs other tasks as may be required at the direction of the Committee.

## 2. Bankruptcy-Specific Financial Advisory Services

Upon commencement of a bankruptcy filing, the CRO's scope expands to include the following:

**Court-Required Financial Disclosures:** The CRO assists the Debtors in preparing financial disclosures required by the Court, including Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.

**DIP Sourcing:** The CRO, in coordination with Debtors' counsel and any retained investment banking professionals, will lead and support the sourcing, structuring, and negotiation of Debtor-In-Possession financing. The CRO will seek DIP financing that covers case costs, including professional fees and directors and officers insurance covering the board and a related tail, if such financing and/or insurance is available. This workthread encompasses the following activities:

> **Lender Identification & Outreach:** The CRO leads in identifying and approaching prospective DIP lenders, including existing secured creditors, alternative lenders, and other capital providers with relevant hotel or real estate sector experience. The CRO coordinates the preparation and distribution of a confidential information package to prospective lenders.
>
> **DIP Term Sheet Development:** The CRO leads in the preparation and negotiation of DIP term sheets, including evaluation of proposed interest rates, fees, covenants, milestones, and collateral requirements, with a view toward minimizing cost of capital and preserving operational flexibility during the Chapter 11 proceeding.
>
> **Lender Diligence Support:** The CRO coordinates responses to lender due diligence requests, including provision of financial projections, asset schedules, property-level operating data, and management agreement summaries as

required by prospective DIP lenders.

**DIP Budget Preparation:** The CRO prepares or reviews the DIP budget, including the 13-week cash flow forecast and any longer-range projections required under the DIP credit agreement, and monitors compliance with approved budget parameters on an ongoing basis.

**Covenant & Milestone Monitoring:** Following closing of DIP financing, the CRO monitors compliance with all financial covenants, reporting obligations, and case milestones stipulated in the DIP credit agreement, and provides timely notice to Debtors' management and counsel of any anticipated or actual defaults.

**Hearing Preparation:** The CRO provides information, analyses, and testimony support as required for interim and final DIP financing hearings before the Court, including preparation of declarations or supporting exhibits as needed.

**Cash Management:** The CRO leads the identification and implementation of short-term cash management procedures and the development of cash disbursement procedures.

**Asset Identification & Disposition:** The CRO advises on the identification of core business assets and the disposition of assets or liquidation of unprofitable operations, and assists with the sale of Debtors' assets — including reopening strategy, retention of brokers, transition of licenses and permits, inventories, and negotiation of Purchase and Sale Agreements.

**Executory Contracts & Leases:** The CRO assists with the identification of executory contracts and leases and performs cost/benefit evaluations regarding affirmation or rejection of each.

**Operational & Cost Analysis:** The CRO assists with valuation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements.

**Creditor & Financial Reporting:** The CRO prepares financial information for distribution to creditors and others, including cash flow projections and budgets, cash receipts and disbursement analysis, analysis of asset and liability accounts, and analysis of proposed transactions requiring Court approval.

**Stakeholder & Professional Meetings:** The CRO attends meetings and assists in discussions with potential investors, banks, secured lenders, official committees, the U.S. Trustee, other parties in interest, and their professionals, as requested.

**Claims Analysis:** The CRO analyzes creditor claims by type, entity, and individual claim, including assistance with development of tracking databases as necessary.

**Plan Confirmation Support:** The CRO assists in the preparation of information and analysis necessary for the confirmation of a plan in the Chapter 11 proceedings.

**Avoidance Actions:** The CRO assists in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers.

**Hotel-Specific Liaison Duties:** The CRO liaises with property managers on day-to-day operating issues and strategic direction, and enforces provisions of hotel management agreements or caretaker agreements. The CRO also liaises with franchisors on operating issues under existing or to-be-negotiated franchise agreements.

**Tax, Audit & Accounting Coordination:** The CRO liaises with other professionals regarding tax matters, audit, and financial accounting services, and assists with onboarding of an outside accounting provider and compilation of required financial reporting.

**Litigation Advisory & Expert Testimony:** The CRO provides litigation advisory services with respect to accounting and

tax matters, along with expert witness testimony on case-related issues as required by the Debtors.

**General Business Consulting (with Limitation):** The CRO renders such other general business consulting or assistance as the Committee or counsel may deem necessary, provided such services are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in the proceeding.

**Other.** For the absence of doubt, Committee approval shall be required for major asset sales, DIP financing or material new borrowing, material settlements, assumption/rejection of major hotel management agreements or franchise agreements, and bankruptcy plan terms.

**3. Conditions and Limitations**

**Legal & Financial Analysis Required:** Transfer of operable documents — including management agreements, tenant subleases, and franchise/license agreements — is contingent on a determination that such transfer is appropriate following legal and financial analysis.

**Non-Duplication Requirement:** General consulting services rendered by the CRO must not duplicate services provided by other professionals retained in the proceeding.

**Role Consistency Requirement:** Any additional services must be consistent with the role of a CRO or financial advisor and subject to the restrictions of the Engagement Contract.

FTI CONSULTING

## SCHEDULE A

## FTI STANDARD RELEASE LETTER

[Date]

[Third Party Name]
[Address]
[City, State, Zip]

To whom it may concern.

Pursuant to that engagement letter dated _____ __, 202_ (the "Engagement Letter") between FTI Consulting, Inc. ("FTI") and _________ ("Client"), FTI has been engaged to perform certain services solely for Client (the "Services") in connection with _____________________________.

Client has requested that FTI provide [name of recipient] (the "Recipient") access to the report of its findings dated [date] and including any subsequent revisions, updates or addendums thereto (together, the "Report"). Recipient acknowledges that this Report was prepared at the direction of Client, was performed exclusively for Client's sole benefit and use, may not include all procedures deemed necessary for the purposes of Recipient, and that certain findings and information may have been communicated to Client that are not reflected in the Report. Recipient further acknowledges that (a) the Report is being provided for informational purposes only; (b) the Report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) Recipient will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the Report or any other opinions or conclusions of FTI.

In consideration of FTI allowing Recipient access to the Report and, if requested by Recipient, discussing the Report, Recipient agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to Recipient in connection with such access.

Recipient agrees to release FTI and its personnel from any claims or causes of action by Recipient that arise as a result of FTI permitting Recipient access to the Report. Recipient agrees not to sue or participate in any way (except as required by a validly issued court order or subpoena) in any legal proceeding, dispute, or cause of action against FTI arising out of or relating to the Report, including any claim that Recipient has in any way relied upon the Report. Recipient acknowledges that FTI does not owe or accept a duty to Recipient, whether in contract or in tort, or however otherwise arising.

Further, Recipient agrees not to disclose or distribute the Report, or any other information received orally or in writing from FTI, to any other parties without FTI's prior written consent. Notwithstanding the foregoing, Recipient may disclose the Report (a) to its Affiliates and its and their respective directors, officers, and employees, (the "Representatives") who have a need to receive the Report in connection with the purpose for which the Report is being provided to Recipient and solely for informational purposes, (b) to its legal counsel, accountants and auditors who are bound by written agreements and/or rules of professional conduct/ethics to maintain the Report as confidential ("Professional Advisors"), (c) to its advisors (including but not limited to financial advisors),

consultants, lenders and/or potential investors, provided that, before any disclosure of the Report, each advisor, consultant, lender and/or potential investor executes its own release letter with FTI with terms no less restrictive than those contained herein, provided, further that Recipient remains responsible for any breach of this letter agreement by its Representatives or Professional Advisors. Recipient may also disclose the Report as required by any applicable law, or by order or ruling of any competent judicial, governmental, regulatory or supervisory body, provided, to the extent legally permissible, Recipient provides FTI with written notice promptly upon becoming aware of such obligation and reasonably cooperates with FTI, at FTI's expense, in FTI's efforts to obtain a protective order and/or limit the scope of such disclosure. Notwithstanding the foregoing, no notice is required regarding any disclosure of any information to a regulator or governmental agency having jurisdiction over Recipient or its Affiliates in the course of such regulator's or governmental agency's routine examination, reporting, audit or inspection not targeting the Report or the Services. For purposes of this letter agreement, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with Recipient, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

Recipient's obligations hereunder do not prohibit Recipient from disclosing, without attribution or reference in any matter to FTI or the Report, any information that: (a) is or becomes publicly available other than by a breach of this letter agreement; (b) is or becomes available to Recipient from a third party who is known by Recipient to not be prohibited from disclosing such information by a contractual, or legal obligation; (c) is known to Recipient prior to the date of this letter agreement; or (d) that Recipient develops independently without the use of or reliance on the Report. FTI is not authorized to and does not waive any other non-use or non-disclosure obligations which may apply to Client's or any other party's information that may be subject to confidentiality agreements.

This letter agreement constitutes the entire agreement between the parties regarding the subject matter hereof and shall be governed by the laws of the State of New York, without giving effect to the choice of law provisions thereof.

Please confirm your agreement with the foregoing by signing and dating a copy of this letter and returning it to FTI.

Sincerely,

______________________________
[INSERT FTI SMD or MD name here]
[Senior Managing Director/Managing Director]
FTI Consulting, Inc.

Acknowledged, accepted and agreed:

[ENTER RECIPIENT NAME]

By: ______________________________

(Name of Company official)

**<u>Exhibit C</u>**

**Tantleff Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al.*,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DECLARATION OF**
**ALAN TANTLEFF IN SUPPORT OF**
**DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF FTI CONSULTING, INC.**
**TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING**
**OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING**
**ALAN TANTLEFF AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS**
**EFFECTIVE AS OF THE PETITION DATE AND (III) GRANTING RELATED RELIEF**

I, Alan Tantleff, being duly sworn, hereby state as follows:

1. I am a Senior Managing Director and leader of the Hospitality, Gaming, and Leisure industry practice of FTI Consulting, Inc. ("***FTI***"), a leading global business advisory firm with over 50 offices worldwide and over 5,000 professionals, where I specialize in, among other things, workouts and financial restructurings of lodging, hospitality, and commercial real estate businesses.

2. I have over 30 years of diverse, hands-on experience in areas of commercial real estate development, workouts and restructuring, asset management, structured debt and equity financing, and acquisitions and dispositions. Before joining FTI, I was a Managing Director at Hotel Asset Value Enhancement, a boutique asset management and advisory practice dedicated to

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

the hospitality industry. I also worked at BlackRock Financial Services, assisting the efforts in workouts and restructuring of the financial manager's $6 billion sub debt portfolio. I have previously held senior management positions at Jones Lang LaSalle, Granite Partners (Savills), The Prudential Insurance Company of America, and Sands Casino in Atlantic City.

