Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

George R. Howard (*admitted pro hac vice*)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC.,** ***et al.*****,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

# DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF VINSON & ELKINS LLP AS COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file this *Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins LLP as Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "***Application***") seeking entry of an order (the "***Order***"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Vinson & Elkins LLP ("***V&E***") as their counsel effective as of October 4, 2026 (the "***Petition Date***"). In support of this Application, the Debtors submit the *Declaration of Bradley R. Foxman in Support of Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins LLP as Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date*, attached hereto as **Exhibit B** (the "***Foxman Declaration***"), and the *Declaration of Alan Tantleff in Support of Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins as Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date*, attached hereto as **Exhibit C** (the "***Tantleff Declaration***"), and respectfully submit the following:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 2014 and 2016, rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Northern District of Texas (the "***N.D. Tex. L.B.R.***"), and section F.20. of the Procedures for Complex Cases in the Northern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

4. American Hospitality Properties REIT, Inc. ("***REIT I***") and American Hospitality Properties REIT II, Inc. ("***REIT II***") (collectively, the "***AHP Entities***," and together with their Debtor and non-Debtor affiliates, the "***Company***") are Delaware-incorporated, non-traded companies formed to engage primarily in the acquisition of premium branded hotels and other real estate-related assets either secured by or related to hotel properties in the United States. The AHP Entities own a portfolio of hospitality assets across the country, including properties affiliated with the Marriott and Hilton hotel brands.

5. The AHP Entities were founded by William Lee "Perch" Nelson ("***Mr. Nelson***") and Phoenix American Hospitality, LLC ("***PAH***"), a Dallas-based hospitality investment, asset management, and hotel operations company. PAH, which remains led by Mr. Nelson as its Chief Executive Officer, serves as the external property manager for certain of the Company's entities in which the AHP Entities hold ownership interests. Prior to the commencement of these Chapter 11 Cases, the Company generated revenue primarily through the ownership of its hotel properties and related hospitality businesses.

6. On the Petition Date, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been

made and no official committee of unsecured creditors has been appointed in these Chapter 11 Cases to date.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the Declarations[2] of Alan Tantleff filed in these Chapter 11 Cases.

**RELIEF REQUESTED**

8. By this Application, the Debtors seek entry of the Order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of V&E as their counsel in accordance with this Application and the terms and conditions set forth in the engagement letter (as amended) between the Debtors and V&E (the "***Engagement Letter***"), a copy of which is attached as **Schedule 1** to **Exhibit B** hereto and incorporated herein by reference.

**V&E'S QUALIFICATIONS**

9. V&E has represented the Debtors in restructuring matters since September 21, 2026. Throughout that time, the Debtors, V&E, and the Debtors' other professional advisors have worked closely in an effort to respond to the Debtors' circumstances, including by evaluating strategic options, preparing documents relating to these Chapter 11 Cases, and other related matters.

10. V&E was also previously engaged by REIT I and REIT II on July 16, 2025 to advise them on (i) routine and recurring reporting and compliance work under the Securities Act of 1933 and Securities and Exchange Act of 1934, other routine securities law and general disclosure

---

2 "***Declarations***" refer to the Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Pleadings [Dkt. No. 20]; Declaration of Alan Tantleff in Support of Additional First Day Pleadings [Dkt. No. 53], Declaration of Alan Tantleff in Support of (I) Final Relief Requested in the Debtors' Additional First Day Motions; and (II) Supplemental First Day Motions [Dkt. No. 111].

advice, routine corporate governance and fiduciary duty advice, occasional miscellaneous commercial contract matters such as confidentiality agreements, (ii) REIT and partnership tax matters, and (iii) other general advice and counseling with respect to certain other routine matters, non-routine matters, and extraordinary transactions as agreed to from time to time (but not in connection with any litigation or investigations).[3]

11. On January 21, 2026, REIT I, AHP Master Lease, LLC, and AHP RI Cape Canaveral, LLC retained V&E to represent them with respect to the matter of *Spirit Realty LP v. AHP Master Lease, LLC et al*. (DC-25-23718). As of January 27, 2026, V&E confirmed that it had been advised to represent only REIT I in this matter and not the other two entities included in the engagement letter. On July 28, 2026, AHP Master Lease, LLC and AHP RI Cape Canaveral, LLC were added as additional clients to this representation alongside REIT I.

12. The Debtors seek authority to retain V&E because, among other reasons, (a) V&E has extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code, and (b) V&E is widely recognized for its expertise in handling corporate, capital markets, debt restructuring, and other transactions for companies in numerous industries. The Debtors submit that this experience will allow V&E to address unique issues that may arise in the context of these Chapter 11 Cases. Accordingly, the Debtors submit that V&E is both well-qualified and uniquely able to represent

[3] PAH, who at the time wholly controlled REIT I and REIT II and who already had separate counsel, was added to the July 16, 2025 engagement letter at the request of PAH's separate counsel primarily for the purpose of facilitating the communications of REIT I and REIT II with PAH, Mr. Nelson, and Munck Wilson Mandala and Holland & Hart LLP, their respective SEC enforcement investigation counsel, with respect to discussions around the ongoing SEC investigation at that time. As discussed more fully in the Foxman Declaration, on March 25, 2026, V&E withdrew from representing PAH, and, as stated in the Engagement Letter, that engagement was formally terminated on March 30, 2026.

the Debtors as their counsel in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code.

**SERVICES TO BE PROVIDED**

13. The Debtors anticipate that V&E will, among other things, render the following legal services:

a. provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the operation of their businesses and the management of estate property;

b. advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c. attend meetings and negotiations with representatives of creditors and other parties in interest;

d. prepare substantially all necessary motions, answers, orders, reports, and other legal papers on the Debtors' behalf in connection with the administration of their bankruptcy estates;

e. advise the Debtors in connection with any potential sale(s) of assets and take necessary action(s) to guide the Debtors through such potential sale(s);

f. advise the Debtors regarding tax matters;

g. take all necessary legal actions to protect and preserve the Debtors' estates, including the potential prosecution of certain actions on the Debtors' behalf, defense of actions commenced against the Debtors, and representation of the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

h. analyze proofs of claim that may be filed against the Debtors and potential objections to such claims;

i. represent the Debtors in connection with negotiating the terms of potential financing during the Chapter 11 Cases and obtaining authority for debtor-in-possession financing and the continued use of cash collateral;

j. analyze certain executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

k. advise the Debtors with respect to corporate and certain litigation matters, including discovery requests, and matters related to the Bankruptcy Code's automatic stay as well as compliance with non-bankruptcy law;

l. consult with the U.S. Trustee, any official committees that may be appointed in these Chapter 11 Cases, and all other creditors and parties in interest concerning the administration of these Chapter 11 Cases;

m. take action on the Debtors' behalf to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

n. appear before the Court and any appellate courts to represent the interests of the Debtors' estates; and

o. provide representation and all other legal services required by the Debtors in discharging their duties as debtors in possession or otherwise in connection with these Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

14. V&E intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., and any other applicable procedures and orders of the Court. V&E also intends to make a reasonable effort to comply with the U.S. Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "***Guidelines***").

15. The hourly rates and corresponding rate structure V&E will use in these Chapter 11 Cases are the same as or similar to the hourly rates and corresponding rate structure that V&E uses in other complex restructuring matters and in many complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.

16. V&E operates in a national marketplace for legal services in which rates are driven by multiple factors relating to, among other things, the tenure, experience, and specialization of the individual lawyer, V&E's performance and reputation, and the nature of the work involved.

17. V&E's current hourly rates range from $1,700 to $2,695 per hour for partners, $1,550-$2,245 per hour for counsel, $920-$1,580 per hour for associates, and $645-$685 per hour for paraprofessionals and other timekeepers. V&E's hourly rates are set at a level designed to compensate V&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and

routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4]

18. V&E represented the Debtors in connection with their preparation of these Chapter 11 Cases prior to the Petition Date using the hourly rates described above, subject to an agreed discount on each monthly fee statement, generally consistent with V&E's historical fee arrangement with the Debtors. These hourly rates are set forth in the Foxman Declaration and are the same as or similar to the rates that V&E charges for other similar representations and are consistent with the hourly rates that other comparable counsel would charge to do work substantially similar to the work V&E will perform in these Chapter 11 Cases.

19. None of the professionals included in this engagement will vary their rates charged to the Debtors based on the geographic location of these Chapter 11 Cases. In addition, the Debtors have reviewed V&E's rate structure and V&E represents that it is not significantly different from (a) the rates that V&E has charged the Debtors for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

20. It is V&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also V&E's policy to charge its clients only the amount actually incurred by V&E in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, computer-assisted legal research, photocopying, airfare, and lodging.

[4] For example, V&E increases the hourly billing rate of attorneys and paraprofessionals in the form of (a) step increases historically awarded in the ordinary course of business on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's level of seniority.

## V&E'S PREPETITION COMPENSATION

21. The Debtors paid V&E $75,000 as an initial "advance payment retainer," consisting of the reversal of certain payments for certain prepetition non-restructuring work and re-application of such funds as a retainer for the engagement to represent the Debtors in these Chapter 11 Case, as more fully described in and pursuant to the terms of the Engagement Letter.[5] In the 90 days prior to the Petition Date, the Debtors paid V&E additional advance payment retainers of $200,000, for a total aggregate advanced payment retainer of $275,000. The retainer was fully applied to prepetition fees and expenses incurred between September 21, 2026 and October 2, 2026 on October 2, 2026. V&E will write off any excess/unpaid fees or expenses above the retainer for prepetition services.

22. Pursuant to Bankruptcy Rule 2016(b), V&E has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with V&E's professionals or (b) any compensation another person or party has received or may receive.

## V&E'S DISINTERESTEDNESS

23. To the best of the Debtors' knowledge, the partners, counsel, associates, and other attorneys of V&E (a) do not have any connection with any of the Debtors, their affiliates, their creditors, any other party in interest, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Northern District of Texas or any person employed in the offices of the same, except as otherwise set forth in this Application and in the accompanying Foxman Declaration; (b) are "disinterested persons," as that term is

---

[5] The Engagement Letter provides that upon termination of V&E's engagement, V&E will refund the Debtors any amount of the advance payment retainer that has not been used and is not subject to any of V&E's unpaid fees and expenses.

defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtors' estates.

24. For the reasons described more fully in the Foxman Declaration, V&E's former and limited engagement by PAH, which was formally terminated in March 2026, primarily to facilitate communications of REIT I and REIT II with PAH and Mr. Nelson, who were joint defendants in the SEC enforcement action, where certain of the Debtors were subjects of the SEC's related investigation, does not compromise V&E's disinterestedness or cause V&E to hold or represent any interest adverse to the Debtors' estates.

25. The Debtors understand that V&E will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in these Chapter 11 Cases and will promptly update the Foxman Declaration to disclose any material developments regarding the Debtors or any other pertinent relationships that come to V&E's attention.

**NO DUPLICATION OF SERVICES**

26. The Debtors submit that the services performed by V&E will not duplicate or overlap with the services performed by the Debtors' other retained consultants and advisors. V&E understands that the Debtors have submitted, or intend to submit, separate applications to retain Omni Agent Solutions, Inc. as claims agent, and FTI Consulting, Inc. as financial advisor, and may retain additional professionals during the term of the Engagement Letter. As set forth in the Foxman Declaration, V&E will use reasonable efforts to work cooperatively with the Debtors and their other advisors to avoid duplication of services provided by the Debtors' retained professionals.