3. I have earned numerous awards and accolades throughout my career, including Crain's New York Business's 2023 Notable Leaders in Real Estate, Real Estate New York's Top "40 under 40" influential people in New York real estate and RealShare New York's "Commercial Broker All-Stars." Recently, I was named to Turnaround and Workout Magazine's "People to Watch," and National Real Estate Investor named me "Exit Strategy Guru" in an article about the timely disposition of hotel assets. I have authored numerous articles and columns in various trade and industry publications.

4. I hold a Master of Science in Real Estate Investment and Development from New York University and a Bachelor of Science in Hotel Management from Cornell University. I am a licensed real estate broker in The State of New York, a Certified Insolvency and Restructuring Advisor, and a Certified Turnaround Professional.

5. I am authorized to make this declaration on behalf of FTI and in support of the in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of FTI Consulting, Inc. to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel, (II) Designating Alan Tantleff as Chief Restructuring Officers to the Debtors Effective as of the Petition Date, and (III) Granting Related Relief* (the "***Application***").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein or have been informed of the matters set forth herein by other professionals at FTI.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Application.

**FTI Consulting, Inc.'s Qualifications**

6. FTI has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations. FTI has an excellent reputation for services it has rendered in large and complex Chapter 11 cases on behalf of debtors and creditors throughout the United States. FTI's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice, and identification of reorganization alternatives with a debtor's secured lenders on the use of cash collateral, assessing and recommending cost reduction strategies, providing transactional support to market a debtor's assets (including forecasting, creating marketing materials, contacting potential buyers, and negotiating offers for debtor owned assets), preparing a debtor for a Chapter 11 filing, and designing and negotiating financial restructuring packages.

7. The FTI Professionals specialize in interim management, turnaround and restructuring services, asset sales, and business transformation. FTI's debtor advisory services include a wide range of activities targeted toward maximizing the value of a debtor's assets and recoveries to creditors, including developing or validating forecasts, working with management on operational issues, monitoring and managing cash flow and creditor relationships, and negotiating financial restructuring packages.

8. In addition, FTI has provided similar services and personnel in recent cases in this Court. *See, e.g., In re PrimaLend Capital Partners*, Case No. 25-90013 (MXM) (Bankr. N.D. Tex. Dec. 4, 2025); *In re Northwest Senior Housing Corp.*, Case No. 22-30659 (MVL) (Bankr. N.D. Tex. May 12, 2022); *In re TriVascular Sales LLC*, Case No. 20-31840 (SGJ) (Bankr. N.D. Tex. Aug. 19, 2020); *In re PHI, Inc.*, Case No. 19-30923 (HDH) (Bankr. N.D. Tex. May 2, 2019).

9. I served as the CRO of another REIT that owned hotels known as Eagle Hospitality Real Estate Trust and its subsidiaries. *See In re EHT US1, Inc.*, Case No. 21-10036 (CSS) (Bankr.

D. Del. Mar. 4, 2021). I am quite familiar with REITs and hospitality assets, including their operations, financing structures, management, and other matters in this nuanced business.

10. Despite being retained shortly before the Petition Date, the Additional Personnel and I have expended significant efforts to acquire substantial knowledge regarding the Debtors and their business and operations, and are familiar with their financial affairs, debt structure, operations, and related matters on a compressed timeline. Having worked closely with the Debtors' management and their other advisors, the Additional Personnel and I have developed relevant experience and expertise regarding the Debtors that will assist us in providing effective and efficient services in these Chapter 11 Cases. Accordingly, the Additional Personnel and I are both well-qualified and uniquely positioned to assist the Debtors in successfully navigating the Chapter 11 process in an efficient and timely manner.

**Services to be Provided**

11. The terms and conditions of the Engagement Agreement were negotiated between the Debtors and FTI at arm's-length and in good faith and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Subject to the Court's approval, the Debtors anticipate that the FTI Professionals will perform the following financial advisory services (collectively, the "***Services***"), among others, pursuant to the terms and provisions of the Engagement Agreement, as necessary and appropriate, and as mutually agreed upon by FTI and the Debtors:[3]

a. Provide Alan Tantleff as CRO;
b. Evaluate liquidity position, cash needs, and disbursement controls;
c. Prepare weekly and monthly liquidity reports;
d. Coordinate the advisory team and assist with restructuring activities;
e. Manage day-to-day restructuring operations and working capital;

[3] The summaries of the Engagement Agreement contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Agreement, the terms of the Engagement Agreement shall control.

f. Develop and implement strategies for negotiations with key stakeholders, vendors, and creditors;
g. Prepare and present cash flow analyses and diligence materials for potential lenders and DIP financing;
h. Support data collection and due diligence for potential asset sales or section 363 transactions;
i. Assist with Chapter 11 contingency planning, filings, and creditor communications;
j. Prepare required financial reports, statements, and disclosure materials for the Court;
k. Support development of a plan of reorganization or liquidation and related valuation analyses;
l. Manage the claims reconciliation process and provide testimony or analysis as needed; and
m. Perform additional customary services as reasonably requested and are customary in this type of engagement.

12. I understand these Services are critical to the Debtors' ongoing efforts to successfully achieve their Chapter 11 objectives and preserve value for their estates. As a result, I believe that the Additional Personnel and I are well-qualified and best suited to perform the Services.

13. I do not believe that the Services provided by the FTI Professionals will be duplicative of the Services performed by any other professional retained in these Chapter 11 Cases.

**Professional Compensation**

14. As set forth more fully in the Engagement Agreement, the Debtors and FTI have agreed to the following terms of compensation and expense reimbursement (the "***Fee Structure***"). The Engagement Agreement provides that FTI will be compensated for providing the Services of (a) myself as CRO at the rate of $100,000 per month, and (b) the Additional Personnel at rates in accordance with the following ranges:

| Position | Hourly Rate |
|---|---|
| Senior Managing Directors | $1,345 – $1,645 |
| Directors, Senior Directors, Managing Directors | $995 – $1,265 |
| Consultants, Senior Consultants | $550 – $900 |
| Administrative, Paraprofessionals | $195 – $395 |

15. In addition to compensation for professional services, FTI will seek reimbursement for reasonable and documented out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including, without limitation, travel costs.

**Reporting Requirements**

16. If the Court grants the relief requested, FTI will be retained to provide the Debtors with Mr. Tantleff as CRO and the Additional Personnel to assist him with his duties in these Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code. Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

17. Nevertheless, to maintain transparency and to comply with protocol of the United States Trustee for the Northern District of Texas, Dallas Division ("***U.S. Trustee***") applicable to the retention of personnel under section 363 of the Bankruptcy Code, FTI will file with the Court and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases (the "***Committee***", and collectively, the "***Notice Parties***"), a report on staffing (the "***Staffing Report***") by the 30th of each month for the previous month. Such reports will (a) summarize the Services provided to the Debtors by project category, (b) summarize the compensation earned by each of the FTI Professionals, (c) summarize the time expended by the FTI Professionals, by project category and (d) itemize the expenses incurred. The Notice Parties shall have 14 days after the date a Staffing Report is served on the Notice Parties to object to such Staffing Report. The Staffing Report, FTI's staffing decisions, and all compensation

identified in the Staffing Report will be subject to review by the Court in the event an objection is filed. FTI will file its first Staffing Report on November 30, 2026, for the period covering the Petition Date through and including October 31, 2026.For the avoidance of doubt, FTI will not be required to submit time entries in one-tenth of an hour increments, but instead may submit time entries in one-hour increments.

18. I believe the Fee Structure is reasonable and comparable to fee structures generally charged by financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of Chapter 11. The Fee Structure summarized above and described more fully in the Engagement Agreement is consistent with FTI's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the Services to be provided in connection with Chapter 11 cases. In addition, the Fee Structure is comparable to the terms and conditions FTI offers to similar clients for similar services.

19. For the 90 days prior to the Petition Date, FTI received advanced payments in the aggregate amount of $200,000 for Services performed and to be performed, including Services related to the commencement and administration of these Chapter 11 Cases. FTI has a remaining credit balance in favor of the Debtors for Services performed and to be performed, and expenses incurred and to be incurred, in connection with these Chapter 11 Cases in the amount of approximately $115,997.50 (the "***Retainer***"). FTI intends to retain the balance of the Retainer on account for Services rendered and expenses incurred subsequent to the Petition Date. Accordingly, as of the Petition Date, FTI does not hold any prepetition claim against the Debtors for fees or expenses. Additionally, from October 2024 until September 2026, FTI was engaged by PAH, REIT I and REIT II to provide tax and accounting advisory services in connection with the

establishment of new real estate investment trusts. FTI received a $10,000 retainer for this work; however, FTI's work on these matters is complete and FTI is not owed any amounts on these matters.[4]

**Indemnification**

20. The Engagement Letter contains standard indemnification language with respect to FTI's Services including, without limitation, an agreement by the Debtors to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents, and controlling persons (each, an "***FTI Party***") from and against any losses, claims, damages, or expenses – or if an FTI Party is made a party to or witness or other participant in any threatened, pending, or completed action or investigation – by reason of (or arising in part out of) any event or occurrence related to the Engagement Agreement, or any predecessor agreement for Services or the fact that any FTI Party is or was an agent, officer, director, employee, or fiduciary of the Debtors or their affiliates, or by reason of any action or inaction on the part of any FTI Party while serving in such capacity, except to the extent caused by gross negligence, bad faith, willful misconduct, or fraud of any FTI Party, or from a breach by the FTI Party of its confidentiality obligations under the Engagement Agreement.

21. The indemnification provisions contained in the Engagement Agreement (the "***Indemnification Provisions***") are customary and reasonable for FTI and comparable firms providing similar services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's length and in good faith. The provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of FTI's proposed

---

[4] For more information on FTI's prepetition activity with the Debtors, see the *Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Pleadings* at [Dkt. No. 20].

retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services to successfully reorganize.

22. Notwithstanding the foregoing, FTI understands that the Indemnification Provisions shall apply only to such FTI employees not serving in executive officer positions and that the indemnification of any persons serving as executive officers shall be on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy. The indemnification terms herein supersede and replace any provision of the Engagement Agreement related to the indemnification of any executive officers including, but not limited to, the applicable provisions of Section 6 of the Standard Terms and Conditions of the Engagement Agreement.

23. The Debtors request that with respect to any persons not serving in executive officer positions, this Court approve the Indemnification Provisions as set forth in the Engagement Agreement.

**FTI's Connections with Parties-in-Interest**

24. In connection with the preparation of this declaration, FTI conducted a review of its contacts with the Debtors, their affiliates, and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI. A listing of the parties reviewed is reflected on **Schedule 1** to this declaration. FTI's review, completed under my supervision, consisted of a query of the Exhibit A parties within an internal computer database[5] containing names of individuals and entities that are present or recent former clients of FTI. A summary of

[5] For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

such relationships that FTI identified during this process is set forth on **Schedule 2** to this declaration.