**BASIS FOR RELIEF REQUESTED**

27. Section 327(a) of the Bankruptcy Code provides that a Debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

28. Bankruptcy Rule 2014(a) requires that a retention application include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

29. The Debtors submit that for all the reasons stated herein and in the Foxman Declaration, the retention and employment of V&E as the Debtors' counsel pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) is warranted.

**A. V&E's Retention is Necessary and is in the Best Interests of the Debtors' Estates.**

30. The Debtors submit, in light of V&E's restructuring experience and its familiarity with the Debtors' operations and capital structure, V&E's immediate retention as Debtors' counsel in these Chapter 11 Cases is both necessary and in the best interests of the Debtors' estates. Indeed, if the Debtors were required to retain different counsel to replace V&E, the Debtors would need to locate, educate, and integrate new counsel and expend significant resources in doing so, wasting their time and distracting their focus from maintaining their operations during these Chapter 11 Cases. Thus, retaining V&E will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and will assist in maximizing value for the Debtors' estates and all stakeholders.

**B. V&E Neither Holds nor Represents any Interest Adverse to the Debtors' Estates and is a "Disinterested Person" within the Meaning of Section 101(14) of the Bankruptcy Code.**

31. To the best of the Debtors' knowledge, V&E: (a) has no connection to the Debtors, their creditors, or other parties in interest, except as disclosed herein and in the Foxman Declaration; (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (c) does not represent, and does not hold, any interest adverse to the Debtors' estates.

32. If new or additional relationships are discovered or arise, V&E will use reasonable efforts to identify them and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**STATEMENT REGARDING N.D. TEX. L.B.R. 2014-1(b)(2)**

33. This Application is being filed three days outside of the thirty-day window within which the filing would have been deemed contemporaneous with the Petition Date under N.D. Tex. L.B.R. 2014-1(b)(1). This Application was not filed earlier because V&E has been actively working to resolve various case issues, including assisting the Debtors in their efforts to obtain debtor in possession financing and pursue a sale process, and V&E has prioritized its focus on those efforts. V&E requests that the Court's entry of the proposed Order should still approve V&E's retention retroactive to the Petition Date given V&E's substantial efforts representing the Debtors in these Chapter 11 Cases to date and the very minor delay in filing this Application. V&E knows of no reason why such a minor delay in the filing of this Application should prejudice any parties in interest, including because all stakeholders have been on notice of V&E's involvement since the Petition Date.

## NOTICE

34. Notice of this Application has been provided by delivery to: (a) William Lee "Perch" Nelson; (b) Phoenix American Hospitality, LLC; (c) counsel to Argentic Investment Management, LLC; (d) counsel to Spirit Realty LP; (e) the U.S. Trustee; (f) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (g) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; and (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the N.D. Tex. L.B.R. In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

No prior application for the relief requested herein has been made to this Court or any other court.

[*Remainder of page Intentionally Left Blank*]

**PRAYER**

The Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated: November 6, 2026
Dallas, Texas

*/s/ Alan Tantleff*
Alan Tantleff
Chief Restructuring Officer for the Debtors

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2026 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas on all counsel of record who are deemed to have consented to electronic service.

*/s/ Kiran Vakamudi*
Kiran Vakamudi

# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al.*,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | **Re Dkt. No. __** |

**ORDER AUTHORIZING**
**THE RETENTION AND EMPLOYMENT**
**OF VINSON & ELKINS LLP AS COUNSEL FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "***Application***")[2] of the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for the entry of an order (the "***Order***") authorizing the Debtors to retain and employ Vinson & Elkins LLP ("***V&E***") as their counsel effective as of the

1 The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

2 Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

Petition Date; and the Court having reviewed the Application, the Foxman Declaration, and the Tantleff Declaration; and the Court having jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. § 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Foxman Declaration that V&E's employment is in the best interests of the Debtors' estates and that V&E (a) has no connection to the Debtors, their creditors, or other parties in interest except as set forth in the Foxman Declaration, (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and (c) does not represent, and does not hold, any interest adverse to the Debtors' estates; and the Court having found that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Application after having given due deliberation upon the Application and all of the proceedings had before the Court in connection with the Application, it is HEREBY ORDERED THAT:

1. Pursuant to sections 327(a) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and the N.D. Tex. L.B.R. 2014-1 and 2016-1, the Debtors, as debtors in possession, are authorized to retain and employ V&E as their counsel effective as of the Petition Date in accordance with the terms and conditions set forth in the Application, the Foxman Declaration, and in the Engagement Letter, as modified by this Order.

2. V&E shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with

sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any other applicable procedures and orders of the Court. For billing purposes, V&E will keep time records in one-tenth of an hour increments. V&E shall also make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* in connection with interim and final fee applications to be filed by V&E in these Chapter 11 Cases.

3. V&E shall provide ten business days' notice to the Debtors, the U.S. Trustee, and official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

4. V&E shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

5. To the extent there is any conflict between this Order and the Application, the Engagement Letter, or the Foxman Declaration, the terms of this Order shall control.

6. V&E shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by V&E to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

7. V&E shall review its files periodically during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, V&E shall use reasonable efforts to identify such further

developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

8. The Debtors and V&E are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**# # # END OF ORDER # # #**

**Order submitted by:**

**VINSON & ELKINS LLP**

Bradley R. Foxman (Texas Bar No. 24065243)
William L. Wallander (Texas Bar No. 20780750)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bfoxman@velaw.com
bwallander@velaw.com

- and -

George R. Howard (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
ghoward@velaw.com

**PROPOSED ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION**

# EXHIBIT B

**Foxman Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY** | § | **(Chapter 11)** |
| **PROPERTIES REIT, INC., *et al.*,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DECLARATION OF**
**BRADLEY R. FOXMAN IN SUPPORT OF**
**APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF VINSON & ELKINS LLP AS COUNSEL FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, I, Bradley R. Foxman, hereby declare as follows:

1. I am a partner of the law firm of Vinson & Elkins LLP ("***V&E***"). I am one of the lead attorneys from V&E working on these Chapter 11 Cases. I am a member in good standing of the State Bar of Texas. There are no disciplinary proceedings pending against me.

2. I submit this declaration (the "***Declaration***") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins LLP as Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "***Application***").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

## V&E'S QUALIFICATIONS

3. V&E has represented the Debtors in restructuring matters since September 21, 2026. Since that time, the Debtors, V&E, and the Debtors' other advisors have worked closely in an effort to respond to the Debtors' circumstances, including by evaluating strategic options, preparing documents relating to these Chapter 11 Cases, and other related matters.

4. V&E was also previously engaged by REIT I and REIT II on July 16, 2025 to advise them on (i) routine and recurring reporting and compliance work under the Securities Act of 1933 and Securities and Exchange Act of 1934, other routine securities law and general disclosure advice, routine corporate governance and fiduciary duty advice, occasional miscellaneous commercial contract matters such as confidentiality agreements, (ii) REIT and partnership tax matters, and (iii) other general advice and counseling with respect to certain other routine matters, non-routine matters, and extraordinary transactions as agreed to from time to time (but not in connection with any litigation or investigations).[3]

5. On January 21, 2026, REIT I, AHP Master Lease, LLC, and AHP RI Cape Canaveral, LLC retained V&E to represent them with respect to the matter of *Spirit Realty LP v. AHP Master Lease, LLC et al*. (DC-25-23718). As of January 27, 2026, V&E confirmed that it had been advised to represent only REIT I in this matter and not the other two entities included in the engagement letter. On July 28, 2026, AHP Master Lease, LLC and AHP RI Cape Canaveral, LLC were added as additional clients to this representation alongside REIT I.

[3] PAH, who at the time wholly controlled REIT I and REIT II and who already had separate counsel, was added to the July 16, 2025 engagement letter at the request of PAH's separate counsel primarily for the purpose of facilitating the communications of REIT I and REIT II with PAH, Mr. Nelson, and Munck Wilson Mandala and Holland & Hart LLP, their respective SEC enforcement investigation counsel, with respect to discussions around the ongoing SEC investigation at that time. As discussed more fully below, on March 25, 2026, V&E withdrew from representing PAH, and, as stated in the Engagement Letter, that engagement was formally terminated on March 30, 2026.

6. The Debtors have indicated a desire to retain V&E because, among other reasons, (a) V&E has extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code, and (b) V&E is widely recognized for its expertise in handling corporate, capital markets, debt restructuring, and other transactions for companies in numerous industries. I believe that this experience will allow V&E to address unique issues that may arise in the context of these Chapter 11 Cases. I believe that V&E is both well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED

7. As set forth in the Application, it is anticipated that V&E will, among other things, render the following legal services:

a. provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the operation of their businesses and the management of estate property;

b. advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c. attend meetings and negotiations with representatives of creditors and other parties in interest;

d. prepare substantially all necessary motions, answers, orders, reports, and other legal papers on the Debtors' behalf in connection with the administration of their bankruptcy estates;

e. advise the Debtors in connection with any potential sale(s) of assets and take necessary action(s) to guide the Debtors through such potential sale(s);

f. advise the Debtors regarding tax matters;

g. take all necessary legal actions to protect and preserve the Debtors' estates, including the potential prosecution of certain actions on the Debtors' behalf, defense of actions commenced against the Debtors, and representation of the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

h. analyze proofs of claim that may be filed against the Debtors and potential objections to such claims;

i. represent the Debtors in connection with negotiating the terms of potential financing during the Chapter 11 Cases and obtaining authority for debtor-in-possession financing and the continued use of cash collateral;

j. analyze certain executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

k. advise the Debtors with respect to corporate and certain litigation matters, including discovery requests, and matters related to the Bankruptcy Code's automatic stay as well as compliance with non-bankruptcy law;

l. consult with the U.S. Trustee, any official committees that may be appointed in these Chapter 11 Cases, and all other creditors and parties in interest concerning the administration of these Chapter 11 Cases;

m. take action on the Debtors' behalf to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

n. appear before the Court and any appellate courts to represent the interests of the Debtors' estates; and

o. provide representation and all other legal services required by the Debtors in discharging their duties as debtors in possession or otherwise in connection with these Chapter 11 Cases.

**PROFESSIONAL COMPENSATION**

8. V&E intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., the Complex Case Procedures, and any other applicable procedures and orders of the Court. V&E also intends to make a reasonable effort to comply with the U.S. Trustee's Guidelines.

9. The hourly rates and corresponding rate structure V&E will use in these Chapter 11 Cases are the same as or similar to the hourly rates and corresponding rate structure that V&E

uses in other complex restructuring matters and in many complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.

10. V&E operates in a national marketplace for legal services in which rates are driven by multiple factors relating to, among other things, the tenure, experience, and specialization of the individual lawyer, V&E's performance and reputation, and the nature of the work involved.

11. V&E's current hourly rates range from $1,700 to $2,695 per hour for partners, $1,550-$2,245 per hour for counsel, $920-$1,580 per hour for associates, and $645-$685 per hour for paraprofessionals and other timekeepers. V&E's hourly rates are set at a level designed to compensate V&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4]

12. V&E represented the Debtors in connection with their preparation of these Chapter 11 Cases prior to the Petition Date using the hourly rates described above, subject to an agreed discount on each monthly fee statement, generally consistent with V&E's historical fee arrangement with the Debtors. These hourly rates are set forth in this Declaration and are the same as or similar to the rates that V&E charges for other similar representations and are consistent with the hourly rates that other comparable counsel would charge to do work substantially similar to the work V&E will perform in these Chapter 11 Cases.