25. Based on the results of its review, except as otherwise discussed herein, FTI does not have a relationship with any of the parties on Schedule 1 in matters related to the Debtors or these proceedings. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Schedule 2. FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services. To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in the Debtors' cases, nor does FTI's involvement in these cases compromise its ability to continue such consulting services.

26. In addition to the relationships disclosed on Schedule 2, FTI discloses the following:

- From October 2024 until September 2026, FTI was engaged by Phoenix American Hospitality, LLC, American Hospitality Properties REIT, Inc., and American Hospitality Properties REIT II, Inc. in several matters to provide tax and accounting advisory services in connection with the establishment of new real estate investment trusts. The services included business tax advisory and GAAP accounting and financial outsourcing support. FTI's work on these matters is complete and FTI is not owed any amounts on these matters. FTI believes that its work on these matters does not (x) compromise its ability to provide services to the Debtors in these Chapter 11 Cases or (y) represent an adverse interest with respect to the Debtors' estates.
- From April 2026 until October 2026, FTI was engaged by Phoenix American Hospitality, LLC, American Hospitality Properties REIT, Inc., American Hospitality Properties REIT II, Inc., AHP REIT Port B, LLC, Lakemore-Phoenix Investment Platform B, LLC, and APIP-C OperCo, LLC to provide tax-compliance services for the 2025 tax year. FTI's work on this matter is complete, and FTI is not owed any amounts on this matter. FTI believes that its work on this matter does not (x) compromise its ability to provide services to the Debtors in these

Chapter 11 Cases or (y) represent an adverse interest with respect to the Debtors' estates.

- From September 2025 until September 2026, FTI was engaged by Phoenix American Hospitality, LLC, American Hospitality Properties REIT, Inc., American Hospitality Properties REIT II, Inc., American Hospitality Properties Fund REIT, Inc., and AHP REIT Port B, LLC to provide federal, state, and local tax-compliance services for the 2024 tax year. FTI's services included preparing partnership, corporate, and franchise tax returns, extensions of time to file, state and local allocation and apportionment schedules, and quarterly estimated tax-payment calculations. FTI's work on this matter is complete, and FTI is not owed any amounts on this matter. FTI believes that its work on this matter does not (x) compromise its ability to provide services to the Debtors in these Chapter 11 Cases or (y) represent an adverse interest with respect to the Debtors' estates.
- From February 2025 until September 2026, FTI's real estate solutions segment was engaged by Phoenix American Hospitality, LLC and American Hospitality Properties REIT, Inc. to provide valuation services in connection with the AHP Entities. FTI's work on this matter is complete and FTI is not owed any amounts on this matter. FTI believes that its work on this matter does not (x) compromise its ability to provide services to the Debtors in these Chapter 11 Cases or (y) represent an adverse interest with respect to the Debtors' estates.
- It is my understanding that Duke Energy is a utility provider and creditor of the Debtors. Nicholas C. Fanandakis, a member of the board of directors of FTI Consulting, Inc., is also a member of the board of directors of Duke Energy Corporation. To the best of my knowledge, Mr. Fanandakis does not have any professional involvement in this matter in any capacity.

27. As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these Chapter 11 Cases in matters unrelated to the Debtors and these cases. Based on our current

knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which FTI is to be employed and none are in connection with the Debtors' Chapter 11 Cases.

28. FTI is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtors or their estates. Therefore, FTI believes it is eligible to represent the Debtors under section 363 of the Bankruptcy Code.

29. It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Executed on November 5, 2026

*/s/ Alan Tantleff*
Alan Tantleff
Chief Restructuring Officer

# Schedule 1

## Potential Parties-in-Interest List

# Potential Parties-in-Interest[1]

## Debtor Entities

American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
AHP Master Lease, LLC
AHP REIT Port B LLC
AHP RI Cape Canaveral, LLC
AHP LP7 Bentonville, LLC
AHP LP7 CY Baton Rouge, LLC
AHP LP7 Fayetteville, LLC
AHP LP7 Ft Meyers, LLC
AHP LP7 Jonesboro, LLC
Lakemore-Phoenix Investment Platform B, LLC
AHP LP7 Metarie, LLC
PAH Charlotte Hospitality JV, LLC
PAH Charlotte JV, LLC
PAH Charlotte LLC
AHP LP7 RI Baton Rouge, LLC

## Non-Debtor Affiliates

AHP FT Wayne Inn, LLC
AHP FT Wayne Suites, LLC
APIP-C Borrower, LLC
APIP-C FT Wayne Inn Master Tenant, LLC
APIP-C FT Wanye Suites Master Tenant, LLC
LPIP-C Operco, LLC

## American Hospitality Properties REIT, Inc. Top 10 Equity Holders

6409 Trust Partners Ltd.
Pengdi Han
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Dr. Jeffrey Miller
Michael Allen Carr
Gary Van AKen Jr CSIC 401K/Define Benefit Plan and benefit of VNV2 LLC
Clover RE LLC
Sports Specialties UNL LLC
Brian John Wroblewski
David Bret Boling

---

[1] Unless otherwise indicated, where a party has been listed in this schedule as having a particular relationship to the Debtors, such party is only listed once even if it also fits a separate category so as to avoid duplication.

**American Hospitality Properties REIT II, Inc. Top 10 Equity Holders**

Chandra Nandigam
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Lee DeVisser Trust UA dated 1/4/1993, Restated FBO Lee DeVisser Trust
The Arlyn Jay Lanting Living Trust
Yevgeniy Loboda
New Direction Trust Company (NDTCO) as Custodian FBO Daniel Reminga IRA 8000095
IRA Club, Administrator & Meridian Bank, Custodian FBO Jon Bentz IRA 2003153
Barber Family Trust 10232023 FBO Barber Family Trust 10232023
Jeffrey Kenneth Johnson FBO Johnson Family Trust of 2008
Michael Allen Carr

**Directors and Officers**

Paul Adams
Mary Pfeifer
Joseph Reardon

**Phoenix Entities**

PAH Management, LLC
PAH Services, LLC
Phoenix American Hospitality, LLC
William L. “Perch” Nelson

**Consultant**

Jay Anderson

**Banks**

JPMorgan Chase Bank N.A.
Wells Fargo Bank, N.A.

**Lenders**

Argentic Services Company LP
Deutsche Bank AG, New York Branch
Midland Loan Services, A PNC Real Estate Business
Rialto Mortgage Finance, LLC
Societe Generale
UBS Commercial Mortgage Trust 2018-C11
Wilmington Trust, N.A.

**Debtor Professionals**

LD Realty Capital

Vinson & Elkins LLP

**Landlords**

Spirit Realty, L.P.

**Investor Litigation Parties**

Proven Business Skills, Inc.
Richard C. Brown
William B. Federman
Federman & Sherwood
Gary S. Menzer
Menzer & Hill P.A.
Max Aills
Michael Tarr as Trustee of the Michael S. and Robin L. Tarr Trust
Mark A. Alexander
Mark A. Alexander Law, P.C.

**Franchisors**

Hilton Franchise Holding LLC
Marriott International Inc.

**Vendors**

2nd Century Plumbing, LLC
4D Service Group of Tampa, Inc
A-1 Door Specialists, Inc
A-1 Vacuum Cleaner
AAA - MAIL STOP 2
ABC Electric Service, Inc.
ABC Home & Commercial Services
Able Rec LLC
ABY Benefits LLC
Access Door and Glass
Ace Hardware of Cape Canavarel
ADP Screening and Selection SE
ADP, Inc.
ADTRAV
Advance Catastrophe Technologies, LLC
Advanced Lawn Techs LLC
Advanced Lighting & Sign Service
Air Filter Brothers
Aire-Master of Eastern Florida
Airpro Services, Inc.
AJ'S Restaurant Service by A-Tech
All American Fire Protection

All American Plumbing, Inc
All Around Landscaping Inc.
All Clear Plumbing of Brevard
Allbridge, LLC
Allen County Treasurer
Allied Air Services, LLC
Allied Mechancial Inc
Allied Plumbing Air & Electric
Allied Universal Security Svcs
Allround Landscaping
Altec
Amazon
Amazon Capital Services, Inc
American City Business Journals Inc
American Electric Power
American Fire Protection Group
American Quick Foods, Inc
Angela Wood, Tax Collector
Anthony Travel LLC
Aqua Indiana, Inc.
Arkansas Air
Arkansas Automatic Doors
Arkansas Department of Labor
Arkansas Dept of Health
Arkansas Fitness Repair Inc
Arkansas Secretary of State
Arthur J. Gallagher Risk Manage
ASCAP
Ascentium Capital LLC
Ashberry Water Conditioning
ASSA ABLOY Global Solutions, Inc
AT&T
Atmos Energy
ATP Plumbing & Drain LLC
Axis Key
Bailiwick Services, LLC
Baton Rouge Area Chamber
Baton Rouge Lodging Assoc.
Baton Rouge Water Company
Batteries Plus
Batteries Plus Bulbs
BCN Telecom, Inc
Beach Line Transportation
Beam Electric Company, Inc.
Beebe’s Pest & Termite Control
Ben E Keith Foods

Benton County Collector
Best Buy Business Advantage
Best Buy Stores, L.P.
Best Contracting LLC
Billiot Pest Control
Billy Senegal, LLC
Black Hills Energy
Bluebonnet Consulting, Inc.
Blueprint RF
BMI
Book My Group
BOOKING.COM BV
BookMyGroup
Brandon O Williams Construction, LLC
Brevard Business Telephone Systems, Inc.
Brevard County - Space Coast Office of Tourism
Brevard County Clerk - Finance TDT
Brevard County Tax Collector
Brinks, Inc.
Broadcast Music, Inc.
Bureau of Elevator Safety
Bureau of Revenue and Taxation
Burton Energy
Buy Efficient
C.T. Traina. Inc.
Caine & Weiner
Canary Technologies
Canon Financial Services, Inc
Captain Steamer Carpet Cleaner
Cards NWA LLC
Carrco
Carver Hotel Group, LLC
CAWLEY COMPANY (THE)
CCS Industrial Services, Inc
CentiMark Corporation
Centrada Soultions, LLC
Central Laundry Equipment
CF Environmental Laboratory LLC
Charlotte Area Chamber of Commerce
Chemtron
Cigna Health and Life Company
Cintas Corporation
Cintas Fire Protection
Cintas First Aid & Safety
City Clerk, City of Rogers
City Fire & Safety, Inc