13. V&E agreed to continue its standard or customary billing arrangements for this engagement, as discounted consistent with its historical fee arrangement with the Debtors. None of the professionals included in this engagement will vary their rate charged to the Debtors based

[4] For example, V&E increases the hourly billing rate of attorneys and paraprofessionals in the form of (a) step increases historically awarded in the ordinary course of business on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's level of seniority.

on the geographic location of these Chapter 11 Cases. In addition, V&E represents that its rate structure is not significantly different from (a) the rates that V&E has charged the Debtors for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

14. It is V&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also V&E's policy to charge its clients only the amount actually incurred by V&E in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, computer-assisted legal research, photocopying, airfare, and lodging.

**V&E'S PREPETITION COMPENSATION**

15. The Debtors paid V&E $75,000 as an initial "advance payment retainer," consisting of the reversal of certain payments for certain prepetition non-restructuring work and re-application of such funds as a retainer for the engagement to represent the Debtors in these Chapter 11 Case, as more fully described in and pursuant to the terms of the Engagement Letter.[5] In the 90 days prior to the Petition Date, the Debtors paid V&E additional advance payment retainers of $200,000, for a total aggregate advanced payment retainer of $275,000. The retainer was fully applied to prepetition fees and expenses incurred between September 21, 2026 and October 2, 2026 on October 2, 2026. V&E will write off any excess/unpaid fees or expenses above the retainer for prepetition services.

16. Pursuant to Bankruptcy Rule 2016(b), V&E has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person,

[5] The Engagement Letter provides that upon termination of V&E's engagement, V&E will refund the Debtors any amount of the advance payment retainer that has not been used and is not subject to any of V&E's unpaid fees and expenses.

other than with V&E's professionals or (b) any compensation another person or party has received or may receive.

## STATEMENT REGARDING THE GUIDELINES

17. V&E will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any other applicable procedures and orders of the Court. V&E also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Guidelines, both in connection with the Application and in any fee applications to be filed by V&E in these Chapter 11 Cases.

## ATTORNEY STATEMENT PURSUANT TO THE GUIDELINES

18. The following are provided in response to the request for additional information set forth in Paragraph D.1 of the Guidelines:

a. **Question**: Did V&E agree to any variations from, or alternatives to, V&E's standard billing arrangements for this engagement?

   **Answer**: Yes, V&E agreed to a discount of its standard or customary billing arrangements for this engagement, consistent with its historical fee arrangement with the Debtors. V&E will continue to adhere to these arrangements during the pendency of these Chapter 11 Cases.

b. **Question**: Do any of the V&E professionals in this engagement vary their rate based on the geographic location of these Chapter 11 Cases?

   **Answer**: No.

c. **Question**: If V&E has represented the Debtors in the 12 months prepetition, disclose V&E's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If V&E's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

   **Answer**: V&E will use the same hourly rates for services rendered on behalf of the Debtors during the pendency of these Chapter 11 Cases as it used during the 12

months prior to the Petition Date. In the twelve months preceding these Chapter 11 Cases, through and including December 31, 2025, V&E's hourly rates for services rendered on behalf of the Debtors ranged as follows:

| Timekeeper | U.S. Range |
|---|---|
| Partners | $1,550-$2,300 |
| Counsel | $1,395-$1,995 |
| Associates | $835-$1,435 |
| Paraprofessionals | $615-$650 |

Following the firm's standard periodic hourly rate increase for 2026, the following hourly rates took effect on January 1, 2026 and remain in effect:

| Timekeeper | U.S. Range |
|---|---|
| Partners | $1,700-$2,695 |
| Counsel | $1,550-$2,245 |
| Associates | $920-$1,580 |
| Paraprofessionals | $645-$685 |

V&E will continue to apply these rates during the pendency of these Chapter 11 Cases, as set out in the Engagement Letter.[6]

d. **Question**: Have the Debtors approved V&E's budget and staffing plan, and, if so, for what budget period?

**Answer**: Yes, the Debtors' CRO has approved V&E's projected budget and staffing plan for the period from the Petition Date through January 3, 2027. Projected fees may be greater than the budgeted amounts if certain contingencies occur, and V&E reserves all rights to modify the projected budget and staffing plan as needed.

**SEARCH METHODS FOR POTENTIAL CONFLICTS**

19. V&E used its standard procedures (the "***Firm Procedures***") to review its relationships to parties that may have connections to the Debtors. V&E searched for the parties in interest listed on **Schedule 2** in its conflicts databases, which contain the names of any person or entity for which V&E has provided services or has otherwise billed for services and which are designed to reveal conflicts of interest and other connections to existing and former clients and to

---

[6] As described in the Engagement Letter V&E reviews its billing rates annually, usually in January. If V&E changes its rates, V&E will apply those new rates thereafter and provide notice to the U.S. Trustee of such increase.

non-client third parties. The search results were reviewed for conflicts by V&E attorneys. To the extent that my team and I have been able to ascertain that V&E has been retained to represent and performed work within the last three years for any potential parties in interest in these Chapter 11 Cases, such parties are disclosed on **Schedule 3** attached hereto.[7] To the extent any possible conflicts were identified, I, or an attorney working under my supervision, contacted (as necessary) attorneys at V&E who were listed on the report as having previous or current connections to persons or entities that may be either related to the Debtors or connected to these Chapter 11 Cases in any way. To the extent needed, I obtained information and guidance with regard to the particular connections reflected from these attorneys.

20. The following is a list of the applicable categories that V&E has searched:[8]

**Categories**

Debtor Entities
Non-Debtor Affiliates
American Hospitality Properties REIT, Inc. Top 10 Equity Holders
American Hospitality Properties REIT II, Inc. Top 10 Equity Holders
Directors and Officers
Phoenix Entities
Consultant
Banks
Lenders
Debtor Professionals
Landlords
Investor Litigation Parties
Franchisors

[7] As referenced in **Schedule 3**, the term “current client” means an entity listed in V&E’s conflicts system regarding which there are one or more open matters. As referenced in **Schedule 3**, the term “former client” means an entity listed in V&E’s conflicts system regarding which there are no open matters and regarding which one or more matters were closed within the 36 months preceding the Petition Date. Whether an actual client relationship exists can only be determined by reference to the documents governing V&E’s representation rather than its potential listing in V&E’s conflicts search system. As a general matter, V&E does not disclose connections if there are no open matters for an entity and any closed matters were closed more than 36 months before the Petition Date. For the avoidance of doubt, time cannot be recorded in V&E’s system to any closed matter.

[8] V&E’s inclusion of parties herein is solely to illustrate V&E’s conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described herein.

Vendors
Top 20 General Unsecured Creditors
Additional Parties in Interest
Bankruptcy Judges and Court Staff for the Northern District of Texas
United States Trustee's Office for the Northern District of Texas – Region 6

**V&E'S DISINTERESTEDNESS**

21. To the best of my knowledge, and as required by section 327(a) of the Bankruptcy Code, V&E (a) has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration; (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (c) does not hold or represent an interest adverse to the Debtors' estates.

22. V&E previously has represented, currently represents, and might in the future represent other entities that are stakeholders in these Chapter 11 Cases; however, except as set forth below, V&E's representation of those entities is in matters that are unrelated to the Debtors. V&E has approximately 700 attorneys and a large and diversified legal practice that encompasses the representation of many financial institutions and commercial organizations. Some of these institutions and organizations are or might consider themselves to be creditors, stakeholders, or other parties in interest in these Chapter 11 Cases. The results listed on **Schedule 3** hereto are the product of implementing the Firm Procedures described above and are based on the relationship of the indicated persons, entities, or their affiliates with the Debtors and V&E.

23. The results of V&E's conflicts searches of the above-listed entities are listed on **Schedule 3** to this Declaration. For the avoidance of doubt, V&E will not commence a cause of action in these Chapter 11 Cases against the entities listed on **Schedule 3** that are current clients of V&E unless V&E has an applicable waiver on file or first receives a waiver from such entity allowing V&E to commence such an action. To the extent that a waiver does not exist or is not obtained from such entity, and it is necessary or advisable for the Debtors to commence an action

against that entity as determined by the Debtors' Chief Restructuring Officer, the Debtors will be represented in such particular matter by separate counsel.

24. For the 12-month period ending October 4, 2026, and for the calendar year 2025, of the entities listed on **Schedule 3**, only JPMorgan Chase Bank N.A. and its affiliates and Wells Fargo Bank, N.A. and its affiliates represented more than 1% of V&E's revenues, on a consolidated basis. None of these client revenues exceeded 2% of V&E's revenues for either time period. All of these client matters and representations are unrelated to the Debtors or the Chapter 11 Cases.

25. Except as set forth in this Declaration, V&E has not, does not, and will not represent any of the entities or individuals listed on **Schedule 3** hereto, or any of their respective subsidiaries or affiliates, adverse to the Debtors or in matters related to these Chapter 11 Cases.[9]

26. As noted above, V&E in the past was jointly engaged by REIT I, REIT II, and PAH, the external manager and sponsor of REIT I and REIT II, in connection with the SEC enforcement action in which PAH, as external manager of REIT I and REIT II, was a defendant and in which REIT I and REIT II were subjects of the related SEC investigation. The joint engagement was done at the request of PAH's separate counsel at that time primarily for the purpose of facilitating the communications of REIT I and REIT II with PAH, Mr. Nelson, and Munck Wilson Mandala and Holland & Hart LLP, their respective SEC enforcement investigation counsel. On March 25, 2026, V&E withdrew from representing PAH, and, as stated in the Engagement Letter, that engagement was formally terminated on March 30, 2026. V&E anticipates that to the extent any

[9] The information listed on **Schedules 2 and 3** is subject to change and may change during the pendency of these chapter 11 cases. Accordingly, V&E will update this Declaration as necessary when V&E becomes aware of additional material information.

causes of action against PAH may exist, they will be investigated and pursued by separate counsel from V&E or potentially vest in and be controlled by a litigation trust.

27. So far as V&E can determine, the factual and legal issues in this matter are not substantially related to the work V&E has previously done when PAH was a co-client with REIT I and REIT II. The Debtors have waived any conflicts of interest arising from V&E's prior engagement by PAH. Nevertheless, consistent with the Engagement Letter, should it become necessary to address any issues that arise out of or are substantially related to V&E's former engagement by PAH, V&E will not represent the Debtors in such matters, and the Debtors will be represented by separate counsel in any such matters. V&E has not and will not represent PAH in connection with any matters related to these Chapter 11 Cases. PAH is represented by Munsch Hardt Kopf & Harr, P.C. in these Chapter 11 Cases. I do not believe that V&E's past limited engagement by PAH in unrelated matters presents a conflict but have disclosed this connection out of an abundance of caution.

28. In addition to appearing as counsel in cases in the Northern District of Texas, some V&E attorneys (and members of their immediate families) are active, and some hold leadership positions, in state and local bar activities, participate in continuing legal education activities, have affiliations through law school or other organizations, and might have other social interactions in the community that might involve some incidental contact with judges and other personnel of the Court, the United States District Court for the Northern District of Texas, the U.S. Trustee for Region 6, or any attorney for or employee of the U.S. Trustee for Region 6. In addition, a V&E associate attorney, Sammy Calkins, who started with the firm in 2025, formerly clerked for the Honorable Michelle V. Larson, United States Bankruptcy Judge for the Northern District of Texas, from 2023 to 2025.

29. Based on the conflicts search conducted to date and described in this Declaration, to the best of my knowledge, neither I, V&E, nor any V&E attorney, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the Office of the U.S. Trustee, or any Bankruptcy Judge currently serving on the Court or staff of the Court, except as disclosed or otherwise described in this Declaration.