City of Baton Rouge - E Parish
City of Cape Canaveral
City of Charlotte
City of Charlotte Aviation Dept.
City of Cocoa
City of Johnson
City of Jonesboro
City Utilities
City Water and Light - Jonesboro
City-County Tax Collector
Clarcity Holdings, LLC
Clean Start Group, LLC
Clearwater Pool & Spa World, LLC
Clearwater Pool Service
Clearwater Pools
CLI Enterprises, LLC
Climate Control of Charlotte, Inc.
Cloud5 Communications
Coast to Coast Computer Prods
Coca Cola Beverages Florida
Coca Cola Consolidated
Coca-Cola Bottling Company United, Inc
Coley Jordan Firestone
Collins Cleaners
Collins Cleaners & Valet Inc
Comcast Business
Commercial Industrial Lighting
Commtrak Corporation
CommTrans
Conserva Irrigation of NW Arkansas
Costar Realty Information
Courtesy Products LLC
Cox Business
Cozzini Bros., Inc.
Craighead County Tax Collector
Crain Supply
CSC
CSI Group International
CSTT Sports Travel
CT Corporation
Culligan of DFW
Culligan of Fort Wayne
Culligan of NW Arkansas
Cypress Cooling Company LLC
Danel Heating and Air
Darling Ingredients Inc

Data Plus Inc.
DBPR
Delta Products, Inc.
Delta Utilities
Deluxe Branded Marketing
Dept of Business and Professional Regulation
DEX Imaging LLC
Dext Capital, LLC
Dittmer Air & Heat, LLC
Division of Hotels & Restaurants
DMX Music (Mood Media)
Dormakaba Canada Inc
Dormakaba USA Inc
DR Pools LLC
Duke Energy
DynaFire, LLC
Eagle Refrigeration & Mechanical, LLC
East Baton Rouge Parish Sheriff
Eastern Refrigeration Service, Inc
Ecolab EcoSure
Ecolab Inc
Ecolab Pest Elimination Inc
Ecowaste Solutions, Inc
Edward Don & Company
Elavon, Inc
Elevator Safety Inspection
Entergy
ER Services
EspriGas
Everest Premier Insurance Company
Everon, LLC
Expedia
Facility Solutions Group, Inc
FEDEX
Felger Hart, Inc
Ferguson Enterprises, Inc.
Ferguson Facilities Supply
Fire & Safety Commodities
FitServe
Florida Bulb & Ballast, inc.
Florida City Gas
Florida Department of Financial Services
Florida Department of Revenue
Florida Dept of Health in Brevard County
Florida Dept of Health in Lee
Florida Door Control of Orlando, Inc

Fort Myers Beach Chamber of Co
Fort Wayne Allen County
Fort Wayne Storage - Time Corners
Fourth Enterprises, LLC – Red Book Solutions
FPL Energy Services
Freedom Pay, Inc
Friedrich Air Conditioning
Gallo Mechanical
Gardaworld, Inc.
Gasket Guy of NW Arkansas
Gavin’s Ace Hardware
GE Applicances, A Haier Company
Gen Digital, Inc
GFL Environmental
Gibson Teldata
Golden Waffles
Gordon Food Service, Inc
GRAINGER
Grayson Fitness Repair & Maintenance, Inc
Greater Fort Myers
Greater Fort Wayne, Inc
Green Leaf Lawn Service
Grinder Hockey LLC
Guest Supply
Guest Tek Interactive Entertai
Gully Pool Service & Supply
Harlan Graphic Arts Services, Inc.
Hartford Fire Insurance Co.
HD Supply Facilities Maintenance
Heights Industrial Supply
Helms Briscoe Perf Group Inc
Hilton Fort Wayne
Hilton Hotels Corporation
Hobart
Holladay Air Conditioning, Inc.
Home Depot Pro
Hossinger Refrigeration, Inc
Hotel Communication Supply
Hotel Credit Association
Hotel Investor Apps Inc
HotelEngine, Inc
HOTELSIGNS.COM
Hybrid Heating & Air
Imprint Plus
Indiana Department of Revenue
Indiana Dept of Homeland Sec.

Indiana Fire Sprinkler & Backflow, Inc
Indiana Michigan Power
Industrial Laundry Services Equipment, LLC
Inn at the Mill
Insight Direct USA, Inc.
Integrity Laundry Services
Intercontinental Hotel Dallas
Interserv Hospitality Solutions LLC
Island Pump & Electric Motor
J&S Liquid Waste Services, Inc.
J.C. Schultz Enterprises, Inc.
JC Ptac Services
Jeff Funkhouser
Jefferson Convention & Visitors Bureau
Jefferson Parish Dept of Water
Jefferson Parish Fire Dept.
Jefferson Parish Sheriff Office
Jefferson Parish Utility Services
JHG Marketing
Jim Welsh, Inc.
John A. Koons Locksmiths
Jones Sign CO., Inc
Jonesboro Coca-Cola
Kalibri Labs
Key-En-Lock LLC
Koch Filter Corporation
Koddi, Inc
Konica Minolta Business Solutions
Koorsen Fire & Security
KoreConX Inc
L&L Construction LLC
L&M Electric Motors
Labor Source, LLC
Lakeshore Recycling Systems
Landart Inc
Landscape Workshop, LLC
LAP Services, LLC
LDH, OPH
Lee County Hotel Association
Lee County Sports Organization, Inc.
Lee County Tax Collector
Lee County Utilities-Customer
Leslies Swimming Pool Supplies
Lexyl Travel Technologies Inc.
LG Fullfillment
Life Fitness, LLC

Liquid Environmental Solutions
Lloyds Exercise Equipment LLC
Lodging Solutions, LLC
Logix Fiber Networks
Louis Mechanical Contractors, Inc.
Louisiana Dept of Revenue
Louisiana Interstate Logos
Louisiana Secretary of State
Lyndon Cummings LLC
Lynx Refrigeration
M2 Compliance, LLC
M2 Roofing, LLC
M7 Services, LLC
Magical Adventures Travel LLC
Manatee Promotions, LLC
Manhattan Bakery, Inc
Marck Recycling & Waste, LLC
Marvelous Mouse Travels
Master Temps Inc
MasterPro Lighting, LLC
Masters of Disasters Leak Detection and Plumbing LLC
MCA Group
Mecklenburg County Tax Collector
Mecklenburg County ABC Board
Mecklenburg County Health Dept
Mecklenburg County Tax Office
Melrose Design Haus
Merchants Automotive Group Inc
Mercury Communications Svcs.
Merus/Aquapure Water Sys Inc
Metropolitan Life Insurance Company
Mini Melts of America, Inc
Mood Media
Moon Plumbing of SWFL Inc
Morgan Pump Systems, Inc
Musso Plumbing Company LLC
Nat Pro Gas of Brevard Inc
Navitas Credit Corp
NC DHHS
Nestle USA Inc
NextEra Energy Services
NIPSCO
Nola Pools and Spas
North Carolina Department of Labor
North Carolina Dept of Revenue
ODP Business Solutions, LLC

Office of Louisiana State
ONITY INC
Ooma, Inc
Optimum Water Solutions, Inc.
Oracle America Inc
Orchid.Events, LLC
Orlando Business Telephone Sys
Otis Elevator Company
Ozarks Coca-Cola
Parish and City Treasurer
Parish of East Baton Rouge Sheriff
Parish of East Baton Rouge Tax Collector
Parity Technology Solutions
Parts Town, LLC
Peleton Interactive, Inc
Pellerin Laundry Machinery Sales Co., Inc.
Pellucid Travel LLC
Pepsi Cola
PEPSI COLA GENERAL BOTTLING
PepsiCo Beverage Sales,LLC
PERFORMANCE FOOD GROUP
PF Service LLC
Piedmont Natural Gas
Pinch A Penny
Pinnacle Communications Corp
Pitney Bowes Global Fin Serv
Pitney Bowes Purchase Power
Pitney Bowes, Inc.
Plant Interscapes
PlaqueMaker.com, Inc
Plasticard-Locktech Internatl
Pool Troopers
Potts Hardware, Inc.
Precision Glass & Mirror Inc
Precision Glass LLC
Premier South LLC
Prisma Graphic Corporation
Professional Venue Solutions LTD
Profitsword, LLC
Property Owner Association
Prosper Hotels
PSC Wellington, LLC
Publix Super Markets
Qnary LLC
Queen City Heating Air & Plumbing
Quore, LLC

Redblue LLC
Regency Enterprises Inc
Reliant Fire and Security, Inc
Renue Systems of Mid-America
Republic Services
RFID Hotel
Richards, Layton & Finger, PA
Roger Advertising & Promotion
Rogers Advertising & Promo Commission
Rogers Water Utilities
Rogers-Lowell Area Chamber of
Rolling Greens
Royal Cup
RR Donnelley
RS Capital, LLC
Ryan LLC
Scentair Technologies, LLC
Schindler Elevator Corporation
SCNZ Architects
Seaside Pools Inc
Secretary of State
Select Hospitality Inc
Sertifi, Inc.
SESAC
Sheriff and Tax Collector
Sherwin Williams
Sherwin Williams - Fayetteville West Store
Sherwin Williams Co
Sherwin Williams Store #7363
Shows for Crews LLC
Shorts Travel Management, Inc.
Sonifi Solutions Inc
Southeastern Laundry Equipment
Southern Cutters, LLC
Southwestern Electric Power
Sporting Arkansas
Springdale Chamber of Commerce
Springdale Water Utilities
Staff Pro LLC
StanfordG Hospitality Consulting, LLC
State of Arkansas
State of Arkansas Washington County Tax Collector
State of Florida
State of Florida Dept of Business
State of North Carolina
State Systems, LLC

Steam Works Cleaning & Restoration
Stericycle, Inc
Steve's Frozen Chillers of Florida Space Coast
Stewart Law Group PLCC
Summit Fire National Consulting, LLC
Summit Utilites Arkansas Inc
Sunbelt Rentals Inc
Soncoast Elevator Inspections
Sunshine Landscaping, LLC
Superior Construction and Development, LLC
Suttons Pool Supply, Inc.
Swalty Kernel LLC
Swims & Sweeps Inc
Sysco Central Florida, Inc.
Sysco Charlotte, LLC
Sysco Corporation
Sysco Food Svc – New Orleans
Sysco West Coast Florida, Inc
TA Connections
TA Connections DE LLC
Tanager, Inc.
TDS IT
Team Travel
Teco Peoples Gas
Texas Secretary of State
The Cocoa Beach Area H&M Assc
The King Housekeeping & Kitchen SL.CC.NL Inc
The Maintenance Team, Inc
The Mini Storage Center
The Propeller Club of Port Canaveral
The Travel 100 Group, Inc
Three Rivers Electric LLC
THS Company LLC
TMI Communications - TekSecute Technology Group
T-Mobile USA Inc
Toast Inc.
Touch of Class Dry Cleaners
Tradavo
Trane U.S. Inc
Travel Advisors of the Mid-South
Travel Advocates International, Inc.
Travel Click Inc
Traveling Teams
Travelscape, LLC
TripleC Travel Inc
UniFirst Corporation