30. To the best of my knowledge, and based on the foregoing, V&E (a) has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration; (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (c) does not represent, and does not hold, any interest adverse to the Debtors' estates.

31. V&E will use reasonable efforts to see that no conflicts or other disqualifying circumstances exist or arise during the pendency of these Chapter 11 Cases. If any new material facts or relationships are discovered or arise, V&E will use reasonable efforts to identify them and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

32. The foregoing constitutes the statement of V&E pursuant to sections 327(a), 328(a), 329, and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), and the N.D. Tex. L.B.R. 2014-1 and 2016-1.

33. Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information, and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 6, 2026
Dallas, Texas

*/s/ Bradley R. Foxman*
Bradley R. Foxman
Partner, Vinson & Elkins LLP

**Schedule 1**

**Engagement Letter**

George R. Howard ghoward@velaw.com
**Tel** +1.212.237.0102 **Fax** +1.212.237.0100

September 25, 2026

Joe Reardon
President
American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
14643 Dallas Parkway, Suite 970
Dallas, Texas 75254

Re: American Hospitality Restructuring Engagement Letter

Mr. Reardon:

We are pleased to have the opportunity to represent you in this matter. This letter and the attached Additional Terms of Engagement ("***Additional Terms***") set forth the terms of our engagement and are effective as of September 21, 2026.

**Client**

Our only clients for this engagement are American Hospitality Properties REIT, Inc., American Hospitality Properties REIT II, Inc., and their direct and indirect subsidiaries (collectively, "***American Hospitality***," or "***you***"). We are not representing anyone else. Our duties and responsibilities run to you and not to any other persons, constituents, or entities, including parents, affiliates, joint ventures, successors, employees, directors, managers, owners, or other stakeholders, even if you depend on them financially, have operations in common with them, control them, or are controlled by them.

No client may be added to this engagement without our express written agreement, and this engagement will not create an attorney-client or a *de facto* or implied attorney-client relationship with any other person or entity.

**Scope of Engagement**

You have asked us to represent you in connection with the restructuring of American Hospitality's capital structure pursuant to cases filed under chapter 11 of the United States Bankruptcy Code. It is important that both of us agree on the scope of the work we will do for American Hospitality, so please let me know right away if I have misstated it. If American Hospitality engages us for other matters, we will confirm the scope of that work separately and otherwise apply the terms of this agreement.

## Fees and Other Charges

Our fees for this engagement will be based on the time our attorneys and other professionals devote to the matter. Our billing rates vary according to the experience of the individuals and the nature and location of the work. We will bill American Hospitality at our base rates for this type of engagement. We will bill American Hospitality, and American Hospitality will pay us, in United States dollars, absent an agreement otherwise. We review our billing rates annually, usually in January. If we change them, we will apply those new rates thereafter.

In addition, we may bill for expenses and other charges incurred in this matter, such as travel, couriers, photocopying, certain overtime costs, and computerized research. We may charge for those items whether that work is performed by outside vendors or in-house.

## Retainers and Billing

As we have discussed, to engage V&E to represent American Hospitality for these matters, you agree to pay us an advance payment retainer for legal services and expenses of $275,000 (the "***Retainer***"). The payment of the Retainer is made for the benefit of each entity comprising American Hospitality and as an inducement for V&E to make itself available and to provide legal services to you. The Retainer shall also secure payment of all billed and unbilled fees and expenses for the work we perform for you. The amount of the Retainer does not set a minimum or maximum fee. We may request that the Retainer be increased or replenished at our discretion.

In connection with other matters regarding which American Hospitality has previously retained V&E, V&E received the following payments totaling $75,000, consisting of: (a) $30,000 received on July 29, 2026; (b) $20,000 received on July 31, 2026; (c) $8,382.18 received on August 12, 2026; (d) $12,884.70 received on August 12, 2026; and (e) $3,733.12 received on August 12, 2026. This $75,000 will be deemed refunded by V&E to American Hospitality as of September 21, 2026. Also on September 21, 2026, and subsequent to the deemed refund, American Hospitality will be deemed to have paid $75,000 to V&E as a portion of the $275,000 Retainer owed under this engagement letter. On September 25, 2026, American Hospitality shall pay the remaining $200,000 of the Retainer to V&E.

Any and all outstanding and unpaid fees and expenses incurred by V&E for services rendered to American Hospitality prior to September 21, 2026, including with respect to the $75,000 in payments American Hospitality paid to V&E that have been deemed refunded pursuant to this engagement letter, are hereby written off, and any claims of V&E for those outstanding and unpaid fees and expenses are hereby fully waived and released. Any services rendered by V&E on or after September 21, 2026 have been undertaken with respect to this engagement and will be billed under the terms of this engagement letter.

Throughout this engagement we will send you statements showing our accrued fees and expenses. The frequency of those statements is at our discretion, but will be issued at least monthly and may be at a shorter interval. You agree that we may reduce the Retainer by the amount of fees and expenses shown on those statements. You further agree to pay all accrued and unpaid fees and expenses for this matter prior to filing any voluntary bankruptcy petitions upon our sending a statement to you of our fees and expenses. Alternatively, we may elect (in our discretion) to draw against the Retainer for any accrued and unpaid fees and expenses incurred prior to the filing of any voluntary bankruptcy petition. During the pendency of any chapter 11 cases, we will send you statements showing our accrued fees and expenses. The frequency of those statements and any related payments will be made in accordance with any orders issued by the applicable bankruptcy court. Upon termination of this engagement, we will provide you with a refund of any amount of the Retainer that has not been used.

**Conflicts of Interests: Other Clients and Consent to Adverse Representation**

There are three conflict issues to consider at the beginning of a new engagement: whether there are existing conflicts that require your consent; how we will respond if a conflict later emerges concerning this matter; and how we will treat conflicts regarding other matters in the future.

First, as to existing conflicts concerning this matter, we have run a conflicts check on the names of the people and entities you have identified for us. That check indicates we have formerly represented Phoenix American Hospitality, LLC ("***PAH***") in various matters. As you have separately acknowledged via email, that engagement was terminated on March 30, 2026. We do not believe that our prior work for PAH will impair or materially limit our ability to represent you here. To the contrary, we are confident we will be able to competently and diligently represent you, and you waive any conflicts of interest arising from our prior representation of PAH. However, notwithstanding the foregoing waiver, you understand and agree that, due to our prior representation of PAH, we will not bring claims against PAH that arise out of, or are substantially related to, matters on which we formerly advised PAH. Should any such issue arise, you are free to engage separate counsel of your choosing to represent you in such matters. Going forward, we will likely request supplemental information to ensure all persons and entities that might become involved in these matters are subject to our conflicts check. If you learn of any other person or entity that might become involved in this matter, please let us know right away so that we can check those additional names for conflicts.

Second, it is possible that a conflict could emerge during the course of this matter. For instance, depending on the circumstances, a conflict might arise if another one of our clients (for example, a lender), represented by another law firm, becomes adverse to American Hospitality here. Should that happen, we will take appropriate steps to protect your confidential information, and American Hospitality consents to our representation of that client in other unrelated matters.

Third, during the time that we are representing you, situations or issues may arise between American Hospitality and our other clients in other matters. As you know, we are a large firm and represent many clients, especially in the energy, financial services, private equity, and technology fields. Given the scope of our business and client relationships, it is possible that some of our present or future clients may be American Hospitality's competitors or otherwise have interests that differ from American Hospitality. This is not an exclusive agreement, and American Hospitality is free to retain any other counsel of its choosing. But by retaining us American Hospitality agrees that we are free to represent other clients whose interests are, or may be, materially and directly adverse to American Hospitality, including in litigation against American Hospitality, in any matter unless (i) the matter is substantially related to our representation of American Hospitality, or (ii) there is a significant risk that the representation of the other client would materially limit our ability to represent American Hospitality. American Hospitality waives any conflict of interest that might arise from those matters. For purposes of this agreement, two matters are substantially related if their facts are so closely related that a genuine threat exists that factual confidential information revealed by the client in one matter will be divulged to that client's adversary in the other. We would be materially limited if our representation of another client, or our relationship with someone else, would materially affect our ability to represent American Hospitality competently and diligently.

Also, you agree that, in representing other clients in matters not substantially related to our representation of American Hospitality, we may seek your testimony as a non-party witness or obtain other evidence from you by subpoena or otherwise.

**Arbitration**

The Additional Terms include an agreement to arbitrate disputes arising out of or related to this engagement in accordance with procedures established by JAMS, in the city of the V&E office in which the greatest portion of the firm's work was conducted. You should note that discovery rules, standards of evidence, rights to appeal, and procedural rules, among other things, differ in arbitration from the rules applicable in a civil trial.

**Conclusion of the Matter**

The attorney-client relationship created here will end when we have completed the legal services covered by this engagement letter. If we perform no work on this matter for a period of 90 days, we will consider the matter concluded unless we agree otherwise in writing. If we have no other open matters for American Hospitality at that time, our attorney-client relationship will be over.

Prior to that, of course, American Hospitality may end this engagement at any time for any reason by informing us in writing. Similarly, we may stop representing American Hospitality at any time for any reason (including non-payment of fees), provided we comply with the applicable rules of professional

conduct. If we no longer represent American Hospitality in this matter, you agree to take all steps necessary to release us from any further obligation to represent you, including signing any documents necessary to complete our withdrawal. If American Hospitality ends this engagement, or if we withdraw, you will pay us any undisputed outstanding fees and other charges, and we will take reasonable steps to assist you in transferring the matter to another law firm.

**Consultation and Other Considerations**

We encourage American Hospitality to consult with other counsel of its choosing regarding the terms of our engagement, particularly those regarding the scope of this engagement and conflict of interest issues. We understand that you may fulfill that role for American Hospitality.

This letter and the Additional Terms set forth the entire agreement between us. If they correctly reflect your understanding of the terms of our representation, please sign below and return a copy to me. If you ask us to begin work before you return the signed letter, or if we do not hear from you within seven days, we will consider that you have agreed to the terms of this letter and the Additional Terms.

We look forward to working with you. Please contact me if you have any questions.

Sincerely,

DocuSigned by:
George Howard
F2624537F48C4C3...

George R. Howard
Partner
Vinson & Elkins LLP

AGREED TO AND ACCEPTED:
**American Hospitality REIT, Inc.**
**American Hospitality REIT II, Inc.**
on behalf of itself and each of
its direct and indirect subsidiaries

By: DocuSigned by: Joe Reardon
ECC1ECB33A83445...
Joe Reardon
President

V&E

**VINSON & ELKINS L.L.P.**

***Additional Terms of Engagement***

These additional terms are an integral part of our agreement with you.

**Scope of Our Work**

We provide only legal services. We do not provide business, investment, insurance, underwriting, translation, accounting, financial, or technical services or advice, and you may not rely on us for such advice. Similarly, we do not make business decisions for you, and we do not investigate the character or credit of persons with whom you might be dealing.

Unless specifically included in the "Scope of Engagement" section of the engagement letter, this engagement does not include advice about (i) your disclosure obligations concerning the matter under any applicable law or regulation, including the federal securities laws and the Corporate Transparency Act (the "***CTA***"), (ii) the tax consequences concerning the matter, or (iii) analysis of intellectual property as to freedom to operate, scope of coverage, infringement, validity, or enforceability. We also are not responsible for review of your insurance policies or other documents to determine the possibility of coverage or indemnity for any claim asserted in this matter or for notification of your insurance carriers about the matter. Additionally, with respect to the CTA, we will not file or update beneficial ownership information reports on your behalf or gather the information required for them; you will need to retain another service provider to handle those tasks, or handle them internally. We encourage you to address those issues with other advisors or professionals.