UniGuest
United Mechanical
US Foods
US Foodservice Inc - Charlotte
US Lawns Arkansas
Val-U-Chem Inc
Velocity, A Managed Services Company, Inc
Visit Florida
Visit Fort Wayne
Vistar
W.C. Bochelt & Sons Inc
Wagner-Meinert, LLC
Wasserstrom Company
Waste Connections
Waste Connections Bayou Inc
Waste Connections of NC
Waste Pro of Florida
Waste Pro of Louisiana Inc
Waterbird Window Cleaning
Watertreenwa
WebstaurantStore
Wes Eddington- Craighead County Tax Collector
West Central Fire District
Whaley Foodservice Repairs
WM Corporate Services Inc
World Travel Inc. Corporate HE
WorldVue Connect, Inc.
Yorkmont BP
Zasaco Corporation

**Top 20 General Unsecured Creditors[2]**

PAH Management
Spirit Realty
Deutsche Bank AG
Marriott International, Inc.
Hilton Hotels Corporation
Summit Fire National Consulting, LLC
Holland & Hart LLP
Latham & Watkins LLP
HD Supply Facilities Maintenance
US Foods
Master Temps Inc.
Munck Wilson Mandala LLP

[2] Certain entities listed in the Top 20 General Unsecured Creditors list are also listed elsewhere in this Schedule.

Onity Inc.
Schindler Elevator Corporation
Ecolab Pest Elimination Inc.
InterMountain Renovation Consultants, LLC
WebstaurantStore, Inc.
Advance Catastrophe Technologies, LLC
Central Laundry Equipment, Inc.
Entergy Corporation

**Bankruptcy Judges and Court Staff for the Northern District of Texas**

Jenni Bergreen
Scott W. Everett
Dawn Harden
Hawaii Jeng
Stacey G.C. Jernigan
Michelle V. Larson
Stephen J. Manz
Edward L. Morris
Mark X. Mullin
Brad W. Odell
Karyn Ruetner
Jennifer Speer
Shelby Wimberley

**United States Trustee's Office for the Northern District of Texas – Region 6**

Asher M. Bublick
Kara Croop
Reinhard Freimuth
Fernando Garnica
C. Marie Goodier
Susan Hersh
Alexandria Hughes
Aamer Javed
Meredyth A. Kippes
Lisa L. Lambert
Felicia P. Palos
Nancy S. Resnick
Jason Russell
Kendra Rust
Marc F. Salitore
Joseph Schlotzhauer
Erin Marie Schmidt
Rafay Suchedina
Cheryl H. Wilcoxson
Elizabeth A. Young

# Schedule 2

## Client Match List

**Client Match List**

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| American Hospitality Properties REIT, Inc. | Debtor Entity | Current Client |
| American Hospitality Properties REIT II, Inc. | Debtor Entity | Current Client |
| AHP Master Lease, LLC | Debtor Entity | Current Client |
| AHP REIT Port B LLC | Debtor Entity | Current Client |
| AHP RI Cape Canaveral, LLC | Debtor Entity | Current Client |
| AHP LP7 Bentonville, LLC | Debtor Entity | Current Client |
| AHP LP7 CY Baton Rouge, LLC | Debtor Entity | Current Client |
| AHP LP7 Fayetteville, LLC | Debtor Entity | Current Client |
| AHP LP7 Ft Meyers, LLC | Debtor Entity | Current Client |
| AHP LP7 Jonesboro, LLC | Debtor Entity | Current Client |
| Lakemore-Phoenix Investment Platform B, LLC | Debtor Entity | Current Client |
| AHP LP7 Metarie, LLC | Debtor Entity | Current Client |
| PAH Charlotte Hospitality JV, LLC | Debtor Entity | Current Client |
| PAH Charlotte JV, LLC | Debtor Entity | Current Client |
| PAH Charlotte LLC | Debtor Entity | Current Client |
| AHP LP7 RI Baton Rouge, LLC | Debtor Entity | Current Client |
| AHP FT Wayne Inn, LLC | Non-Debtor Affiliate | Not a Client |
| AHP FT Wayne Suites, LLC | Non-Debtor Affiliate | Not a Client |
| APIP-C Borrower, LLC | Non-Debtor Affiliate | Not a Client |
| APIP-C FT Wayne Inn Master Tenant, LLC | Non-Debtor Affiliate | Not a Client |
| APIP-C FT Wanye Suites Master Tenant, LLC | Non-Debtor Affiliate | Not a Client |
| LPIP-C Operco, LLC | Non-Debtor Affiliate | Not a Client |
| 6409 Trust Partners Ltd. | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Pengdi Han | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Dr. Jeffrey Miller | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Michael Allen Carr | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Gary Van AKen Jr CSIC 401K/Define Benefit Plan and benefit of VNV2 LLC | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Clover RE LLC | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Sports Specialties UNL LLC | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Brian John Wroblewski | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| David Bret Boling | Top 10 Equity Holder: American Hospitality Properties REIT, Inc. | Not a Client |
| Chandra Nandigam | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Lee DeVisser Trust UA dated 1/4/1993, Restated FBO Lee DeVisser Trust | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| The Arlyn Jay Lanting Living Trust | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Yevgeniy Loboda | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| New Direction Trust Company (NDTCO) as Custodian FBO Daniel Reminga IRA 8000095 | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| IRA Club, Administrator & Meridian Bank, Custodian FBO Jon Bentz IRA 2003153 | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Barber Family Trust 10232023 FBO Barber Family Trust 10232023 | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Jeffrey Kenneth Johnson FBO Johnson Family Trust of 2008 | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Michael Allen Carr | Top 10 Equity Holder: American Hospitality Properties REIT II, Inc. | Not a Client |
| Paul Adams | Directors and Officers | Not a Client |
| Mary Pfeifer | Directors and Officers | Not a Client |
| Joseph Reardon | Directors and Officers | Not a Client |
| PAH Management, LLC | Phoenix Entities | Not a Client |
| PAH Services, LLC | Phoenix Entities | Not a Client |
| Phoenix American Hospitality, LLC | Phoenix Entities | Current Client |
| William L. “Perch” Nelson | Phoenix Entities | Not a Client |
| Jay Anderson | Consultant | Not a Client |
| JPMorgan Chase Bank N.A. | Banks | Current Client |
| Wells Fargo Bank, N.A. | Banks | Current Client |
| Argentic Services Company LP | Lenders | Not a Client |
| Deutsche Bank AG, New York Branch | Lenders | Current Client |
| Midland Loan Services, A PNC Real Estate Business | Lenders | Not a Client |
| Rialto Mortgage Finance, LLC | Lenders | Not a Client |
| Societe Generale | Lenders | Current Client |
| UBS Commercial Mortgage Trust 2018-C11 | Lenders | Not a Client |
| Wilmington Trust, N.A. | Lenders | Current Client |
| LD Realty Capital | Debtor Professionals | Not a Client |
| Vinson & Elkins LLP | Debtor Professionals | Current Client |
| Spirit Realty, L.P. | Landlords | Not a Client |
| Proven Business Skills, Inc. | Investor Litigation Parties | Not a Client |
| Richard C. Brown | Investor Litigation Parties | Not a Client |
| William B. Federman | Investor Litigation Parties | Not a Client |
| Federman & Sherwood | Investor Litigation Parties | Not a Client |
| Gary S. Menzer | Investor Litigation Parties | Not a Client |
| Menzer & Hill P.A. | Investor Litigation Parties | Not a Client |
| Max Aills | Investor Litigation Parties | Not a Client |
| Michael Tarr as Trustee of the Michael S. and Robin L. Tarr Trust | Investor Litigation Parties | Not a Client |
| Mark A. Alexander | Investor Litigation Parties | Not a Client |
| Mark A. Alexander Law, P.C. | Investor Litigation Parties | Not a Client |
| Hilton Franchise Holding LLC | Franchisors | Not a Client |
| Marriott International Inc. | Franchisors | Current Client |
| 2nd Century Plumbing, LLC | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| 4D Service Group of Tampa, Inc | Vendors | Not a Client |
| A-1 Door Specialists, Inc | Vendors | Not a Client |
| A-1 Vacuum Cleaner | Vendors | Not a Client |