After this matter has concluded, changes in your circumstances or the applicable laws could affect your future rights and obligations. Unless you engage us to do so, we have no obligation to inform you about future legal developments or your future rights and obligations.

**Legal Notices to Clients in Certain Jurisdictions**

For New York engagements, New York law requires us to provide you with notice of certain rights in connection with this engagement letter. If a dispute arises between us relating to our fees under this engagement letter, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrative Judge of the Courts of the State of New York. We will send you a copy of those rules upon request. Similarly, certain other jurisdictions may permit arbitration of fee disputes under some circumstances. Also, Texas law requires that we inform clients of the existence of a grievance process. The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 for more information. Also, the Supreme Court of Texas has promulgated The Texas Lawyer's Creed - A Mandate for Professionalism, which states that an attorney should inform a client of the creed's contents when undertaking a representation. We will send you a copy of the creed upon request. It is also available online at the Texas Bar website, https://www.texasbar.com.

V&E

## Terminology

Vinson & Elkins L.L.P. is a limited liability partnership formed under the laws of Texas, United States. Vinson & Elkins R.L.L.P. is a limited liability partnership formed under the laws of New York which is a "recognised body" as defined in the SRA Standards and Regulations, authorized and regulated by the Solicitors Regulation Authority in the United Kingdom (No. 0079019). Vinson & Elkins Europe R.L.L.P. is also a limited liability partnership formed under the laws of New York. You have instructed the Vinson & Elkins entity shown on the letterhead of the engagement letter, and your contract is with that entity. Nevertheless, the entity you retained may contract with other V&E entities to provide you with the services you require and, unless context requires otherwise, for purposes of this engagement, the terms "Firm," "we," and "our" as used in the engagement letter and these Additional Terms include Vinson & Elkins L.L.P., Vinson & Elkins R.L.L.P., Vinson & Elkins Europe R.L.L.P., and any person, partnership, or entity established or practicing in any jurisdiction and authorized to use the name Vinson & Elkins.

## Cooperation and No Guarantees

It is important that you cooperate fully with us and tell us all information and developments relating to this matter, and we may rely on that information without independently verifying it. We will try to achieve a result in this matter that is satisfactory to you, but we make no promises or guarantees concerning the outcome. For example, we cannot assure you that negotiations will be successful, a proposed transaction will be completed, or the outcome of this matter will be favorable to you. Outcomes in litigation and arbitration are especially hard to predict because of many factors that are beyond the control of clients or counsel. Any statements we make concerning possible outcomes of this matter, the legal significance of possible outcomes, or any other legal matters reflect our professional judgment at that time, but they are not guarantees. Those statements necessarily are limited by our knowledge of the facts and are based on the state of the law at the time they are made.

## Billing Arrangements and Terms

You agree to pay our invoices in full, and we may request an advance, retainer, or other payment if you fall behind in your payment obligations or if the scope of the engagement changes. You also will be responsible for paying any taxes required by law (e.g., VAT) directly resulting from this matter. If you are required to deduct or withhold any taxes from payments due the Firm, or if the Firm or its lawyers are required to pay any taxes directly to any taxing authority, you will pay us the additional amounts necessary to compensate the Firm for the withholding or additional cost so that, after the withholding or payment of the taxes, the Firm receives the full amount due under its invoices.

In appropriate matters, as an accommodation to you, we may send our invoices to third-party payors (e.g., an insurer, indemnitor, litigation funder, or borrower). But, if for any reason a third-party payor does not timely pay our invoices, you will remain fully responsible for paying them. Likewise, even when a third party pays our fees, we owe our professional obligations to you, not to that third party.

Some clients ask us to invoice them using e-billing software or third-party e-billing services. We will do so if it can be done in a way that is technologically practical and consistent with our internal security and IT procedures. If you ask us to use such a vendor, we will assume

V&E

that you have negotiated appropriate confidentiality protections and limits on the vendor's use of the information, and that those terms satisfy our confidentiality obligations to you and any cybersecurity guidelines you might send us.

**For Matters Involving eDiscovery**: As you know, litigation matters frequently involve the use of a third-party database platform to handle eDiscovery requirements. Some of our clients have their own eDiscovery software tools, and others have made direct arrangements with eDiscovery vendors. If you've already made such arrangements, or if you wish to explore them for this matter, of course we will be happy to use them. If you rely on the Firm to supply an eDiscovery solution, we will use the Relativity platform. The Firm has a relationship with Relativity under which we pay a fee that fluctuates according to several variables, some of which are retrospective. We do not use those same variables in calculating what we charge our clients for using Relativity; our charges to you are generally based on the size of the database, whether it's active or inactive, and the number of user licenses the client requires. We expect that the fees we charge our clients will defray the costs we incur to provide this platform. But because our costs and our revenues fluctuate separately, in some instances the fee you are charged may be more than what we pay Relativity for the service. We cannot tell in advance whether that will be the case for any specific matter in any particular time period. We believe our charges are competitive with, and typically favorable to, the market price for such services, but you are, of course, free to explore other options, and we will follow your instructions either way.

## Effect of Merger or Other Reorganization

If you acquire, are acquired by, merge, or affiliate with another company, let us know right away so we can decide whether we may continue as your attorneys in this matter, or if we need to withdraw due to conflicts or other considerations.

## Representing Other Attorneys

We represent attorneys and law firms in professional liability, business, tax, and other matters. This means that we may represent in another matter an attorney or law firm who opposes your interests in this matter. This will not affect our ability to represent your interests in this matter competently and diligently, nor would we pull our punches for one client to benefit another.

## Personal Investments by Firm Attorneys

The Firm does not separately track, for conflict-of-interest purposes, the personal investments made by our attorneys. Many own shares or other interests in companies, mutual funds, various investment vehicles, or real property. Also, some of the Firm's partners may invest together in private equity funds or other similar investment vehicles. In particular, the Firm has organized an investment partnership (the "***Fund***")—separate from the Firm—in which some partners participate. The Fund sometimes participates in investment opportunities presented by our clients or others. Given the nature of this Firm's practice, at any given time, the Fund (directly or indirectly) might have investments in a wide range of industries including, without limitation, energy, financial services, private equity, and technology companies. In general, we do not believe that these investments are material either to (i) the entities in which the attorneys or the Fund invest or (ii) the attorneys who have invested. However, if you are concerned about investments in a particular entity, please ask us to canvass our attorneys about any investments in that entity.

V&E

## Law Firm Privilege and Possible Conflict of Interest

While representing you, circumstances may arise where we believe it is appropriate to consult with the Firm's General Counsel's Office (or with other Firm attorneys working with our General Counsel's Office) on this matter. We will do this at our own expense. To the extent that we are addressing our duties and obligations to you or others, a conflict of interest might arise between you and the Firm. You agree that such consultations are privileged and confidential communications between the Firm and its counsel and therefore are protected from disclosure to you. You also agree to waive any claim of conflict of interest that exists or might arise out of those consultations.

## Confidentiality and Disclosure of Attorney-Client Relationship

We will use your confidential information only in connection with representing you. Unless otherwise specified in the accompanying letter, we will not disclose your confidential information, use it to your disadvantage, or use it to the advantage of other clients. Likewise, we will not share with you or use for your benefit confidential information that we receive from other clients. You agree, however, that we may disclose the existence of this attorney-client relationship and a general description of the nature of the engagement for the limited purpose of obtaining informed consent or a conflicts waiver from another client.

In Firm brochures and other materials or information about our practice, we may identify you as a Firm client, indicate the general nature of our representation of you, and provide examples of engagements handled on your behalf (including this matter). If you do not wish to have your name mentioned in those materials, please inform us in writing.

## Cybersecurity, Secure Electronic Communications, and Privacy

We have ISO 27001 certification for our U.S. and U.K. information security management systems that handle Client Materials (defined below). As part of our information security program, we take steps to safeguard data that are entrusted to us, including personal data, as defined by the EU General Data Protection Regulation 679/2016 ("***GDPR***") concerning individuals located in the European Union. Our information security program implements technical and organizational measures designed to protect personal data against unlawful, unauthorized, or accidental loss, disclosure, destruction, access, or use. Please do not send us any personal data regarding individuals that is protected by the GDPR, the Health Insurance Portability and Accountability Act ("***HIPAA***"), or other similar statutes unless you (i) have consent from the data subjects or some other lawful basis to provide their personal data to us, (ii) agree that we may maintain and use that data to represent you, and (iii) agree that we need to use that personal data to carry out our representation of you. If you share with us any personal data that is subject to the GDPR, you and the Firm will act as independent data controllers with our own responsibilities to comply with any applicable obligations of the GDPR or national implementing legislation. While representing you in this matter, if you or others provide us with "special categories of data" or other sensitive personal data, as defined by the GDPR, please inform us in writing so that we may consider whether to take any additional steps to safeguard the information.

V&E

## Local Counsel, Outside Contractors, and Service Providers

If you need local or special counsel in this matter, you will be responsible for retaining and compensating them. We are not responsible for the quality of other counsel's work even if we provide you with recommendations, instruct them directly, or coordinate with them.

We sometimes use outside contractors and service providers in some areas of our practice or operations. They include vendors, eDiscovery and data-hosting providers, temporary or contract attorneys and paralegals, consultants, advisors, experts, investigators, court reporters, translators, registered agents, local counsel, and other service providers. In performing their services, those people may have access to confidential information, and we will take appropriate steps to preserve the confidentiality of any such information. You consent to our allowing outside contractors and service providers access to such information as described.

Absent special arrangements, you are responsible for paying the outside contractors and service providers used on this matter. We will instruct them to bill you directly for their services. Those contractors and service providers are deemed to be engaged by you even if their bills are addressed to or reviewed by us. If they send bills or invoices to us, we may re-direct them to you for payment. In our discretion, we may pay invoices for small amounts and include those sums in our invoices to you, although we will seldom do so for sums greater than $1,000.

## Compulsory Process and Post-Engagement Tasks

After this matter ends, you might ask us, or we might be compelled, to undertake certain post-engagement tasks relating to this matter, such as responding and objecting to subpoenas, searching for and producing documents, preparing for testimony, performing transition work, and other similar activities. In those situations, we will promptly notify and consult with you unless we are legally prohibited from doing so, and you agree to compensate us for the fees and expenses we incur, including payment for the time spent by our attorneys and other timekeepers calculated at our then applicable hourly rates. If we receive a subpoena, we will inform you, if legally permitted to do so. Pending instruction from you, we will attempt to limit the subpoena on any reasonable ground and will object to the subpoena and assert all reasonable arguments against disclosure. If we are ordered by a court to produce documents or other information or are otherwise required to so do by law, you agree that we may produce the documents or other information and that we are not required to file an appeal from that judicial order. Nothing in this engagement letter obligates our attorneys or personnel to submit to interviews or to provide testimony. Performing post-engagement tasks will not constitute providing legal services to you, and it will not create or revive an attorney-client relationship between us.

## Document Retention and Destruction

While representing you, we likely will receive or create documents and materials such as correspondence, memoranda, pleadings, exhibits, transcripts, physical evidence, various agreements, transaction documents, and other documents and materials directly and substantively related to the representation (collectively, "***Client Materials***"). We will keep the Client Materials in files we will create for this matter. You agree that we may maintain some or all of those Client Materials solely in electronic form and that the metadata associated with those electronic documents are not Client Materials.