| AAA - MAIL STOP 2 | Vendors | Not a Client |
| ABC Electric Service, Inc. | Vendors | Not a Client |
| ABC Home & Commercial Services | Vendors | Not a Client |
| Able Rec LLC | Vendors | Not a Client |
| ABY Benefits LLC | Vendors | Not a Client |
| Access Door and Glass | Vendors | Not a Client |
| Ace Hardware of Cape Canavarel | Vendors | Not a Client |
| ADP Screening and Selection SE | Vendors | Not a Client |
| ADP, Inc. | Vendors | Current Client |
| ADTRAV | Vendors | Not a Client |
| Advance Catastrophe Technologies, LLC | Vendors | Not a Client |
| Advanced Lawn Techs LLC | Vendors | Not a Client |
| Advanced Lighting & Sign Service | Vendors | Not a Client |
| Air Filter Brothers | Vendors | Not a Client |
| Aire-Master of Eastern Florida | Vendors | Not a Client |
| Airpro Services, Inc. | Vendors | Not a Client |
| AJ'S Restaurant Service by A-Tech | Vendors | Not a Client |
| All American Fire Protection | Vendors | Not a Client |
| All American Plumbing, Inc | Vendors | Not a Client |
| All Around Landscaping Inc. | Vendors | Not a Client |
| All Clear Plumbing of Brevard | Vendors | Not a Client |
| Allbridge, LLC | Vendors | Not a Client |
| Allen County Treasurer | Vendors | Not a Client |
| Allied Air Services, LLC | Vendors | Not a Client |
| Allied Mechancial Inc | Vendors | Not a Client |
| Allied Plumbing Air & Electric | Vendors | Not a Client |
| Allied Universal Security Svcs | Vendors | Not a Client |
| Allround Landscaping | Vendors | Not a Client |
| Altec | Vendors | Not a Client |
| Amazon | Vendors | Current Client |
| Amazon Capital Services, Inc | Vendors | Not a Client |
| American City Business Journals Inc | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| American Electric Power | Vendors | Current Client |
| American Fire Protection Group | Vendors | Not a Client |
| American Quick Foods, Inc | Vendors | Not a Client |
| Angela Wood, Tax Collector | Vendors | Not a Client |
| Anthony Travel LLC | Vendors | Not a Client |
| Aqua Indiana, Inc. | Vendors | Not a Client |
| Arkansas Air | Vendors | Not a Client |
| Arkansas Automatic Doors | Vendors | Not a Client |
| Arkansas Department of Labor | Vendors | Not a Client |
| Arkansas Dept of Health | Vendors | Not a Client |
| Arkansas Fitness Repair Inc | Vendors | Not a Client |
| Arkansas Secretary of State | Vendors | Not a Client |
| Arthur J. Gallagher Risk Manage | Vendors | Not a Client |
| ASCAP | Vendors | Not a Client |
| Ascentium Capital LLC | Vendors | Not a Client |
| Ashberry Water Conditioning | Vendors | Not a Client |
| ASSA ABLOY Global Solutions, Inc | Vendors | Current Client |
| AT&T | Vendors | Current Client |
| Atmos Energy | Vendors | Current Client |
| ATP Plumbing & Drain LLC | Vendors | Not a Client |
| Axis Key | Vendors | Not a Client |
| Bailiwick Services, LLC | Vendors | Not a Client |
| Baton Rouge Area Chamber | Vendors | Not a Client |
| Baton Rouge Lodging Assoc. | Vendors | Not a Client |
| Baton Rouge Water Company | Vendors | Not a Client |
| Batteries Plus | Vendors | Not a Client |
| Batteries Plus Bulbs | Vendors | Not a Client |
| BCN Telecom, Inc | Vendors | Not a Client |
| Beach Line Transportation | Vendors | Not a Client |
| Beam Electric Company, Inc. | Vendors | Not a Client |
| Beebe’s Pest & Termite Control | Vendors | Not a Client |
| Ben E Keith Foods | Vendors | Not a Client |
| Benton County Collector | Vendors | Not a Client |
| Best Buy Business Advantage | Vendors | Not a Client |
| Best Buy Stores, L.P. | Vendors | Not a Client |
| Best Contracting LLC | Vendors | Not a Client |
| Billiot Pest Control | Vendors | Not a Client |
| Billy Senegal, LLC | Vendors | Not a Client |
| Black Hills Energy | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Bluebonnet Consulting, Inc. | Vendors | Not a Client |
| Blueprint RF | Vendors | Not a Client |
| BMI | Vendors | Current Client |
| Book My Group | Vendors | Not a Client |
| BOOKING.COM BV | Vendors | Current Client |
| BookMyGroup | Vendors | Not a Client |
| Brandon O Williams Construction, LLC | Vendors | Not a Client |
| Brevard Business Telephone Systems, Inc. | Vendors | Not a Client |
| Brevard County - Space Coast Office of Tourism | Vendors | Not a Client |
| Brevard County Clerk - Finance TDT | Vendors | Not a Client |
| Brevard County Tax Collector | Vendors | Not a Client |
| Brinks, Inc. | Vendors | Current Client |
| Broadcast Music, Inc. | Vendors | Current Client |
| Bureau of Elevator Safety | Vendors | Not a Client |
| Bureau of Revenue and Taxation | Vendors | Not a Client |
| Burton Energy | Vendors | Not a Client |
| Buy Efficient | Vendors | Not a Client |
| C.T. Traina. Inc. | Vendors | Not a Client |
| Caine & Weiner | Vendors | Not a Client |
| Canary Technologies | Vendors | Not a Client |
| Canon Financial Services, Inc | Vendors | Former Client |
| Captain Steamer Carpet Cleaner | Vendors | Not a Client |
| Cards NWA LLC | Vendors | Not a Client |
| Carrco | Vendors | Not a Client |
| Carver Hotel Group, LLC | Vendors | Not a Client |
| CAWLEY COMPANY (THE) | Vendors | Not a Client |
| CCS Industrial Services, Inc | Vendors | Not a Client |
| CentiMark Corporation | Vendors | Not a Client |
| Centrada Soultions, LLC | Vendors | Not a Client |
| Central Laundry Equipment | Vendors | Not a Client |
| CF Environmental Laboratory LLC | Vendors | Not a Client |
| Charlotte Area Chamber of Commerce | Vendors | Not a Client |
| Chemtron | Vendors | Not a Client |
| Cigna Health and Life Company | Vendors | Current Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Cintas Corporation | Vendors | Current Client |
| Cintas Fire Protection | Vendors | Not a Client |
| Cintas First Aid & Safety | Vendors | Not a Client |
| City Clerk, City of Rogers | Vendors | Not a Client |
| City Fire & Safety, Inc | Vendors | Not a Client |
| City of Baton Rouge - E Parish | Vendors | Not a Client |
| City of Cape Canaveral | Vendors | Not a Client |
| City of Charlotte | Vendors | Not a Client |
| City of Charlotte Aviation Dept. | Vendors | Not a Client |
| City of Cocoa | Vendors | Not a Client |
| City of Johnson | Vendors | Not a Client |
| City of Jonesboro | Vendors | Not a Client |
| City Utilities | Vendors | Not a Client |
| City Water and Light - Jonesboro | Vendors | Not a Client |
| City-County Tax Collector | Vendors | Not a Client |
| Clarcity Holdings, LLC | Vendors | Not a Client |
| Clean Start Group, LLC | Vendors | Not a Client |
| Clearwater Pool & Spa World, LLC | Vendors | Not a Client |
| Clearwater Pool Service | Vendors | Not a Client |
| Clearwater Pools | Vendors | Not a Client |
| CLI Enterprises, LLC | Vendors | Not a Client |
| Climate Control of Charlotte, Inc. | Vendors | Not a Client |
| Cloud5 Communications | Vendors | Not a Client |
| Coast to Coast Computer Prods | Vendors | Not a Client |
| Coca Cola Beverages Florida | Vendors | Not a Client |
| Coca Cola Consolidated | Vendors | Not a Client |
| Coca-Cola Bottling Company United, Inc | Vendors | Not a Client |
| Coley Jordan Firestone | Vendors | Not a Client |
| Collins Cleaners | Vendors | Not a Client |
| Collins Cleaners & Valet Inc | Vendors | Not a Client |
| Comcast Business | Vendors | Not a Client |
| Commercial Industrial Lighting | Vendors | Not a Client |
| Commtrak Corporation | Vendors | Not a Client |
| CommTrans | Vendors | Not a Client |
| Conserva Irrigation of NW Arkansas | Vendors | Not a Client |
| Costar Realty Information | Vendors | Not a Client |
| Courtesy Products LLC | Vendors | Not a Client |