V&E

We also may create and maintain our own materials related to this matter which will belong to us ("***Firm Materials***"). Firm Materials are prepared for our internal use and include, for example, Firm administrative records, conflicts and new business intake materials and reports, time and billing reports, personnel and staffing materials, credit, expense, and accounting records, administrative and routine internal documents, notes, emails, and drafts not distributed outside the Firm, form files or templates (even if referred to in the course of this matter), and other materials and internal communications not directly and substantially part of the representation.

After the end of this matter, upon your request and assuming our fees and charges have been paid, we will send you the Client Materials at your expense. We reserve the right to retain a copy of the Client Materials. If you ask us to send you paper copies of documents that we maintain solely in electronic form, scan paper documents into an electronic format, or convert electronic documents from one electronic format into another, you agree to pay the associated costs.

If you do not request the Client Materials when this matter ends, we will keep them for a reasonable period of time (currently seven years for most documents) after the end of the matter. In so doing, we will follow our own records retention policy, not yours. Retaining those or other materials does not constitute the performance of legal services for you and does not create or revive an attorney-client relationship between us. After the applicable retention period, we may destroy the Client Materials without any additional notice to you.

## Arbitration

Any dispute arising out of or relating to our representation of you will be resolved by confidential arbitration, whether the dispute involves claims of professional malpractice or other claims related to the quality of our services, claims relating to your or our performance under these terms, disputes over fees or other charges (except as covered below or prohibited by law), or anything else. The location of the arbitration will be the city of the V&E office in which the greatest portion of the firm's work was conducted, and the substantive laws of that state will govern the arbitration, exclusive of conflict or choice of law rules. The Federal Arbitration Act (9 U.S.C., Secs. 1-16) will govern the interpretation of, enforcement of, and proceedings pursuant to, this arbitration clause. The arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The arbitrator(s) will be former U.S. federal judges or magistrates. Judgment on the award may be entered in any court having jurisdiction. This clause does not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitrator(s), and not any court, will have the exclusive authority to resolve any dispute or claim relating to the interpretation, applicability, or enforceability of this agreement and arbitration clause.

All arbitration proceedings will be confidential, as will be any award, evidence offered in the arbitration, and materials created for the purpose of the arbitration except where such materials are already in the public domain or where necessary to enforce an award or otherwise as provided by a court of competent jurisdiction.

If the amount in controversy, in total, is less than $4,000,000, the dispute will be decided by a sole arbitrator. In those cases, the arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. If the amount involved is $4,000,000 or more, a three-person panel of arbitrators will preside. In those cases, the arbitration will be administered by JAMS pursuant to

V&E

its Comprehensive Arbitration Rules and Procedures. In all cases, the arbitrators will be selected in accordance with the applicable JAMS procedure.

If the total amount of any final award, including interest and fees, exceeds $4,000,000, the parties will have the right to appeal the award to a panel of three arbitrators comprised of former appellate court judges pursuant to the JAMS Optional Arbitration Appeal Procedure (as it exists on the effective date of this Agreement). The appellate panel will be selected in accordance with the applicable JAMS procedure.

There are advantages and disadvantages to arbitration, compared with proceeding in court. Arbitration is generally regarded as faster and less expensive overall, although arbitration may include up-front expenses that would not be included in a court proceeding. Arbitration is confidential, while court proceedings are typically public. In court, you would generally have the right to a jury; in arbitration, there is no jury and the matter will be resolved by the arbitrator(s). In court, parties can usually appeal from the trial court as of right. In this arbitration agreement, appeals within the arbitration process (not in court) are available only for certain matters and, following an arbitration, the courts may enforce the arbitration award without reviewing it for errors of fact or law. Arbitration may limit the amount of discovery available to either party, particularly with respect to discovery from third parties. Of course, you may consult with other counsel about agreeing to this arbitration provision.

The parties may pursue their own individual claims, and will not pursue them on a class, collective, or consolidated basis. Each party will bear its own attorneys' fees, costs, and expenses (including filing fees). The parties will also bear the cost of arbitration (including arbitrator fees) pursuant to an agreed-upon allocation. Absent an agreement about allocation, the defendants (individually and/or collectively) shall bear no more than half the cost of arbitration.

A party seeking affirmative relief must initiate arbitration within the period provided by the applicable statutes of limitation or statute of repose. A filing in court does not toll the statute of limitations. The arbitrator(s) are authorized to dismiss or enter summary judgment in the arbitration at any stage based on a determination that the claim is time barred or for any other legally or factually supported reason.

This agreement to arbitrate is binding on you as well as any of your present and future parents, subsidiaries, affiliates, successors and assigns who seek to assert a claim against the Firm or any of its partners or employees that is encompassed by this agreement.

California State Bar Fee Arbitration. Notwithstanding the above, in a dispute subject to the jurisdiction of the State of California over fees or other charges, you have the right to elect arbitration pursuant to the fee arbitration procedures of the State Bar of California, as set forth in California Business & Professions Code §§ 6200, et seq. Those procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute has arisen, to be bound by the arbitration award. If you do not elect to proceed under those California procedures, then the JAMS procedures described above will apply.

New York Fee Dispute Arbitration. Notwithstanding the above, certain disputes over fees or other charges ("***NY Fee Dispute***") may be subject to the jurisdiction of the State of New York Fee Dispute Resolution Program ("***FDRP***"), Part 137 of the Rules of the Chief Administrator of the courts of the State of New York. If you have a qualifying NY Fee Dispute, you will be able to, at that time, choose between resolving it through the FDRP or instead resolving it through the

V&E

JAMS procedures described above. If you select the FDRP, then the NY Fee Dispute will be handled according to the rules established under that program, rather than the JAMS process detailed in these terms.

# **Schedule 2**

## **Potential Parties in Interest List**

**Parties in Interest**[1]

**Debtor Entities**

American Hospitality Properties REIT, Inc.
American Hospitality Properties REIT II, Inc.
AHP Master Lease, LLC
AHP REIT Port B LLC
AHP RI Cape Canaveral, LLC
AHP LP7 Bentonville, LLC
AHP LP7 CY Baton Rouge, LLC
AHP LP7 Fayetteville, LLC
AHP LP7 Ft Meyers, LLC
AHP LP7 Jonesboro, LLC
Lakemore-Phoenix Investment Platform B, LLC
AHP LP7 Metarie, LLC
PAH Charlotte Hospitality JV, LLC
PAH Charlotte JV, LLC
PAH Charlotte LLC
AHP LP7 RI Baton Rouge, LLC

**Non-Debtor Affiliates**

AHP FT Wayne Inn, LLC
AHP FT Wayne Suites, LLC
APIP-C Borrower, LLC
APIP-C FT Wayne Inn Master Tenant, LLC
APIP-C FT Wanye Suites Master Tenant, LLC
LPIP-C Operco, LLC

**American Hospitality Properties REIT, Inc. Top 10 Equity Holders**

6409 Trust Partners Ltd.
Pengdi Han
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Dr. Jeffrey Miller
Michael Allen Carr
Gary Van AKen Jr CSIC 401K/Define Benefit Plan and benefit of VNV2 LLC
Clover RE LLC
Sports Specialties UNL LLC
Brian John Wroblewski
David Bret Boling

---

[1] Unless otherwise indicated, where a party has been listed in this schedule as having a particular relationship to the Debtors, such party is only listed once even if it also fits a separate category so as to avoid duplication.

**American Hospitality Properties REIT II, Inc. Top 10 Equity Holders**

Chandra Nandigam
Thomas M Prose Revocable Trust f/b/o Thomas M. Prose Revocable Trust
Lee DeVisser Trust UA dated 1/4/1993, Restated FBO Lee DeVisser Trust
The Arlyn Jay Lanting Living Trust
Yevgeniy Loboda
New Direction Trust Company (NDTCO) as Custodian FBO Daniel Reminga IRA 8000095
IRA Club, Administrator & Meridian Bank, Custodian FBO Jon Bentz IRA 2003153
Barber Family Trust 10232023 FBO Barber Family Trust 10232023
Jeffrey Kenneth Johnson FBO Johnson Family Trust of 2008
Michael Allen Carr

**Directors and Officers**

Paul Adams
Mary Pfeifer
Joseph Reardon

**Phoenix Entities**

PAH Management, LLC
PAH Services, LLC
Phoenix American Hospitality, LLC
William L. "Perch" Nelson

**Consultant**

Jay Anderson

**Banks**

JPMorgan Chase Bank N.A.
Wells Fargo Bank, N.A.

**Lenders**[2]

Argentic Services Company LP
Deutsche Bank AG, New York Branch
Midland Loan Services, A PNC Real Estate Business
Rialto Mortgage Finance, LLC
Societe Generale
UBS Commercial Mortgage Trust 2018-C11

---

[2] The Debtors are currently in discussions with certain potential debtor in possession financing lenders. In the event a debtor in possession financing motion is filed, V&E will file a supplemental declaration listing any additional parties in interest and client matches.

Wilmington Trust, N.A.

**Debtor Professionals**

FTI Consulting, Inc.
LD Realty Capital
Vinson & Elkins LLP

**Landlords**

Spirit Realty, L.P.

**Investor Litigation Parties**

Proven Business Skills, Inc.
Richard C. Brown
William B. Federman
Federman & Sherwood
Gary S. Menzer
Menzer & Hill P.A.
Max Aills
Michael Tarr as Trustee of the Michael S. and Robin L. Tarr Trust
Mark A. Alexander
Mark A. Alexander Law, P.C.

**Franchisors**

Hilton Franchise Holding LLC
Marriott International Inc.

**Vendors**

2nd Century Plumbing, LLC
4D Service Group of Tampa, Inc
A-1 Door Specialists, Inc
A-1 Vacuum Cleaner
AAA - MAIL STOP 2
ABC Electric Service, Inc.
ABC Home & Commercial Services
Able Rec LLC
ABY Benefits LLC
Access Door and Glass
Ace Hardware of Cape Canavarel
ADP Screening and Selection SE
ADP, Inc.
ADTRAV

Advance Catastrophe Technologies, LLC
Advanced Lawn Techs LLC
Advanced Lighting & Sign Service
Air Filter Brothers
Aire-Master of Eastern Florida
Airpro Services, Inc.
AJ'S Restaurant Service by A-Tech
All American Fire Protection
All American Plumbing, Inc
All Around Landscaping Inc.
All Clear Plumbing of Brevard
Allbridge, LLC
Allen County Treasurer
Allied Air Services, LLC
Allied Mechancial Inc
Allied Plumbing Air & Electric
Allied Universal Security Svcs
Allround Landscaping
Altec
Amazon
Amazon Capital Services, Inc
American City Business Journals Inc
American Electric Power
American Fire Protection Group
American Quick Foods, Inc
Angela Wood, Tax Collector
Anthony Travel LLC
Aqua Indiana, Inc.
Arkansas Air
Arkansas Automatic Doors
Arkansas Department of Labor
Arkansas Dept of Health
Arkansas Fitness Repair Inc
Arkansas Secretary of State
Arthur J. Gallagher Risk Manage
ASCAP
Ascentium Capital LLC
Ashberry Water Conditioning
ASSA ABLOY Global Solutions, Inc
AT&T
Atmos Energy
ATP Plumbing & Drain LLC
Axis Key
Bailiwick Services, LLC
Baton Rouge Area Chamber
Baton Rouge Lodging Assoc.