| **Potential Party-in-Interest** | **Relationship to Debtor** | **Firm Relationship** |
|---|---|---|
| Cox Business | Vendors | Not a Client |
| Cozzini Bros., Inc. | Vendors | Not a Client |
| Craighead County Tax Collector | Vendors | Not a Client |
| Crain Supply | Vendors | Not a Client |
| Corporation Service Company | Vendors | Not a Client |
| CSI Group International | Vendors | Not a Client |
| CSTT Sports Travel | Vendors | Not a Client |
| CT Corporation | Vendors | Not a Client |
| Culligan of DFW | Vendors | Not a Client |
| Culligan of Fort Wayne | Vendors | Not a Client |
| Culligan of NW Arkansas | Vendors | Not a Client |
| Cypress Cooling Company LLC | Vendors | Not a Client |
| Danel Heating and Air | Vendors | Not a Client |
| Darling Ingredients Inc | Vendors | Current Client |
| Data Plus Inc. | Vendors | Not a Client |
| DBPR | Vendors | Not a Client |
| Delta Products, Inc. | Vendors | Not a Client |
| Delta Utilities | Vendors | Not a Client |
| Deluxe Branded Marketing | Vendors | Not a Client |
| Dept of Business and Professional Regulation | Vendors | Not a Client |
| DEX Imaging LLC | Vendors | Not a Client |
| Dext Capital, LLC | Vendors | Not a Client |
| Dittmer Air & Heat, LLC | Vendors | Not a Client |
| Division of Hotels & Restaurants | Vendors | Not a Client |
| DMX Music (Mood Media) | Vendors | Not a Client |
| Dormakaba Canada Inc | Vendors | Not a Client |
| Dormakaba USA Inc | Vendors | Not a Client |
| DR Pools LLC | Vendors | Not a Client |
| Duke Energy | Vendors | Current Client |
| DynaFire, LLC | Vendors | Not a Client |
| Eagle Refrigeration & Mechanical, LLC | Vendors | Not a Client |
| East Baton Rouge Parish Sheriff | Vendors | Not a Client |
| Eastern Refrigeration Service, Inc | Vendors | Not a Client |
| Ecolab EcoSure | Vendors | Not a Client |
| Ecolab Inc | Vendors | Current Client |
| Ecolab Pest Elimination Inc | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Ecowaste Solutions, Inc | Vendors | Not a Client |
| Edward Don & Company | Vendors | Not a Client |
| Elavon, Inc | Vendors | Not a Client |
| Elevator Safety Inspection | Vendors | Not a Client |
| Entergy | Vendors | Former Client |
| ER Services | Vendors | Not a Client |
| EspriGas | Vendors | Not a Client |
| Everest Premier Insurance Company | Vendors | Not a Client |
| Everon, LLC | Vendors | Not a Client |
| Expedia | Vendors | Current Client |
| Facility Solutions Group, Inc | Vendors | Not a Client |
| FEDEX | Vendors | Current Client |
| Felger Hart, Inc | Vendors | Not a Client |
| Ferguson Enterprises, Inc. | Vendors | Not a Client |
| Ferguson Facilities Supply | Vendors | Not a Client |
| Fire & Safety Commodities | Vendors | Not a Client |
| FitServe | Vendors | Not a Client |
| Florida Bulb & Ballast, inc. | Vendors | Not a Client |
| Florida City Gas | Vendors | Not a Client |
| Florida Department of Business and Professional Regulation | Vendors | Not a Client |
| Florida Department of Financial Services | Vendors | Not a Client |
| Florida Department of Revenue | Vendors | Not a Client |
| Florida Dept of Health in Brevard County | Vendors | Not a Client |
| Florida Dept of Health in Lee | Vendors | Not a Client |
| Florida Door Control of Orlando, Inc | Vendors | Not a Client |
| Fort Myers Beach Chamber of Co | Vendors | Not a Client |
| Fort Wayne Allen County | Vendors | Not a Client |
| Fort Wayne Storage - Time Corners | Vendors | Not a Client |
| Fourth Enterprises, LLC – Red Book Solutions | Vendors | Not a Client |
| FPL Energy Services | Vendors | Not a Client |
| Freedom Pay, Inc | Vendors | Not a Client |
| Friedrich Air Conditioning | Vendors | Not a Client |
| Gallo Mechanical | Vendors | Not a Client |
| Gardaworld, Inc. | Vendors | Current Client |
| Gasket Guy of NW Arkansas | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Gavin's Ace Hardware | Vendors | Not a Client |
| GE Applicances, A Haier Company | Vendors | Not a Client |
| Gen Digital, Inc | Vendors | Current Client |
| GFL Environmental | Vendors | Former Client |
| Gibson Teldata | Vendors | Not a Client |
| Golden Waffles | Vendors | Not a Client |
| Gordon Food Service, Inc | Vendors | Not a Client |
| GRAINGER | Vendors | Current Client |
| Grayson Fitness Repair & Maintenance, Inc | Vendors | Not a Client |
| Greater Fort Myers | Vendors | Not a Client |
| Greater Fort Wayne, Inc | Vendors | Not a Client |
| Green Leaf Lawn Service | Vendors | Not a Client |
| Grinder Hockey LLC | Vendors | Not a Client |
| Guest Supply | Vendors | Not a Client |
| Guest Tek Interactive Entertai | Vendors | Not a Client |
| Gully Pool Service & Supply | Vendors | Not a Client |
| Harlan Graphic Arts Services, Inc. | Vendors | Not a Client |
| Hartford Fire Insurance Co. | Vendors | Former Client |
| HD Supply Facilities Maintenance | Vendors | Not a Client |
| Heights Industrial Supply | Vendors | Not a Client |
| Helms Briscoe Perf Group Inc | Vendors | Not a Client |
| Hilton Fort Wayne | Vendors | Not a Client |
| Hilton Hotels Corporation | Vendors | Current Client |
| Hobart Corp (commercial kitchen equipment) | Vendors | Not a Client |
| Holladay Air Conditioning, Inc. | Vendors | Not a Client |
| Home Depot Pro | Vendors | Not a Client |
| Hossinger Refrigeration, Inc | Vendors | Not a Client |
| Hotel Communication Supply | Vendors | Not a Client |
| Hotel Credit Association | Vendors | Not a Client |
| Hotel Investor Apps Inc | Vendors | Not a Client |
| HotelEngine, Inc | Vendors | Current Client |
| HOTELSIGNS.COM | Vendors | Not a Client |
| Hybrid Heating & Air | Vendors | Not a Client |
| Imprint Plus | Vendors | Not a Client |
| Indiana Department of Revenue | Vendors | Not a Client |
| Indiana Dept of Homeland Sec. | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Indiana Fire Sprinkler & Backflow, Inc | Vendors | Not a Client |
| Indiana Michigan Power | Vendors | Current Client |
| Industrial Laundry Services Equipment, LLC | Vendors | Not a Client |
| Inn at the Mill | Vendors | Not a Client |
| Insight Direct USA, Inc. | Vendors | Not a Client |
| Integrity Laundry Services | Vendors | Not a Client |
| Intercontinental Hotel Dallas | Vendors | Not a Client |
| Interserv Hospitality Solutions LLC | Vendors | Not a Client |
| Island Pump & Electric Motor | Vendors | Not a Client |
| J&S Liquid Waste Services, Inc. | Vendors | Not a Client |
| J.C. Schultz Enterprises, Inc. | Vendors | Not a Client |
| JC Ptac Services | Vendors | Not a Client |
| Jeff Funkhouser | Vendors | Not a Client |
| Jefferson Convention & Visitors Bureau | Vendors | Not a Client |
| Jefferson Parish Dept of Water | Vendors | Not a Client |
| Jefferson Parish Fire Dept. | Vendors | Not a Client |
| Jefferson Parish Sheriff Office | Vendors | Not a Client |
| Jefferson Parish Utility Services | Vendors | Not a Client |
| JHG Marketing | Vendors | Not a Client |
| Jim Welsh, Inc. | Vendors | Not a Client |
| John A. Koons Locksmiths | Vendors | Not a Client |
| Jones Sign CO., Inc | Vendors | Not a Client |
| Jonesboro Coca-Cola | Vendors | Not a Client |
| Kalibri Labs | Vendors | Not a Client |
| Key-En-Lock LLC | Vendors | Not a Client |
| Koch Filter Corporation | Vendors | Not a Client |
| Koddi, Inc | Vendors | Not a Client |
| Konica Minolta Business Solutions | Vendors | Not a Client |
| Koorsen Fire & Security | Vendors | Not a Client |
| KoreConX Inc | Vendors | Not a Client |
| L&L Construction LLC | Vendors | Not a Client |
| L&M Electric Motors | Vendors | Not a Client |
| Labor Source, LLC | Vendors | Not a Client |
| Lakeshore Recycling Systems | Vendors | Not a Client |
| Landart Inc | Vendors | Not a Client |
| Landscape Workshop, LLC | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| LAP Services, LLC | Vendors | Not a Client |
| Office of Public Health - Louisiana Department of Health | Vendors | Not a Client |
| Lee County Hotel Association | Vendors | Not a Client |
| Lee County Sports Organization, Inc. | Vendors | Not a Client |
| Lee County Tax Collector | Vendors | Not a Client |
| Lee County Utilities-Customer | Vendors | Not a Client |
| Leslies Swimming Pool Supplies | Vendors | Not a Client |
| Lexyl Travel Technologies Inc. | Vendors | Not a Client |
| LG Fullfillment | Vendors | Not a Client |
| Life Fitness, LLC | Vendors | Former Client |
| Liquid Environmental Solutions | Vendors | Not a Client |
| Lloyds Exercise Equipment LLC | Vendors | Not a Client |
| Lodging Solutions, LLC | Vendors | Not a Client |
| Logix Fiber Networks | Vendors | Not a Client |
| Louis Mechanical Contractors, Inc. | Vendors | Not a Client |
| Louisiana Dept of Revenue | Vendors | Not a Client |
| Louisiana Interstate Logos | Vendors | Not a Client |
| Louisiana Secretary of State | Vendors | Not a Client |
| Lyndon Cummings LLC | Vendors | Not a Client |
| Lynx Refrigeration | Vendors | Not a Client |
| M2 Compliance, LLC | Vendors | Not a Client |
| M2 Roofing, LLC | Vendors | Not a Client |
| M7 Services, LLC | Vendors | Not a Client |
| Magical Adventures Travel LLC | Vendors | Not a Client |
| Manatee Promotions, LLC | Vendors | Not a Client |
| Manhattan Bakery, Inc | Vendors | Not a Client |
| Marck Recycling & Waste, LLC | Vendors | Not a Client |
| Marvelous Mouse Travels | Vendors | Not a Client |
| Master Temps Inc | Vendors | Not a Client |
| MasterPro Lighting, LLC | Vendors | Not a Client |
| Masters of Disasters Leak Detection and Plumbing LLC | Vendors | Not a Client |
| MCA Group | Vendors | Not a Client |
| Mecklenburg County Tax Collector | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Mecklenburg County ABC Board | Vendors | Not a Client |
| Mecklenburg County Health Dept | Vendors | Not a Client |
| Mecklenburg County Tax Office | Vendors | Not a Client |
| Melrose Design Haus | Vendors | Not a Client |
| Merchants Automotive Group Inc | Vendors | Not a Client |
| Mercury Communications Svcs. | Vendors | Not a Client |
| Merus/Aquapure Water Sys Inc | Vendors | Not a Client |
| Metropolitan Life Insurance Company | Vendors | Not a Client |
| Mini Melts of America, Inc | Vendors | Not a Client |
| Mood Media | Vendors | Current Client |
| Moon Plumbing of SWFL Inc | Vendors | Not a Client |
| Morgan Pump Systems, Inc | Vendors | Not a Client |
| Musso Plumbing Company LLC | Vendors | Not a Client |
| Nat Pro Gas of Brevard Inc | Vendors | Not a Client |
| Navitas Credit Corp | Vendors | Not a Client |
| NC DHHS | Vendors | Not a Client |
| Nestle USA Inc | Vendors | Current Client |
| NextEra Energy Services | Vendors | Not a Client |
| NIPSCO | Vendors | Not a Client |
| Nola Pools and Spas | Vendors | Not a Client |
| North Carolina Department of Labor | Vendors | Not a Client |
| North Carolina Dept of Revenue | Vendors | Not a Client |
| ODP Business Solutions, LLC | Vendors | Not a Client |
| Office of Louisiana State | Vendors | Not a Client |
| ONITY INC | Vendors | Current Client |
| Ooma, Inc | Vendors | Not a Client |
| Optimum Water Solutions, Inc. | Vendors | Not a Client |
| Oracle America Inc | Vendors | Not a Client |
| Orchid.Events, LLC | Vendors | Not a Client |
| Orlando Business Telephone Sys | Vendors | Not a Client |
| Otis Elevator Company | Vendors | Current Client |
| Ozarks Coca-Cola | Vendors | Not a Client |
| Parish and City Treasurer | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Parish of East Baton Rouge Sheriff | Vendors | Not a Client |
| Parish of East Baton Rouge Tax Collector | Vendors | Not a Client |
| Parity Technology Solutions | Vendors | Not a Client |
| Parts Town, LLC | Vendors | Not a Client |
| Peleton Interactive, Inc | Vendors | Not a Client |
| Pellerin Laundry Machinery Sales Co., Inc. | Vendors | Not a Client |
| Pellucid Travel LLC | Vendors | Not a Client |
| Pepsi Cola | Vendors | Current Client |
| PEPSI COLA GENERAL BOTTLING | Vendors | Not a Client |
| PepsiCo Beverage Sales,LLC | Vendors | Not a Client |