Baton Rouge Water Company
Batteries Plus
Batteries Plus Bulbs
BCN Telecom, Inc
Beach Line Transportation
Beam Electric Company, Inc.
Beebe’s Pest & Termite Control
Ben E Keith Foods
Benton County Collector
Best Buy Business Advantage
Best Buy Stores, L.P.
Best Contracting LLC
Billiot Pest Control
Billy Senegal, LLC
Black Hills Energy
Bluebonnet Consulting, Inc.
Blueprint RF
BMI
Book My Group
BOOKING.COM BV
BookMyGroup
Brandon O Williams Construction, LLC
Brevard Business Telephone Systems, Inc.
Brevard County - Space Coast Office of Tourism
Brevard County Clerk - Finance TDT
Brevard County Tax Collector
Brinks, Inc.
Broadcast Music, Inc.
Bureau of Elevator Safety
Bureau of Revenue and Taxation
Burton Energy
Buy Efficient
C.T. Traina. Inc.
Caine & Weiner
Canary Technologies
Canon Financial Services, Inc
Captain Steamer Carpet Cleaner
Cards NWA LLC
Carrco
Carver Hotel Group, LLC
CAWLEY COMPANY (THE)
CCS Industrial Services, Inc
CentiMark Corporation
Centrada Soultions, LLC
Central Laundry Equipment
CF Environmental Laboratory LLC

Charlotte Area Chamber of Commerce
Chemtron
Cigna Health and Life Company
Cintas Corporation
Cintas Fire Protection
Cintas First Aid & Safety
City Clerk, City of Rogers
City Fire & Safety, Inc
City of Baton Rouge - E Parish
City of Cape Canaveral
City of Charlotte
City of Charlotte Aviation Dept.
City of Cocoa
City of Johnson
City of Jonesboro
City Utilities
City Water and Light - Jonesboro
City-County Tax Collector
Clarcity Holdings, LLC
Clean Start Group, LLC
Clearwater Pool & Spa World, LLC
Clearwater Pool Service
Clearwater Pools
CLI Enterprises, LLC
Climate Control of Charlotte, Inc.
Cloud5 Communications
Coast to Coast Computer Prods
Coca Cola Beverages Florida
Coca Cola Consolidated
Coca-Cola Bottling Company United, Inc
Coley Jordan Firestone
Collins Cleaners
Collins Cleaners & Valet Inc
Comcast Business
Commercial Industrial Lighting
Commtrak Corporation
CommTrans
Conserva Irrigation of NW Arkansas
Costar Realty Information
Courtesy Products LLC
Cox Business
Cozzini Bros., Inc.
Craighead County Tax Collector
Crain Supply
CSC
CSI Group International

CSTT Sports Travel
CT Corporation
Culligan of DFW
Culligan of Fort Wayne
Culligan of NW Arkansas
Cypress Cooling Company LLC
Danel Heating and Air
Darling Ingredients Inc
Data Plus Inc.
DBPR
Delta Products, Inc.
Delta Utilities
Deluxe Branded Marketing
Dept of Business and Professional Regulation
DEX Imaging LLC
Dext Capital, LLC
Dittmer Air & Heat, LLC
Division of Hotels & Restaurants
DMX Music (Mood Media)
Dormakaba Canada Inc
Dormakaba USA Inc
DR Pools LLC
Duke Energy
DynaFire, LLC
Eagle Refrigeration & Mechanical, LLC
East Baton Rouge Parish Sheriff
Eastern Refrigeration Service, Inc
Ecolab EcoSure
Ecolab Inc
Ecolab Pest Elimination Inc
Ecowaste Solutions, Inc
Edward Don & Company
Elavon, Inc
Elevator Safety Inspection
Entergy
ER Services
EspriGas
Everest Premier Insurance Company
Everon, LLC
Expedia
Facility Solutions Group, Inc
FEDEX
Felger Hart, Inc
Ferguson Enterprises, Inc.
Ferguson Facilities Supply
Fire & Safety Commodities

FitServe
Florida Bulb & Ballast, inc.
Florida City Gas
Florida Department of Financial Services
Florida Department of Revenue
Florida Dept of Health in Brevard County
Florida Dept of Health in Lee
Florida Door Control of Orlando, Inc
Fort Myers Beach Chamber of Co
Fort Wayne Allen County
Fort Wayne Storage - Time Corners
Fourth Enterprises, LLC – Red Book Solutions
FPL Energy Services
Freedom Pay, Inc
Friedrich Air Conditioning
Gallo Mechanical
Gardaworld, Inc.
Gasket Guy of NW Arkansas
Gavin's Ace Hardware
GE Applicances, A Haier Company
Gen Digital, Inc
GFL Environmental
Gibson Teldata
Golden Waffles
Gordon Food Service, Inc
GRAINGER
Grayson Fitness Repair & Maintenance, Inc
Greater Fort Myers
Greater Fort Wayne, Inc
Green Leaf Lawn Service
Grinder Hockey LLC
Guest Supply
Guest Tek Interactive Entertai
Gully Pool Service & Supply
Harlan Graphic Arts Services, Inc.
Hartford Fire Insurance Co.
HD Supply Facilities Maintenance
Heights Industrial Supply
Helms Briscoe Perf Group Inc
Hilton Fort Wayne
Hilton Hotels Corporation
Hobart
Holladay Air Conditioning, Inc.
Home Depot Pro
Hossinger Refrigeration, Inc
Hotel Communication Supply

Hotel Credit Association
Hotel Investor Apps Inc
HotelEngine, Inc
HOTELSIGNS.COM
Hybrid Heating & Air
Imprint Plus
Indiana Department of Revenue
Indiana Dept of Homeland Sec.
Indiana Fire Sprinkler & Backflow, Inc
Indiana Michigan Power
Industrial Laundry Services Equipment, LLC
Inn at the Mill
Insight Direct USA, Inc.
Integrity Laundry Services
Intercontinental Hotel Dallas
Interserv Hospitality Solutions LLC
Island Pump & Electric Motor
J&S Liquid Waste Services, Inc.
J.C. Schultz Enterprises, Inc.
JC Ptac Services
Jeff Funkhouser
Jefferson Convention & Visitors Bureau
Jefferson Parish Dept of Water
Jefferson Parish Fire Dept.
Jefferson Parish Sheriff Office
Jefferson Parish Utility Services
JHG Marketing
Jim Welsh, Inc.
John A. Koons Locksmiths
Jones Sign CO., Inc
Jonesboro Coca-Cola
Kalibri Labs
Key-En-Lock LLC
Koch Filter Corporation
Koddi, Inc
Konica Minolta Business Solutions
Koorsen Fire & Security
KoreConX Inc
L&L Construction LLC
L&M Electric Motors
Labor Source, LLC
Lakeshore Recycling Systems
Landart Inc
Landscape Workshop, LLC
LAP Services, LLC
LDH, OPH

Lee County Hotel Association
Lee County Sports Organization, Inc.
Lee County Tax Collector
Lee County Utilities-Customer
Leslies Swimming Pool Supplies
Lexyl Travel Technologies Inc.
LG Fullfillment
Life Fitness, LLC
Liquid Environmental Solutions
Lloyds Exercise Equipment LLC
Lodging Solutions, LLC
Logix Fiber Networks
Louis Mechanical Contractors, Inc.
Louisiana Dept of Revenue
Louisiana Interstate Logos
Louisiana Secretary of State
Lyndon Cummings LLC
Lynx Refrigeration
M2 Compliance, LLC
M2 Roofing, LLC
M7 Services, LLC
Magical Adventures Travel LLC
Manatee Promotions, LLC
Manhattan Bakery, Inc
Marck Recycling & Waste, LLC
Marvelous Mouse Travels
Master Temps Inc
MasterPro Lighting, LLC
Masters of Disasters Leak Detection and Plumbing LLC
MCA Group
Mecklenburg County Tax Collector
Mecklenburg County ABC Board
Mecklenburg County Health Dept
Mecklenburg County Tax Office
Melrose Design Haus
Merchants Automotive Group Inc
Mercury Communications Svcs.
Merus/Aquapure Water Sys Inc
Metropolitan Life Insurance Company
Mini Melts of America, Inc
Mood Media
Moon Plumbing of SWFL Inc
Morgan Pump Systems, Inc
Musso Plumbing Company LLC
Nat Pro Gas of Brevard Inc
Navitas Credit Corp

NC DHHS
Nestle USA Inc
NextEra Energy Services
NIPSCO
Nola Pools and Spas
North Carolina Department of Labor
North Carolina Dept of Revenue
ODP Business Solutions, LLC
Office of Louisiana State
ONITY INC
Ooma, Inc
Optimum Water Solutions, Inc.
Oracle America Inc
Orchid.Events, LLC
Orlando Business Telephone Sys
Otis Elevator Company
Ozarks Coca-Cola
Parish and City Treasurer
Parish of East Baton Rouge Sheriff
Parish of East Baton Rouge Tax Collector
Parity Technology Solutions
Parts Town, LLC
Peleton Interactive, Inc
Pellerin Laundry Machinery Sales Co., Inc.
Pellucid Travel LLC
Pepsi Cola
PEPSI COLA GENERAL BOTTLING
PepsiCo Beverage Sales,LLC
PERFORMANCE FOOD GROUP
PF Service LLC
Piedmont Natural Gas
Pinch A Penny
Pinnacle Communications Corp
Pitney Bowes Global Fin Serv
Pitney Bowes Purchase Power
Pitney Bowes, Inc.
Plant Interscapes
PlaqueMaker.com, Inc
Plasticard-Locktech Internatl
Pool Troopers
Potts Hardware, Inc.
Precision Glass & Mirror Inc
Precision Glass LLC
Premier South LLC
Prisma Graphic Corporation
Professional Venue Solutions LTD

Profitsword, LLC
Property Owner Association
Prosper Hotels
PSC Wellington, LLC
Publix Super Markets
Qnary LLC
Queen City Heating Air & Plumbing
Quore, LLC
Redblue LLC
Regency Enterprises Inc
Reliant Fire and Security, Inc
Renue Systems of Mid-America
Republic Services
RFID Hotel
Richards, Layton & Finger, PA
Roger Advertising & Promotion
Rogers Advertising & Promo Commission
Rogers Water Utilities
Rogers-Lowell Area Chamber of
Rolling Greens
Royal Cup
RR Donnelley
RS Capital, LLC
Ryan LLC
Scentair Technologies, LLC
Schindler Elevator Corporation
SCNZ Architects
Seaside Pools Inc
Secretary of State
Select Hospitality Inc
Sertifi, Inc.
SESAC
Sheriff and Tax Collector
Sherwin Williams
Sherwin Williams - Fayetteville West Store
Sherwin Williams Co
Sherwin Williams Store #7363
Shows for Crews LLC
Shorts Travel Management, Inc.
Sonifi Solutions Inc
Southeastern Laundry Equipment
Southern Cutters, LLC
Southwestern Electric Power
Sporting Arkansas
Springdale Chamber of Commerce
Springdale Water Utilities