| PERFORMANCE FOOD GROUP | Vendors | Current Client |
| PF Service LLC | Vendors | Not a Client |
| Piedmont Natural Gas | Vendors | Not a Client |
| Pinch A Penny | Vendors | Not a Client |
| Pinnacle Communications Corp | Vendors | Not a Client |
| Pitney Bowes Global Fin Serv | Vendors | Not a Client |
| Pitney Bowes Purchase Power | Vendors | Not a Client |
| Pitney Bowes, Inc. | Vendors | Former Client |
| Plant Interscapes | Vendors | Not a Client |
| PlaqueMaker.com, Inc | Vendors | Not a Client |
| Plasticard-Locktech Internatl | Vendors | Not a Client |
| Pool Troopers | Vendors | Not a Client |
| Potts Hardware, Inc. | Vendors | Not a Client |
| Precision Glass & Mirror Inc | Vendors | Not a Client |
| Precision Glass LLC | Vendors | Not a Client |
| Premier South LLC | Vendors | Not a Client |
| Prisma Graphic Corporation | Vendors | Not a Client |
| Professional Venue Solutions LTD | Vendors | Not a Client |
| Profitsword, LLC | Vendors | Not a Client |
| Property Owner Association | Vendors | Not a Client |
| Prosper Hotels | Vendors | Not a Client |
| PSC Wellington, LLC | Vendors | Not a Client |
| Publix Super Markets | Vendors | Not a Client |
| Qnary LLC | Vendors | Not a Client |
| Queen City Heating Air & Plumbing | Vendors | Not a Client |
| Quore, LLC | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Redblue LLC | Vendors | Not a Client |
| Regency Enterprises Inc | Vendors | Not a Client |
| Reliant Fire and Security, Inc | Vendors | Not a Client |
| Renue Systems of Mid-America | Vendors | Not a Client |
| Republic Services | Vendors | Current Client |
| RFID Hotel | Vendors | Not a Client |
| Richards, Layton & Finger, PA | Vendors | Current Client |
| Roger Advertising & Promotion | Vendors | Not a Client |
| Rogers Advertising & Promo Commission | Vendors | Not a Client |
| Rogers Water Utilities | Vendors | Not a Client |
| Rogers-Lowell Area Chamber of | Vendors | Not a Client |
| Rolling Greens | Vendors | Not a Client |
| Royal Cup | Vendors | Former Client |
| RR Donnelley | Vendors | Not a Client |
| RS Capital, LLC | Vendors | Not a Client |
| Ryan LLC | Vendors | Not a Client |
| Scentair Technologies, LLC | Vendors | Former Client |
| Schindler Elevator Corporation | Vendors | Not a Client |
| SCNZ Architects | Vendors | Not a Client |
| Seaside Pools Inc | Vendors | Not a Client |
| Delaware Secretary of State | Vendors | Not a Client |
| Select Hospitality Inc | Vendors | Not a Client |
| Sertifi, Inc. | Vendors | Not a Client |
| SESAC | Vendors | Current Client |
| Sheriff and Tax Collector | Vendors | Not a Client |
| Sherwin Williams | Vendors | Current Client |
| Sherwin Williams - Fayetteville West Store | Vendors | Current Client |
| Sherwin Williams Co | Vendors | Current Client |
| Sherwin Williams Store #7363 | Vendors | Current Client |
| Shows for Crews LLC | Vendors | Not a Client |
| Shorts Travel Management, Inc. | Vendors | Not a Client |
| Sonifi Solutions Inc | Vendors | Current Client |
| Southeastern Laundry Equipment | Vendors | Not a Client |
| Southern Cutters, LLC | Vendors | Not a Client |
| Southwestern Electric Power | Vendors | Not a Client |
| Sporting Arkansas | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Springdale Chamber of Commerce | Vendors | Not a Client |
| Springdale Water Utilities | Vendors | Not a Client |
| Staff Pro LLC | Vendors | Not a Client |
| StanfordG Hospitality Consulting, LLC | Vendors | Not a Client |
| State of Arkansas | Vendors | Former Client |
| State of Arkansas Washington County Tax Collector | Vendors | Not a Client |
| State of Florida | Vendors | Current Client |
| State of Florida Dept of Business | Vendors | Not a Client |
| State of North Carolina | Vendors | Former Client |
| State Systems, LLC | Vendors | Not a Client |
| Steam Works Cleaning & Restoration | Vendors | Not a Client |
| Stericycle, Inc | Vendors | Current Client |
| Steve's Frozen Chillers of Florida Space Coast | Vendors | Not a Client |
| Stewart Law Group PLCC | Vendors | Not a Client |
| Summit Fire National Consulting, LLC | Vendors | Not a Client |
| Summit Utilites Arkansas Inc | Vendors | Not a Client |
| Sunbelt Rentals Inc | Vendors | Not a Client |
| Soncoast Elevator Inspections | Vendors | Not a Client |
| Sunshine Landscaping, LLC | Vendors | Not a Client |
| Superior Construction and Development, LLC | Vendors | Not a Client |
| Suttons Pool Supply, Inc. | Vendors | Not a Client |
| Swalty Kernel LLC | Vendors | Not a Client |
| Swims & Sweeps Inc | Vendors | Not a Client |
| Sysco Central Florida, Inc. | Vendors | Not a Client |
| Sysco Charlotte, LLC | Vendors | Not a Client |
| Sysco Corporation | Vendors | Current Client |
| Sysco Food Svc – New Orleans | Vendors | Not a Client |
| Sysco West Coast Florida, Inc | Vendors | Not a Client |
| TA Connections | Vendors | Not a Client |
| TA Connections DE LLC | Vendors | Not a Client |
| Tanager, Inc. | Vendors | Not a Client |
| TDS IT | Vendors | Not a Client |
| Team Travel | Vendors | Not a Client |
| Teco Peoples Gas | Vendors | Not a Client |
| Texas Secretary of State | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| The Cocoa Beach Area H&M Assc | Vendors | Not a Client |
| The King Housekeeping & Kitchen SL.CC.NL Inc | Vendors | Not a Client |
| The Maintenance Team, Inc | Vendors | Not a Client |
| The Mini Storage Center | Vendors | Not a Client |
| The Propeller Club of Port Canaveral | Vendors | Not a Client |
| The Travel 100 Group, Inc | Vendors | Not a Client |
| Three Rivers Electric LLC | Vendors | Not a Client |
| THS Company LLC | Vendors | Not a Client |
| TMI Communications - TekSecute Technology Group | Vendors | Not a Client |
| T-Mobile USA Inc | Vendors | Current Client |
| Toast Inc. | Vendors | Not a Client |
| Touch of Class Dry Cleaners | Vendors | Not a Client |
| Tradavo | Vendors | Not a Client |
| Trane U.S. Inc | Vendors | Current Client |
| Travel Advisors of the Mid-South | Vendors | Not a Client |
| Travel Advocates International, Inc. | Vendors | Not a Client |
| Travel Click Inc | Vendors | Not a Client |
| Traveling Teams | Vendors | Not a Client |
| Travelscape, LLC | Vendors | Not a Client |
| TripleC Travel Inc | Vendors | Not a Client |
| UniFirst Corporation | Vendors | Former Client |
| UniGuest | Vendors | Not a Client |
| United Mechanical | Vendors | Not a Client |
| US Foods | Vendors | Not a Client |
| US Foodservice Inc - Charlotte | Vendors | Not a Client |
| US Lawns Arkansas | Vendors | Not a Client |
| Val-U-Chem Inc | Vendors | Not a Client |
| Velocity, A Managed Services Company, Inc | Vendors | Not a Client |
| Visit Florida | Vendors | Not a Client |
| Visit Fort Wayne | Vendors | Not a Client |
| Vistar | Vendors | Not a Client |
| W.C. Bochelt & Sons Inc | Vendors | Not a Client |
| Wagner-Meinert, LLC | Vendors | Not a Client |
| Wasserstrom Company | Vendors | Not a Client |
| Waste Connections | Vendors | Current Client |
| Waste Connections Bayou Inc | Vendors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Waste Connections of NC | Vendors | Not a Client |
| Waste Pro of Florida | Vendors | Not a Client |
| Waste Pro of Louisiana Inc | Vendors | Not a Client |
| Waterbird Window Cleaning | Vendors | Not a Client |
| Watertreenwa | Vendors | Not a Client |
| WebstaurantStore | Vendors | Not a Client |
| Wes Eddington- Craighead County Tax Collector | Vendors | Not a Client |
| West Central Fire District | Vendors | Not a Client |
| Whaley Foodservice Repairs | Vendors | Not a Client |
| WM Corporate Services Inc | Vendors | Not a Client |
| World Travel Inc. Corporate HE | Vendors | Not a Client |
| WorldVue Connect, Inc. | Vendors | Not a Client |
| Yorkmont BP | Vendors | Not a Client |
| Zasaco Corporation | Vendors | Not a Client |
| PAH Management | Top 20 General Unsecured Creditors | Not a Client |
| Spirit Realty | Top 20 General Unsecured Creditors | Not a Client |
| Deutsche Bank AG | Top 20 General Unsecured Creditors | Current Client |
| Marriott International, Inc. | Top 20 General Unsecured Creditors | Current Client |
| Hilton Hotels Corporation | Top 20 General Unsecured Creditors | Current Client |
| Summit Fire National Consulting, LLC | Top 20 General Unsecured Creditors | Not a Client |
| Holland & Hart LLP | Top 20 General Unsecured Creditors | Current Client |
| Latham & Watkins LLP | Top 20 General Unsecured Creditors | Current Client |
| HD Supply Facilities Maintenance | Top 20 General Unsecured Creditors | Not a Client |
| US Foods | Top 20 General Unsecured Creditors | Not a Client |
| Master Temps Inc. | Top 20 General Unsecured Creditors | Not a Client |
| Munck Wilson Mandala LLP | Top 20 General Unsecured Creditors | Current Client |
| Onity Inc. | Top 20 General Unsecured Creditors | Current Client |
| Schindler Elevator Corporation | Top 20 General Unsecured Creditors | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Ecolab Pest Elimination Inc. | Top 20 General Unsecured Creditors | Not a Client |
| InterMountain Renovation Consultants, LLC | Top 20 General Unsecured Creditors | Not a Client |
| WebstaurantStore, Inc. | Top 20 General Unsecured Creditors | Not a Client |
| Advance Catastrophe Technologies, LLC | Top 20 General Unsecured Creditors | Not a Client |
| Central Laundry Equipment, Inc. | Top 20 General Unsecured Creditors | Not a Client |
| Entergy Corporation | Top 20 General Unsecured Creditors | Former Client |
| Jenni Bergreen | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Scott W. Everett | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Dawn Harden | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Hawaii Jeng | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Stacey G.C. Jernigan | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Michelle V. Larson | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Stephen J. Manz | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Edward L. Morris | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Mark X. Mullin | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Brad W. Odell | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Karyn Ruetner | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Jennifer Speer | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Shelby Wimberley | Bankruptcy Judges and Court Staff for the Northern District of Texas | Not a Client |
| Asher M. Bublick | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Kara Croop | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Reinhard Freimuth | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Fernando Garnica | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| C. Marie Goodier | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Susan Hersh | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Alexandria Hughes | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Aamer Javed | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Meredyth A. Kippes | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Lisa L. Lambert | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Felicia P. Palos | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Nancy S. Resnick | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Jason Russell | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |

| Potential Party-in-Interest | Relationship to Debtor | Firm Relationship |
|---|---|---|
| Kendra Rust | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Marc F. Salitore | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Joseph Schlotzhauer | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Erin Marie Schmidt | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Rafay Suchedina | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Cheryl H. Wilcoxson | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |
| Elizabeth A. Young | United States Trustee's Office for the Northern District of Texas – Region 6 | Not a Client |