Staff Pro LLC
StanfordG Hospitality Consulting, LLC
State of Arkansas
State of Arkansas Washington County Tax Collector
State of Florida
State of Florida Dept of Business
State of North Carolina
State Systems, LLC
Steam Works Cleaning & Restoration
Stericycle, Inc
Steve's Frozen Chillers of Florida Space Coast
Stewart Law Group PLCC
Summit Fire National Consulting, LLC
Summit Utilites Arkansas Inc
Sunbelt Rentals Inc
Soncoast Elevator Inspections
Sunshine Landscaping, LLC
Superior Construction and Development, LLC
Suttons Pool Supply, Inc.
Swalty Kernel LLC
Swims & Sweeps Inc
Sysco Central Florida, Inc.
Sysco Charlotte, LLC
Sysco Corporation
Sysco Food Svc – New Orleans
Sysco West Coast Florida, Inc
TA Connections
TA Connections DE LLC
Tanager, Inc.
TDS IT
Team Travel
Teco Peoples Gas
Texas Secretary of State
The Cocoa Beach Area H&M Assc
The King Housekeeping & Kitchen SL.CC.NL Inc
The Maintenance Team, Inc
The Mini Storage Center
The Propeller Club of Port Canaveral
The Travel 100 Group, Inc
Three Rivers Electric LLC
THS Company LLC
TMI Communications - TekSecute Technology Group
T-Mobile USA Inc
Toast Inc.
Touch of Class Dry Cleaners
Tradavo

Trane U.S. Inc
Travel Advisors of the Mid-South
Travel Advocates International, Inc.
Travel Click Inc
Traveling Teams
Travelscape, LLC
TripleC Travel Inc
UniFirst Corporation
UniGuest
United Mechanical
US Foods
US Foodservice Inc - Charlotte
US Lawns Arkansas
Val-U-Chem Inc
Velocity, A Managed Services Company, Inc
Visit Florida
Visit Fort Wayne
Vistar
W.C. Bochelt & Sons Inc
Wagner-Meinert, LLC
Wasserstrom Company
Waste Connections
Waste Connections Bayou Inc
Waste Connections of NC
Waste Pro of Florida
Waste Pro of Louisiana Inc
Waterbird Window Cleaning
Watertreenwa
WebstaurantStore
Wes Eddington- Craighead County Tax Collector
West Central Fire District
Whaley Foodservice Repairs
WM Corporate Services Inc
World Travel Inc. Corporate HE
WorldVue Connect, Inc.
Yorkmont BP
Zasaco Corporation

**Top 20 General Unsecured Creditors[3]**

PAH Management
Spirit Realty
Deutsche Bank AG
Marriott International, Inc.
Hilton Hotels Corporation

[3] Certain entities listed in the Top 20 General Unsecured Creditors list are also listed elsewhere in this Schedule.

Summit Fire National Consulting, LLC
Holland & Hart LLP
Latham & Watkins LLP
HD Supply Facilities Maintenance
US Foods
Master Temps Inc.
Munck Wilson Mandala LLP
Onity Inc.
Schindler Elevator Corporation
Ecolab Pest Elimination Inc.
InterMountain Renovation Consultants, LLC
WebstaurantStore, Inc.
Advance Catastrophe Technologies, LLC
Central Laundry Equipment, Inc.
Entergy Corporation

**Bankruptcy Judges and Court Staff for the Northern District of Texas**

Jenni Bergreen
Scott W. Everett
Dawn Harden
Hawaii Jeng
Stacey G.C. Jernigan
Michelle V. Larson
Stephen J. Manz
Edward L. Morris
Mark X. Mullin
Brad W. Odell
Karyn Ruetner
Jennifer Speer
Shelby Wimberley

**United States Trustee's Office for the Northern District of Texas – Region 6**

Asher M. Bublick
Kara Croop
Reinhard Freimuth
Fernando Garnica
C. Marie Goodier
Susan Hersh
Alexandria Hughes
Aamer Javed
Meredyth A. Kippes
Lisa L. Lambert
Felicia P. Palos
Nancy S. Resnick

Jason Russell
Kendra Rust
Marc F. Salitore
Joseph Schlotzhauer
Erin Marie Schmidt
Rafay Suchedina
Cheryl H. Wilcoxson
Elizabeth A. Young

# **Schedule 3**

## Conflicts Results

| |
|---|
| The results listed on this **Schedule 3** are the product of implementing the Firm Procedures described in the Foxman Declaration and are based on the relationship of the indicated persons, entities, or their affiliates with the Debtors and V&E. |

## Client Match List

| Party[1] | Relationship to Debtors | Relationship to V&E[2] |
|---|---|---|
| American Hospitality Properties REIT, Inc. | Debtors | Current Client or Affiliate of Current Client |
| American Hospitality Properties REIT II, Inc. | Debtors | Current Client or Affiliate of Current Client |
| AHP Master Lease, LLC | Debtors | Current Client or Affiliate of Current Client |
| AHP RI Cape Canaveral, LLC | Debtors | Current Client or Affiliate of Current Client |
| Phoenix American Hospitality, LLC | Phoenix Entities | Former Client or Affiliate of Former Client |
| JPMorgan Chase Bank NA | Banks | Current Client or Affiliate of Current Client |
| Wells Fargo Bank, N.A. | Banks | Current Client or Affiliate of Current Client |
| Deutsche Bank AG, New York Branch | Lenders | Current Client or Affiliate of Current Client |
| Societe Generale | Lenders | Current Client or Affiliate of Current Client |
| UBS Commercial Mortgage Trust 2018-C11 | Lenders | Current Client or Affiliate of Current Client[3] |
| Wilmington Trust, N.A. | Lenders | Current Client or Affiliate of Current Client |
| Spirit Realty, L.P. | Landlords | Former Client or Affiliate of Former Client |
| ADP, Inc. | Vendors | Former Client or Affiliate of Former Client |
| American Electric Power | Vendors | Current Client or Affiliate of Current Client |
| Coca Cola Consolidated | Vendors | Current Client or Affiliate of Current Client |
| Darling Ingredients Inc. | Vendors | Former Client or Affiliate of Former Client |

[1] In certain instances, the precise identity of a party in interest was not readily ascertainable (*e.g.*, only a trade name or a portion of the name was known). Solely for purposes of this Declaration, and out of an abundance of caution, such party was treated as including affiliates and/or other entities bearing a similar name unless such potential party in interest was believed by V&E to be unrelated.

[2] Where a party is listed as a current client or affiliate of a current client, it is not also listed as former client or affiliate of a former client, even if closed matters for such party may also exist. Additionally, where a party has been listed in this schedule as having a particular relationship to the debtors, such party is only listed once even if it also fits a separate category so as to avoid duplication.

[3] For the sake of clarity, V&E represents UBS Securities LLC as a current client in unrelated matters but does not represent UBS Commercial Mortgage Trust 2018-C11.

| Party[1] | Relationship to Debtors | Relationship to V&E[2] |
|---|---|---|
| Duke Energy | Vendors | Former Client or Affiliate of Former Client |
| Elavon, Inc. | Vendors | Current Client or Affiliate of Current Client |
| Entergy | Vendors | Current Client or Affiliate of Current Client |
| Ferguson Enterprises, Inc. | Vendors | Current Client or Affiliate of Current Client |
| FPL Energy Services | Vendors | Current Client or Affiliate of Current Client |
| Gardaworld, Inc. | Vendors | Current Client or Affiliate of Current Client |
| Home Depot Pro | Vendors | Former Client or Affiliate of Former Client |
| Koddi, Inc. | Vendors | Former Client or Affiliate of Former Client |
| Nestle USA Inc. | Vendors | Current Client or Affiliate of Current Client |
| NextEra Energy Services | Vendors | Current Client or Affiliate of Current Client |
| ONITY INC | Vendors | Current Client or Affiliate of Current Client |
| Oracle America Inc. | Vendors | Former Client or Affiliate of Former Client |
| Pepsi Cola | Vendors | Former Client or Affiliate of Former Client |
| Piedmont Natural Gas | Vendors | Current Client or Affiliate of Current Client |
| Pitney Bowes, Inc. | Vendors | Current Client or Affiliate of Current Client |
| Publix Super Markets | Vendors | Current Client or Affiliate of Current Client |
| Sherwin Williams Co | Vendors | Former Client or Affiliate of Former Client |
| Sysco Corporation | Vendors | Current Client or Affiliate of Current Client |
| Teco Peoples Gas | Vendors | Former Client or Affiliate of Former Client |
| T-Mobile USA Inc | Vendors | Former Client or Affiliate of Former Client |
| Velocity, A Managed Services Company, Inc. | Vendors | Former Client or Affiliate of Former Client |
| Waste Connections | Vendors | Current Client or Affiliate of Current Client |

| Party[1] | Relationship to Debtors | Relationship to V&E[2] |
|---|---|---|
| WM Corporate Services Inc | Vendors | Current Client or Affiliate of Current Client |
| WorldVue Connect, Inc. | Vendors | Current Client or Affiliate of Current Client |

# EXHIBIT C

**Tantleff Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-80071 (SGJ)** |
| | § | |
| **AMERICAN HOSPITALITY PROPERTIES REIT, INC., *et al.*,** | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DECLARATION OF
ALAN TANTLEFF IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT
OF VINSON & ELKINS LLP AS COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, I, Alan Tantleff, hereby declare as follows:

1. I am the Chief Restructuring Officer ("***CRO***") of the Debtors.[2] In addition to serving as the Debtors' CRO, I am a Senior Managing Director at FTI Consulting, Inc. ("***FTI***"), a leading global business advisory firm with over 50 offices worldwide and over 5,000 professionals, where I specialize in, among other things, workouts and financial restructurings of lodging, hospitality, and commercial real estate businesses. In my capacity as CRO, I am generally familiar with the day-to-day operations, business and financial affairs, and books and records of the Debtors and am authorized to submit this declaration (the "***Declaration***").

2. I submit this Declaration in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins LLP as Counsel for the*

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/AHPREIT. The location of the Debtors' corporate headquarters is: 14643 Dallas Parkway, Suite 970, Dallas, Texas 75254.

[2] Capitalized terms used but not otherwise defined in the Application shall have the meaning set forth in the *Amended Declaration of Alan Tantleff in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "***First Day Declaration***").

*Debtors and Debtors in Possession Effective as of the Petition Date* (the "***Application***"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

**<u>THE DEBTORS' SELECTION OF COUNSEL</u>**

3. The Debtors seek to retain V&E because, among other reasons, (a) V&E has extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code, and (b) V&E is widely recognized for its expertise in handling corporate, capital markets, debt restructuring, and other transactions for companies in numerous industries. I believe that this experience will allow V&E to efficiently and successfully address issues that may arise in the context of these Chapter 11 Cases. Accordingly, I believe that V&E is both well-qualified and uniquely able to represent the Debtors as their counsel in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code.

4. In my capacity as CRO, I am ultimately responsible for, among other things, supervising the costs of professionals proposed to be retained by the Debtors in connection with their restructuring efforts. As discussed below, members of my team and I review the invoices regularly submitted by V&E and understand the hourly rates V&E charged the Debtors in the prepetition period for restructuring services are the same as or consistent with the hourly rates V&E will charge the Debtors during these Chapter 11 Cases, in each case, subject to an agreed discount on each monthly fee statement, generally consistent with V&E's historical fee arrangement with the Debtors.

**<u>COST SUPERVISION</u>**

5. The Debtors have approved V&E's prospective budget and staffing plan for the period from October 4, 2026 through January 3, 2027, recognizing that in the course of complex Chapter 11 Cases like these Chapter 11 Cases, it is possible that there may be a number of

unforeseen fees and expenses that will need to be addressed by the Debtors and V&E. The Debtors further recognize that it is their responsibility to monitor closely V&E's billing practices to ensure the fees and expenses paid by the Debtors' estates remain consistent with the needs and exigencies of these Chapter 11 Cases. The Debtors will continue to review V&E's monthly fee statements and, together with V&E, amend the budget and staffing plans periodically, as needed.

6. Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information, and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 6, 2026

*/s/ Alan Tantleff*
Alan Tantleff
Chief Restructuring Officer